Michael Zachary (SBN 112479)
ANDREWS KURTH KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304
Tel.: (650) 384-4700
Fax.: (650) 384-4701
mzachary@akenyon.com

James E. Rosini (admitted *pro hac vice*)
Jonathan W. Thomas (to apply *pro hac vice*)
ANDREWS KURTH KENYON LLP
One Broadway
New York, New York 10004
Tel.: (212) 908-6169
Fax.: (212) 425-5288
jrosini@kenyon.com
jthomas@kenyon.com

Counsel for Defendants Ren Ventures Ltd.
and Sabacc Creative Industries Ltd.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Lucasfilm Ltd. LLC, and Lucasfilm Entertainment Company Ltd. LLC,<br><br>_Plaintiffs_,<br><br>v.<br><br>Ren Ventures Ltd., and Sabacc Creative Industries Ltd.,<br><br>_Defendants_. | Case No.  3:17-cv-07249-RS<br><br>**DEFENDANTS' PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 9(B)**<br><br>**HEARING DATE: March 29, 2018**<br><br>**HEARING TIME: 1:30pm Pacific Time** |

DEFENDANTS' PARTIAL MOTION
TO DISMISS

Case No.  3:17-cv-07249-RS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLEASE TAKE NOTICE** that, Defendants, Ren Ventures Ltd. ("RV"), and Sabacc Creative Industries Ltd. ("SCI") (collectively, "Defendants"), by and through their undersigned counsel, will move the Honorable Richard Seeborg, United States District Judge, in and for the United States District Court, Northern District of California, San Francisco Division, on Thursday, March 29, 2018 at 1:30pm Pacific Time, at the San Francisco Courthouse, Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, to dismiss Plaintiffs, Lucasfilm Ltd. LLC and Lucasfilm Entertainment Company Ltd. LLC's ("Plaintiffs"), Complaint in the above-captioned action pursuant to FED. R. CIV. P. 12(B)(6) and FED. R. CIV. P. 9(B).

Plaintiffs seek relief in Counts Three, Five, Six, Seven, and Eight of the Complaint, respectively, for federal and common-law trademark infringement and unfair competition.   In Count Four of the Complaint, Plaintiffs seek cancellation of Defendant RV's federal trademark registration for the mark "SABACC."   All six of these Counts rest on the premise, in whole or in part, that Plaintiffs own trademark rights in "Sabacc."  For the reasons discussed in detail below, however, Plaintiffs do not own trademark rights in "Sabacc."   Accordingly, Defendants seek dismissal of Counts Three through Eight of the Complaint pursuant to FED. R. CIV. P. 12(B)(6). Defendants also seek dismissal of Counts Six through Eight in the Complaint because Plaintiffs fails to plead fraud with the requisite particularity required by FED. R. CIV. P. 9(B).   Defendants further seek any relief that this Court deems is just and equitable.

- 2 -

**TABLE OF CONTENTS**

I.   Preliminary Statement/Statement of Issues to be Decided ........................................... 6

II.  Statement of Relevant Facts ................................................................................. 7

    A. Defendants…………………………………………………………………………7

    B. Plaintiffs Filed this Lawsuit Instead of Responding to Defendants' Pending
       Summary-Judgment before the Trademark Trial and Appeal Board……………7

    C. Plaintiffs Have Never Applied to Register "Sabacc"……………………………8

    D. Plaintiffs' Allegations Concerning "Sabacc"……………………………………9

    E. Plaintiffs' Claims for Relief Concerning "Sabacc"……………………………10

III. Statement of Relevant Legal Standards ............................................................... 11

IV.  Argument ............................................................................................................ 11

    A. Plaintiffs' Allegations of Trademark Ownership of "Sabacc" are Implausible
       Because Plaintiffs Cannot Prove Trademark Priority…………….                 12

       1.   Plaintiffs' Allegations of Trademark Priority are Implausible………………14

          a.   Plaintiffs' Allegations of Trademark Use of "Sabacc" are Implausible….15

          b.   Plaintiffs' Allegations of Continuous Trademark Use of "'Sabacc" are
             Implausible………………………………………………………………… 21

    B. Plaintiffs' Allegations Fail to Satisfy Rule 9(b)'s Heightened Pleading Standard. 23

V.   Conclusion ........................................................................................................... 24

1

2

**TABLE OF AUTHORITIES**

3

**Cases**

*578539 B.C., Ltd. v. Kortz*, 2015 WL 12670488 (C.D. Cal., April 10, 2015) .............................. 14

*Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Management, Inc.*,
744 F.3d 595 (9th Cir. 2014)........................................................................................... 22

*Applied Information Sciences Corp. v. eBAy, Inc.*, 511 F.3d 966 (9th Cir. 2007).  ...................... 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 11

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062 (9th Cir. 2006)............ 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 11, 24

*Brookfield Commc'ns, Inc. v. W. Cost Entmt't Corp.*, 174 F.3d 1036 (9th Cir. 1999)). .............. 14

*Brown v. Entertainment Merchants Asso'c.*, 564 U.S. 786, 790 (2011)....................................... 15

*Brickman v. Facebook, Inc.*, 230 F. Supp. 2d 1036 (N.D. Cal. 2017). ......................................... 12

*Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.,* 493 F.2d 709 (9th Cir. 1974) ..... 21, 22

*Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994) ................................................................... 13

*Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079 (C.D. Cal. 2006) ......................... 22

*English & Sons, Inc. v. Straw Hat Restaurants Inc.*,
2015 WL 4314364 (N.D. Cal., July 15, 2015)................................................................. 12

*Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*,
947 F. Supp. 2d 922 (N.D. In. 2013)........................................................................16, 18

*Fortres Grand Corp. v. Warner Bros. Entertainment, Inc.*, 763 F.3d 696 (7th Cir. 2014) .......... 16

*In re Caserta*, 46 U.S.P.Q. 1088 (T.T.A.B., Feb. 26, 1998). ......................................................... 18

*In re Moody's Investor Serv., Inc.,* 13 U.S.P.Q.2d 2043 (T.T.A.B.1989 ...................................... 15

*In re Valley Dental,* 1998 WL 111034 (T.T.A.B. 1998)................................................................ 18

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009).  ......................................................... 12

*Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74 F. Supp. 3d 1134 (N.D. Cal. 2014).......... 15

*Pabalate v. Nationstar Mortg. LLC*, 2017 WL 2439012 (N.D. Cal., June 6, 2017)..................... 12

*Paramount Pictures Corp. v. Romulan Invasions*,
7 U.S.P.Q. 1897 (T.T.A.B., Mar. 31, 1998)................................................................ 17, 18, 20

*Paul Ponomarenko v. Nathan Shapiro, et al.*, 2018 WL 707597 (N.D. Cal., Feb. 5, 2018) ......... 24

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Petrofina, Inc. v. Petrofina of Cal., Inc.,* 596 F.2d 896 (9th Cir. 1979); ....................................... 14

*Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749 (9th Cir. 2006) .................................................... 13

*Sebastian Brows Prods. LLC v. Muzooka Inc.*, 2016 WL 5910817 (N.D. Cal., Oct. 11, 2016).... 13

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,*
59 F.3d 902(9th Cir. 1995).......................................................................................................... 15

*Sengoku Works v. RMC Int'l*, 96 F.3d 1217 (9th Cir. 1996) .......................................................... 14

*Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035  (9th Cir. 2010) ....................... 23

*Spin Master, Ltd. v. Zobmondo Entertainment, LLC,*
944 F. Supp. 2d 830 (C.D. Cal. 2012) .................................................................................... 13, 21

*Swartz v. Kpmg LLP*, 476 F.3d 756 (9th Cir. 2007). .................................................................... 12

*Watec Co. v. Liu,* 403 F.3d 645 (9th Cir. 2005).......................................................................... 14

## I.   Preliminary Statement/Statement of Issued to be Decided

Plaintiffs conveniently omit from the Complaint that Defendant RV recently moved for summary judgment against Plaintiffs before the Trademark Trial and Appeal Board (the "TTAB") on the ground that Plaintiffs lack trademark rights in "Sabacc."   Plaintiffs also conveniently omit from the Complaint that, instead of responding to Defendant RV's summary-judgment motion, Plaintiffs' sought a second bite at proving trademark rights in "Sabacc" by instituting this action-- on the eve of their opposition deadline in the TTAB proceeding.

Just as Plaintiffs did in the TTAB proceeding, Plaintiffs allege trademark use of "Sabacc" by using it as the name of a fictional card game within *Star Wars* films, movies, and other expressive works (*e.g.*, comic books).  This is not plausible.  Trademarks identify and distinguish the source of goods and services in commerce.  As a matter of logic, it is impossible to offer *fictional* goods and services in commerce because they do not exist.  More to the point, because fictional goods and services do not exist, there is no *source* of fictional goods and services for a mark to identify or distinguish.  Accordingly, the name of a fictional good or service in an expressive work, such as "Sabacc" in *Stars Wars* films, does not function as a mark for the fictional good or service.

Similarly, Plaintiffs' use of "Sabacc" as the name of a fictional card game in expressive works about *Star Wars* does not render "Sabacc" a mark for those works.  Rather, as the allegations in the Complaint confirm, "STAR WARS" is the mark for expressive works about *Star Wars*.  The allegations in the Complaint also confirm that Plaintiffs use STAR WARS, not the term "Sabacc," as the mark for *Star Wars* products.

In short, Plaintiffs' allegations of trademark use of "Sabacc" are implausible.  This, in turn, renders implausible Plaintiffs' allegations of trademark priority over Defendants in SABACC.  Without trademark priority, Plaintiffs cannot prevail on their claims.

1

## II.   Statement of Relevant Facts

### A.  Defendants

Both Defendants are "private limited companies formed under the laws of England and Wales with their principal place of business located in London, United Kingdom."  Doc. No. 1 at ¶ 7.  Defendant Ren Ventures is the owner/registrant of U.S. Trademark Reg. No. 5,025,710 (the "'710 Registration"), which covers the mark "SABACC" (the "SABACC Mark") in International Classes 9 and 41, respectively, for numerous goods and services (including, for example, video games).  *See id*. at ¶ 57. Defendant SCI is the exclusive licensee of the SABACC Mark. Defendant SCI markets a video card game under the SABACC Mark:



*See also* Doc. No. 1 at ¶ 29 (*accord*).

### B.  Plaintiffs Filed this Lawsuit Instead of Responding to Defendants' Pending Summary-Judgment Before the Trademark Trial and Appeal Board

Both Plaintiffs "are limited liability companies formed under the laws of California with their principal place of business located in San Francisco, California."  Doc. No. 1 at ¶ 6.

On May 1, 2017, Plaintiffs instituted Trademark Cancellation Proceeding No. 92066016 before the TTAB. (the "TTAB Proceeding").   In the TTAB Proceeding, Plaintiffs sought cancellation of Defendant RV's '710 Registration on the ground that RV's SABACC Mark covered by the '710 Registration was allegedly likely to cause confusion with Plaintiffs' putative "Sabacc" mark.  On December 4, 2017, Defendant RV sought partial-summary judgment in the TTAB Proceeding on the ground that Plaintiffs lacked trademark rights in "Sabacc."  Instead of responding to Defendant RV's motion, Plaintiffs filed this lawsuit on December 21, 2017.

1

**C.  Plaintiffs Have Never Applied to Register "Sabacc"**

2

Despite Plaintiffs' allegedly long and extensive trademark use of "Sabacc," Plaintiffs have

3

never applied to register "Sabacc" as a mark with the United States Patent and Trademark Office

4

(the "PTO"); do not own a pending trademark application for "Sabacc"; and do not own a

5

trademark registration for "Sabacc."  Plaintiffs' conduct with respect to its putative "Sabacc"

6

mark stands in stark contrast to Plaintiffs' *Star Wars* franchise.   As shown below, a search for

7

"lucasfilms" in the PTO's database generates 1,077 records:

8



9

10

11

12

13

14

15

16

Many of these records relate to *Star Wars*.  For example, Plaintiffs own pending

17

applications for the marks:

18

| **Mark** | **U.S. Trademark Application Ser. No.** |
| --- | --- |
| THE LAST JEDI | 87/339,228 |
| K-2SO | 87/083,788 |
| HAN SOLO | 87/460,411 |
| KYLO REN | 86/478,480 |
| DEATH TROOPER | 87/083,810 |
| CAPTAIN PHASMA | 86/478,471 |
| BB-8 | 86/478,454 |

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' PARTIAL MOTION
TO DISMISS

Case No.  3:17-cv-07249-RS

Plaintiffs also own registrations for the following *Star Wars*-related marks:

| **Mark** | **U.S. Trademark Reg. No.** |
| --- | --- |
| JYN ERSO | 5,307,486 |
| KYLO REN | 4,928,653 (*see* Doc. No. 1-2 at Appendix B) |
| POE DAMERON | 5,266,363 |
| BB-8 | 5,041,888 |
| DARTH VADER | 5,037,185 |
| PRINCESS LEIA | 5,037,184 |
| C-3PO | 4,974,588 |
| CHEWBACCA | 3,090,303 |

### D.  Plaintiffs' Allegations Concerning "Sabacc"

As shown above, none of Plaintiffs' trademark applications and trademark registrations are for "Sabacc."  Thus, Plaintiffs allege (as they must) common-law trademark and service-mark use of "Sabacc."

As a threshold matter, Plaintiffs allege "Sabacc" is "a fictional card game" within their "*Star Wars* franchise [...]."  Doc. No. 1 at ¶ 3; *see also id* at *id* at. ¶ 18 (Plaintiffs describing the alleged rules of the fictional card game "Sabacc").

Despite "Sabacc" allegedly being the name of a fictional card game, Plaintiffs allege they use "Sabacc" as a mark by including it as an "element" of *Star Wars* "television episodes, a live them park experience, and a major motion picture."  Doc. No. 1 at ¶ 19; *see also id* at ¶ 15 ("One element of the *Star Wars* franchise is the Sabacc fictional card game"); and *id* at. ¶ 18 ("the works that make up the *Star Wars* franchise have repeatedly referred to this fateful game of Sabacc").

Plaintiffs also allege they used "Sabacc" as a trademark "in the 1980 novelization of *The

*Empire Strikes Back* [...], when Han Solo allegedly said "Lando won it in a Sabacc match, or so he claims." Doc. No. 1 at ¶ 17.  Plaintiffs further allege they used "Sabacc" as a trademark "in a trilogy of novels about Lando Calrsissian published in 1983." *Id*. at ¶ 18 (alleging the triology of novels "explains the unique rules of the Sabacc game," and allegedly "also tells the story of how Lando Calrissian lost his spaceship, the *Millennium Falcon*, to Han Solo in a game of Sabacc"). Plaintiffs additionally allege they "and their [putative] licensees] use "Sabacc" as a trademark by "including [Sabacc] as the name of an element of *Star Wars* entertainment products" in 1989, and again in 2015.  Doc. No. 1 at ¶ 19 (Plaintiffs alleging use of "Sabacc" as a trademark for *Star Wars* "card games, mobile games, video games, magazines, comic books, [and] novels [...]"; Plaintiffs showing examples of such alleged use dated 1989 and 2015).

There are no allegations in the Complaint that Plaintiffs have made trademark or service-mark use of "Sabacc" from December 2015 through the present.  *See generally* Doc. No. 1.

### E.  Plaintiffs' Claims for Relief Concerning Alleged Trademark Rights in "Sabacc"

Plaintiffs' allegations of common-law trademark rights in "Sabacc" are the basis, either in whole or in part, for six of Plaintiffs' eight claims for relief in the Complaint.  *See* Count Three at Doc. No. 1, ¶¶ 50-54 (claim for alleged trademark infringement under Section 43(a) of the Lanham Act (*i.e.*, § 1125(a); Plaintiffs alleging Defendants' allegedly "unauthorized reproductions, copies, and colorable imitations of the [alleged] Lucasfilm Trademarks (including the [alleged] Sabacc Mark) [...]"); Count Four, *id*. at ¶¶ 55-9 (claim for cancellation of Defendant RV's federal trademark registration for the mark SABACC under 15 U.S.C. § 1052(d); Plaintiffs alleging they "are the rightful owner of the Sabacc Mark," and "have prior rights to the [alleged] Sabacc Mark"); Count Five, *id*. at ¶¶ 60-63 (claim for alleged unfair competition under Section 43(a) of the Lanham Act; Plaintiffs alleging "Defendants have [allegedly] used and continue to use elements of the *Star Wars* franchise (including without limitation the [alleged] Sabacc Mark)

[...]"); <u>Count Six</u>, *id.* at ¶¶ 64-8 (claim for alleged trademark infringement under the common law of the State of California; Plaintiffs alleging ownership of "all [alleged] rights, title, and interest in and to the Lucasfilm Trademark (including the [alleged] Sabacc Mark) [...]"); <u>Count Seven</u>, *id.* at ¶¶ 69-72 (claim for alleged unfair competition under the common law of the State of California; "Plaintiffs repeat and reallege the allegations above in paragraphs 1 through 39 [...]," which, as discussed above, include allegations of trademark rights and priority in "Sabacc"); and <u>Count Eight</u>, *id.* at ¶¶ 73-80 (claim for alleged unfair competition under CAL. BUS. & PROF. CODE § 17200 *et seq.* (hereinafter, the "UCL"; Plaintiffs alleging "Defendants' conduct has caused and is causing harm to Plaintiffs, including the loss of property and money, such as the cost of litigating their cancellation petition and the loss of opportunities to license the [alleged] Sabacc Mark").

For the reasons discussed in detail below, Defendants move to dismiss: (i) the allegations in Counts Three, and Five through Eight concerning Plaintiffs' alleged trademark rights in "Sabacc"; (ii) Count Four in its entirety based on Plaintiffs' lack of trademark rights in "Sabacc"; and (iii) Counts Six through Eight based on Plaintiffs' failure to plead fraud with particularity.

## III.   Statement of Relevant Legal Standards

### A.  Rule 12(b)(6)

Pursuant to FED. R. CIV. P. 12(b)(6), "a party may assert the following defenses by motion: [...] failure to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  When assessing plausibility, "a court must accept all material allegations of

fact as true and construe the complaint in a light most favorable to the non-moving party." *Brickman v. Facebook, Inc.*, 230 F. Supp. 2d 1036, 1039 (N.D. Cal. 2017). However, "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Brickman*, 230 F. Supp. 2d at 1039.

Moreover, "in considering a motion to dismiss, courts may consider documents attached to the complaint." *Pabalate v. Nationstar Mortg. LLC*, 2017 WL 2439012, *2 (N.D. Cal., June 6, 2017). "Courts may also consider a matter that is properly the subject of judicial notice, such as matters of public record." *English & Sons, Inc. v. Straw Hat Restaurants Inc.*, 2015 WL 4314364, *7 (N.D. Cal., July 15, 2015). Such matter includes, for example, records from government databases like the PTO and TTAB. *See, e.g.*, *Avago Technologies U.S. Inc., et al. v. Nanoprecision Prods., Inc.*, Case No. 16-cv-03737, n. 3 (N.D. Cal., Jan. 31, 2017).

### B. Rule 9(b)

When alleging fraud, Fed. R. Civ. P. "9(b) demands that the circumstances constituting the alleged fraud be `specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy Rule 9(b)'s heightened pleading standard, allegations of fraud "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns*, 567 F.3d at 1124. To satisfy Rule 9(b)'s heightened pleading standard, a plaintiff also cannot "merely lump multiple defendants together"; instead, the allegations must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. Kpmg LLP*, 476 F.3d 756, 765 (9th Cir. 2007).

### IV.   Argument

#### A. Plaintiffs' Allegations of Ownership of Trademark Rights in "Sabacc" are Implausible Because Plaintiffs Cannot Prove Trademark Priority

As background, for Plaintiffs to prevail on their Section 43(a) infringement claim, they must prove: (i) they own trademark rights in "Sabacc," and (ii) Defendants' SABACC Mark is likely to cause purchasing confusion with Plaintiff and/or goods and services that Plaintiffs allegedly offer under their "Sabacc" mark. *See Applied Information Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). Plaintiffs must prove these same two elements to prevail[1] on their: (i) Section 43(a) unfair-competition claim[2]; (ii) common-law trademark infringement claim[3]; and (iii) Plaintiffs' common-law unfair competition claim, and Plaintiffs' UCL claim[4].

As the allegations in the Complaint confirm, Defendant RV, not Plaintiffs, owns the federal '710 Registration for the SABACC Mark. *See* Doc. No. 1 at ¶ 35. "Federal registration of a trademark constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark in commerce." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006). Accordingly, because Plaintiffs do not own a federal trademark registration for SABACC, Plaintiffs must prove ownership of common-law trademark rights in "Sabacc" to satisfy the first element of their claims.

For Plaintiffs to prove ownership of common-law trademark rights in "Sabacc," they must allege facts sufficient to render it plausible that they have trademark priority over Defendants' federal rights in the mark SABACC. *See Spin Master, Ltd. v. Zobmondo Entertainment, LLC*, 944 F. Supp. 2d 830, 850 (C.D. Cal. 2012) ("In order to prevail on a common law trademark infringement claim, a trademark holder must show, *inter alia,* priority of use") (quoting *Am. Petrofina, Inc. v. Petrofina of Cal., Inc.,* 596 F.2d 896, 897 (9th Cir. 1979); *see also id.* ("When a

---

[1] Plaintiffs must prove trademark priority to prevail on Count Four (*i.e.*, Plaintiff's cancellation), which Plaintiffs must also prove to prevail on Counts Three, Five, Six, Seven, and Eight. *See discussion infra*.

[2] *Sebastian Brows Prods. LLC v. Muzooka Inc.*, 2016 WL 5910817, *6 (N.D. Cal., Oct. 11, 2016).

[3] *Sebastian Brown Prods. LLC*, 2016 WL 5910817 at *11.

[4] *Cleary v. News Corp.*, 30 F.3d 1255, 1262-3 (9th Cir. 1994).

DEFENDANTS' PARTIAL MOTION       - 13 -
TO DISMISS

Case No.  3:17-cv-07249-RS

1   federal registration exists, the challenger may rebut the presumption of ownership with evidence

2   establishing its own prior use in commerce of the registered mark"); and *Sengoku Works v. RMC

3   *Int'l*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test

4   of ownership is priority of use"; "[T]the party claiming ownership must have been the first to

5   actually <u>use</u> the mark in the sale of goods or services"). (emphasis added).

6   Plaintiffs must also establish trademark priority to prevail on their cancellation claim (*i.e.*,

7   Count Four). *See 578539 B.C., Ltd. v. Kortz*, 2015 WL 12670488, *13 (C.D. Cal., April 10,

8   2015) ("To plead plausibly that cancellation under § 2(d) is appropriate, Kortz must allege that he

9   has priority to use the Maico marks and that registration of the marks creates a likelihood of

10  confusion").

11             **1.  Plaintiffs' Allegations of Trademark Priority are Implausible**

12  The concept of "trademark priority" lies in the well-settled notion that "[t]he first to use a

13  mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly

14  similar marks in the same industry and market or within the senior user's natural zone of

15  expansion." *Brookfield Commc'ns, Inc. v. W. Cost Entmt't Corp.*, 174 F.3d 1036, 1047 (9th Cir.

16  1999).

17  Against that background, to establish trademark priority in SABACC over Defendants,

18  Plaintiffs must allege facts sufficient to render it plausible that: (i) they used "Sabacc" in United

19  States commerce as a mark before Defendants' 2015 date of first use, <u>and</u> (ii) Plaintiffs made

20  continuous, uninterrupted use of "Sabacc" as a mark from the date of their alleged first use

21  through the present. *See Watec Co. v. Liu,* 403 F.3d 645, 654 (9th Cir.2005) ("A person claiming

22  senior rights in a trademark must establish not only that he or she used the mark before the mark

23  was registered, but also that such use has continued to the present").

24  For the reasons discussed below, Plaintiffs' allegations of trademark priority over

Defendants in the mark SABACC are implausible because: (i) Plaintiffs' allegations of trademark use of "Sabacc" are implausible, and (ii) even if Plaintiffs' allegations of trademark use of "Sabacc" were plausible, Plaintiffs' allegations are insufficient to render it plausible that they made *continuous* trademark use of "Sabacc."

### a.   Plaintiffs' Allegations of Trademark Use of "Sabacc" are Implausible

Trademark "use" means to use a word or term in a manner that identifies the source of goods or services, and distinguishes those goods and services from the goods and services of others.  *See Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1070 (9th Cir. 2006) (a trademark is "a symbol that distinguishes a firm's goods and identifies their source"); *see also Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 906 (9th Cir. 1995) ("Implicit in the concept of a trade mark 'is [...] that it be used in such a manner that it would be readily perceived as identifying [the source of] services'") (quoting *In re Moody's Investor Serv., Inc.,* 13 U.S.P.Q.2d 2043, 2047 (T.T.A.B.1989)).

Here, Plaintiffs' allegations of trademark use of "Sabacc" are implausible because: (i) the name of a fictional good or service in an expressive work[5] does not function as a mark for that fictional good or service, or the expressive work in which it appears, and (ii) Plaintiffs use the mark "STAR WARS," *not* "Sabacc," as the mark for STAR WARS-brand products.

### i.   The Use of "Sabacc" for the Name of a Fictional Card Game in *Star Wars* Expressive Works Does Not Render "Sabacc" a Mark for the Fictional Game or the Expressive Works in Which the Game Appears

The name of a fictional good or service in an expressive work does not function as a mark for that fictional good or service.   That is because fictional goods and services do not exist and,

---

[5] "Expressive works" include, for example, movies, films, television shows, books, novels, dictionaries, and video games. *See Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74 F. Supp. 3d 1134, 1140 (N.D. Cal. 2014) (referencing *Brown v. Entertainment Merchants Asso'c*., 564 U.S. 786, 790 (2011)).

thus, cannot be placed in commerce. *Cf.* 15 U.S.C. § 1125(a) ("Any person who, on or in connection with any goods or services […] <u>uses in commerce</u> […]"). As such, there is no *source* of a fictional good or service for a word or term to identify and distinguish in commerce.

For example, in *Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*, the plaintiff sued Warner Bros. for allegedly infringing its mark "CLEAN SLATE." 947 F. Supp. 2d 922, 924 (N.D. In. 2013). As background, Warner Bros. produced a film in 2010 titled *The Dark Knight Rise*s. *Fortres Grand Corp.*, 947 F. Supp. 2d at 924. "One of the plot lines in the film involves the character Selina Kyle and her attempt to procure a software program that will erase her criminal history from every computer database in the world. The software program she is trying to procure was designed by the fictional company Rykin Data and is referred to four times in the film as 'clean slate.'" *Id.* Notably, the court dismissed the Plaintiff's trademark-infringement claims at the pleadings stage on the ground that, *inter alia*, "Warner Bros. is only using 'clean slate' in a 'non-trademark' way. In other words, the film's use of the phrase 'clean slate' is not 'identifying the source' of the software product (because there is no real software product) […]." *Id.* at 930; *see also Fortres Grand Corp. v. Warner Bros. Entertainment, Inc.*, 763 F.3d 696, 702-03 (7th Cir. 2014) (affirming the district court's dismissal of the Complaint at the pleadings stage; holding "goods," for purposes of Section 43(a), means "tangible" goods).

Here, Plaintiffs use "Sabacc" in *Star Wars* films, movies, television shows, comic books, novels, and dictionaries as the name of a card game. However, like the "clean slate" software program in the film *The Dark Knight Rises*, the "Sabacc" card game in *Star Wars* expressive works is *fictional* and, thus, does not exist *in commerce*. Accordingly, just as "clean slate" did not function as a mark for a fictional software program in *The Dark Knight Rise*, "Sabacc" does not function as a mark for a fictional card game in *Star Wars* expressive works.

Likewise, the name of a fictional good or service in an expressive work does not function

as a mark for the expressive work in which the fictional good or service appears.  For example, in

*Paramount Pictures Corp. v. Romulan Invasions*, Paramount opposed the registration of the mark

THE ROMULANS on the ground that it created a likelihood of confusion with "[a] race of space

creatures called The Romulans" in Paramount's STAR TREK series.   7 U.S.P.Q. 1897, *1

(T.T.A.B., Mar. 31, 1998).

Paramount, however, did not own a registration for "The Romulans."  *Paramount Pictures*

*Corp.*,  7 U.S.P.Q. 1897 at *2.  Therefore, Paramount claimed common-law trademark rights in

"The Romulans" based on the following facts:

> "The Romulans are a fictional alien race introduced in an early episode of the
> STAR TREK television show. They are related to the Vulcans, another fictional
> race and, with the Klingons, comprise two alien enemy races. The Romulans were
> featured in episodes called 'The Balance of Terror' and 'The Enterprise Incident'
> and have appeared or were mentioned in other episodes. A STAR TREK novel is
> published bi-monthly by the Pocket Books arm of Simon & Schuster. One such
> novel, The Web of the Romulans, has had more than one printing and there are
> more than 420,000 copies in print. Another, My Enemy, My Ally, which is about
> The Romulans, has more than 300,000 copies in print. A third book, 'The
> Romulan Way' was scheduled for publication when opposer's depositions were
> taken. The Romulans have appeared in comic books as well. Games and plastic
> models of the Romulan spaceships have been available to the public." *Id.*

The Board held that these facts established "ample evidence that [Paramount] used the

term 'Romulans' as of a long time prior to applicant's first use."  *Paramount Pictures Corp.*,  7

U.S.P.Q. 1897 at *2.  Nonetheless, the Board held "there are serious questions with regard to the

<u>nature</u> of [Paramount's] use" of the term "Romulans."  *Id.*  (emphasis added).

The Board held the "[a]ppearance of Romulans as characters in the storyline of the STAR

TREK television series or movies does not make Romulans a trademark or service mark for

either." *Paramount Pictures Corp.*,  7 U.S.P.Q. 1897 at *3.  The Board also held "the appearance

of Romulans as characters in various novels or comic books based on STAR TREK cannot afford

trademark protection for the name Romulan in connection with those goods."  *Paramount*

*Pictures Corp.*, 7 U.S.P.Q. 1897 at *3.  Based on the foregoing, the Board held that Paramount

DEFENDANTS' PARTIAL MOTION          - 17
TO DISMISS                            -                              Case No.  3:17-cv-07249-RS

"has not used the term 'Romulan' (or 'Romulans') as a mark to identify and distinguish any services […]." *Id.*

Here, like using "Romulans" as the name of fictional characters in *Star Trek* expressive works, using "Sabacc" as the name of a fictional card game in *Star Wars* expressive works does not render "Sabacc" a mark for those works. *See also Fortres Grand Corp.*, 947 F. Supp. 2d at 924 (Warner Bros.' use of "clean slate" as the name of a fictional software program in the film *The Dark Knight Rises* also did not function as a source identifier of the film); *see also In re D.C. Comics, Inc.*, 689 F.2d 1042, 215 USPQ 394 at n. 1 (CCPA 1982) ("[T]he appearance of the JOKER in a story in a BATMAN comic book does not make the JOKER a trademark for the book"); *In re Valley Dental,* 1998 WL 111034 at *4 ("[T]he story lines in each of the cartoon specimens involves characters referred to as 'SUGAR BUGS,' and the pictorial representations in each cartoon undoubtedly are intended to represent these characters"; however, "Sugar Bugs" is not used "as [a] service mark, but merely as the name of a group of characters in the cartoon storyline"); and *In re Caserta*, 46 U.S.P.Q. 1088 at *1, 3 (T.T.A.B., Feb. 26, 1998) (use of "Furr-ball Furcania" to "identif[y] the main character of the story" failed to "function[] as a trademark in connection with children's books and periodical publications, namely, comic strips and comic magazines").

Instead, just as the mark STAR TREK identifies *Star Trek* expressive works, STAR WARS (*not* "Sabacc") is the mark that identifies *Star Wars* expressive works.

### ii.    Plaintiffs Do Not Use "Sabacc" as a Mark for any *Star Wars* Products

Plaintiffs claim they also made trademark use of "Sabacc" by using it on or in connection with STAR WARS-brand products.   For example, Plaintiffs allege in *ipse dixit* fashion "[t]he characters on the front of the product [inset] are part of the *Star Wars* <u>fictional language</u> Aurebesh and translate in English to SABACC."  Doc. No. 1. at 8, n. 1.  (emphasis added):



Plaintiffs' argument is a red herring.  As shown below, "STARWARS.COM" appears on the consumer-facing packaging of the card game:



Accordingly, even if consumers were aware that the characters on the packaging are allegedly *fictional*-language characters (as opposed to, for example, mere artwork) capable of being translated to a *real* language, and even if consumers were aware those *fictional* characters allegedly translate to "Sabacc," "Sabacc" does not function as a source identifier for the card game (*i.e.*, a mark)--STAR WARS performs that role.  After all, if the *fictional*-language characters performed a source-identifying role, as Plaintiffs allege, then one can only wonder why Plaintiffs felt the need also to use their STAR WARS mark on the consumer-facing packaging of the card game.

Similarly, the presence of "Sabacc" at the top of the playing cards does *not* perform the role of a trademark, *i.e.*: identifying the *source* of the game.  Rather, used in this manner, "Sabacc" is nothing more than the title of a game, just as "Poker" would be in "How To Play Poker."

Plaintiffs also allege trademark use of "Sabacc" in connection with the following STAR

1   WARS-brand game from 1989:



As shown above, Plaintiffs do not use "Sabacc" to identify and distinguish the source of *Star Wars* games.  To be sure, one need look no further than the universally recognized "®" symbol that Plaintiffs affixed immediately after the prominently displayed STAR WARS mark on the product packaging (*i.e.*, the first image), and the instruction sheet (*i.e.*, the second image), shown above.  Noticeably absent from the smaller word "Sabacc" is any indicia of trademark ownership, *i.e.*: neither "®" nor "™".

Instead, like the use of the mark STAR TREK in *Paramount* to identify, distinguish, and draw consumer attention to, games about *Star Trek*, Plaintiffs unremarkably use the mark STAR WARS (*not* "Sabacc") to identify, distinguish, and draw consumer attention to, their games about *Star Wars*.  Accordingly, Plaintiffs' allegations of trademark use of "Sabacc" on or in connection with STAR WARS-brand products are implausible.  *See Paramount Pictures Corp.*,  7 U.S.P.Q. 1897 at *4 ("Several of the manuals involve plots in which Romulans are featured or otherwise take part"; however, "[n]one appears to be marketed as a Romulan game but rather as STAR TREK game involving Romulans."  Accordingly, "[t]he claim of trademark rights with respect to games is subject to the same infirmity as was noted as to books about Romulans or comics involving Romulan characters").

Moreover, despite claiming long, extensive use of a "Sabacc" as a trademark, the products

above are from 1989 and 2015, respectively.   As discussed below, the rare, intermittent appearance of "Sabacc" on the packaging for games about *Star Wars* is illustrative of the second fatal flaw in Plaintiffs' allegations concerning trademark priority: Plaintiffs' failure to make alleged *continuous* trademark use of "Sabacc."

### b. Plaintiffs' Allegations of Continuous Trademark Use of "Sabacc" Are Implausible

As discussed above, Plaintiffs must not only prove use of "Sabacc" as a mark to establish trademark priority, but also Plaintiffs must prove continuous use of "Sabacc" as a mark from their alleged date of first use through the present.  *See Spin Master, Ltd.*, 944 F. Supp. 2 at 850-51 ("The Ninth Circuit has imposed a strict 'continuous use' requirement to demonstrate common law priority; "[T]he party claiming common law priority (here, Zobmondo) bears the burden to show continued use […]"); *see also Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.,* 493 F.2d 709, 712 (9th Cir. 1974) (*accord*).

"'To be a continuous use, the use must be maintained without interruption.'" *Spin Master, Ltd.*, 944 F. Supp. 2d at 851.  As discussed below, Plaintiffs' allegations of sporadic use of "Sabacc" as a mark from 1980 through December 2015 is insufficient to establish continuous use (which, as discussed *supra*, is fatal to Plaintiffs' ability to establish trademark priority).  *See generally* Doc. No. 1.

Plaintiffs allege they first used "Sabacc" as a mark in 1980.  *See id*. at ¶ 17 (alleging "Sabacc" appeared "in the 1980 novelization of *The Empire Strikes Back*").  Plaintiffs, however, allege they did not use "Sabacc" as a mark again until three years later in 1983.  *See id*. at ¶ 18 ("Plaintiffs' [alleged] Sabacc Mark next appeared in a triology of novels about Lando Calrissian published in 1983").  This three-year gap is insufficient to establish continuous use, and vitiates Plaintiffs' alleged 1980 priority date.  *See Spin Master, Ltd.*, 944 F. Supp. 2d at 852-53 (two-year gap in use insufficient to establish continuous use); *see also Conversive, Inc. v. Conversagent,*

*Inc.*, 433 F. Supp. 2d 1079, 1089-90 (C.D. Cal. 2006) (same); and *Casual Corner Assocs., Inc.*, 493 F.2d at 712 (one-year gap in use insufficient to establish continuous use).

Plaintiffs' putative 1983 priority date fares no better.  After allegedly using "Sabacc" as a mark in 1983, Plaintiffs' next alleged use did not occur until 1989.  *See* Doc. No. 1 at. ¶ 19 (alleging use of "Sabacc" as a mark on a 1989 STAR WARS-brand game); *see also id.* at Appendix A (alleging use of "Sabacc" as a mark on a 1989 STAR WARS-brand roleplaying game).  This six-year gap in alleged use is insufficient to establish continuous use from 1983 to 1989, and vitiates Plaintiffs' putative 1983 priority date.  *See discussion supra.*

Plaintiffs' putative 1989 priority date fares no better than their putative 1980 and 1983 priority dates, respectively.  After allegedly using "Sabacc" as a mark in 1989, Plaintiffs' next allege use did not occur until January, April, October, and December of 2015.  *See* Doc. No. 1 at ¶ 19 (alleging use of "Sabacc" as a mark in a January 2015 television show; in an April 2015 card game; and in October 2015 comic books); *see also id.* at Appendix A (alleging use of "Sabacc" as a mark in an October 2015 card game, and a December 2015 visual dictionary).  Not to put too fine of a point on it, but: this *16*-year gap in alleged use is insufficient to establish continuous use, and vitiates Plaintiffs' putative 1989 priority date.

Plaintiffs' putative 2015 priority date fares no better than their putative 1980, 1983, and 1989 priority dates, respectively.  As discussed *passim*, continuous use means uninterrupted use from the date of first use through the present.  *See also Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Management, Inc.*, 744 F.3d 595, 599 (9th Cir. 2014) ("To establish a protectable ownership interest in a common law trademark, the owner must "establish not only that he or she used the mark before the mark was registered, but also that such use has continued to the present").

Here, even if Plaintiffs made use of "Sabacc" as a mark in January, April, October, or

December 2015 (*but see supra*), Plaintiffs do not allege use of "Sabacc" as a mark at any point from December 2015 through the present.  *See generally* Doc. No. 1.   This two-years-and-growing gap in alleged use is insufficient to establish continuous use, and vitiates Plaintiffs' putative 2015 priority date.

For the reasons discussed above, Plaintiffs have failed to plead facts sufficient to render it plausible that they made trademark use, let alone continuous trademark use of, "Sabacc."   This is fatal to Plaintiffs' ability to establish trademark priority, and, in turn, ownership of common-law trademark rights in "Sabacc."

**B.  Plaintiffs' Allegations Fail to Satisfy Rule 9(b)'s Heightened Pleading Standard**

Plaintiffs' allegations of fraud in Counts Six through Eight fail to satisfy Rule 9(b)'s heightened pleading standard for at least three reasons.   First, in Counts Six and Seven, respectively, Plaintiffs allege in conclusory fashion that "[i]n addition, Defendants are guilty of fraud oppression, fraud, and malice within the meaning of CAL. CIV. CODE. § 3294."  *See* Doc. No. 1 at ¶¶ 68, 72.  Plaintiffs, however, do not plead any allegations concerning the alleged who, what, when, where, and how of Defendants' alleged "fraud."   To be sure, the first time the word "fraud" appears anywhere in the Complaint is in paragraph 68, quoted above.   More to the point, Plaintiffs' threadbare, conclusory allegations of fraud fall short of Rule 9(b)'s heightened pleading standard.  *See Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (the plaintiff setting forth only "conclusory allegations about fraud"; the court holding it could not "determine from Shroyer's barebone allegations that he has stated a plausible claim").

Second, in Count Eight, Plaintiffs allege that Defendants' alleged "conduct is [...] 'fraudulent' in that it is likely to deceive customers into believing that Plaintiffs endorsed, supported, sponsored, approved, or were affiliated, connected, or otherwise associated with

Defendants or their products."   Doc. No. 1 at ¶ 77.  These allegations are insufficient.  "Intent to deceive" is an additional element of a claim under the UCL's fraudulent prong.  *See Shroyer*, 622 F.3d at 1044 ("And 'fraudulent' conduct requires a showing that members of the public are likely to be deceived").   Merely reciting the elements of a claim, however, falls short of Rule 9(b)'s heightened pleading standard.  *See Paul Ponomarenko v. Nathan Shapiro, et al.*, 2018 WL 707597, *8 (N.D. Cal., Feb. 5, 2018) ("Shapiro's vague factual allegations and recitation of elements […] are insufficient to meet the requirements of Rule 9(b), or even the pleading standards set forth in *Iqbal* and *Twombly*").

Third, as discussed above, when pleading allegations of fraud against multiple defendants, the plaintiff must specify each defendants' allegedly fraudulent conduct. Here, in Counts Six, Seven, and Eight, respectively, Plaintiffs do not specify how each Defendant allegedly engaged in fraud; instead, Plaintiffs allege only that "Defendants" engaged in alleged fraud.  *See supra*.  As such, Plaintiff fails to comply with Rule 9(b).

**V.   Conclusion**

Based on the foregoing, Defendants respectfully request that this Court: (i) dismiss with prejudice pursuant to FED. R. CIV. P. 12(B)(6) the allegations in Counts Three, Five, Six, Seven, and Eight of the Complaint concerning Plaintiffs' alleged rights in the term "Sabacc"; (ii) dismiss with prejudice pursuant to FED. R. CIV. P. 12(B)(6) Count Four of the Complaint in its entirety; (iii) dismiss with prejudice pursuant to FED. R. CIV. P. 9(B) Counts Six through Eight of the Complaint in their entirety; and (iv) grant Defendants any further relief this Court deems just and equitable.

Dated: February 15, 2018
       New York, New York

Respectfully submitted,

ANDREWS KURTH KENYON LLP

By:

Michael Zachary (State Bar No. 112479)
1801 Page Mill Road, Suite 210
Palo Alto, CA 94304
Tel:  (650) 384-4700
Fax:  (650) 384-4701
mzachary@kenyon.com

James E. Rosini (admitted *pro hac vice*)
Jonathan W. Thomas (to apply *pro hac vice*)
One Broadway
New York, New York 10004
Tel.: (212) 908-6169
Fax.: (212) 425-528
jrosini@kenyon.com
jthomas@kenyon.com

*Counsel for all Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 15, 2018, a true and correct copy of the foregoing document, titled *Defendants' Partial Motion to Dismiss Pursuant to FED. R. CIV. P. 12(B)(6) and FED. R. CIV. P. 9(B)*, was filed using the Court's Electronic-Court Filing System, which will send notification of such filing to Plaintiffs' counsel-of-record in this case:

Cynthia S. Arato
SHAPIRO ARATO LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110
Tel:  (212) 257-4880
Fax:  (212) 202-6417
carato@shapiroarato.com

James E. Rosini

*Counsel for all Defendants*

DEFENDANTS' PARTIAL MOTION
TO DISMISS

- 25
-

Case No.  3:17-cv-07249-RS