1   Cynthia S. Arato (State Bar No. 156856)
    Fabien M. Thayamballi (State Bar No. 284752)
2   SHAPIRO ARATO LLP
    500 Fifth Avenue, 40th Floor
3   New York, New York 10110
    Tel.: (212) 257-4880
4   Fax.: (212) 202-6417
    carato@shapiroarato.com
5
    Counsel for Plaintiffs Lucasfilm Ltd. LLC
6   and Lucasfilm Entertainment Company Ltd. LLC

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  Lucasfilm Ltd. LLC and Lucasfilm
    Entertainment Company Ltd. LLC,
12                                          Case No.  3:17-cv-07249-RS
                                Plaintiffs,
13                                          PLAINTIFFS' MEMORANDUM OF LAW
      v.                                    IN OPPOSITION TO DEFENDANTS'
14                                          PARTIAL MOTION TO DISMISS
    Ren Ventures Ltd. and Sabacc Creative
15  Industries Ltd.,                        Hearing:  March 29, 2018 at 1:30 p.m.

16                              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28
    PLAINTIFFS' OPPOSITION TO                        Case No.  3:17-cv-07249-RS
    MOTION TO DISMISS

1

**TABLE OF CONTENTS**

2

**Page**

3

TABLE OF AUTHORITIES ....................................................................................... ii

4

PRELIMINARY STATEMENT/STATEMENT OF ISSUES ...................................... 1

5

THE ALLEGATIONS OF THE COMPLAINT .......................................................... 2

6

ARGUMENT ............................................................................................................... 6

7

    I.     LUCASFILM HAS ALLEGED OWNERSHIP OF THE SABACC MARK ................. 6

8

          A.    Lucasfilm Has Common Law Rights In The Sabacc Mark .................... 6

9

          B.    Lucasfilm Has Alleged Continuous Use Of The Sabacc Mark To Maintain Its Priority Over Defendants .................................................................... 14

10

11

          C.    Plaintiffs Have Alleged Defendants' Unfair Competition, Which is Not Dependent on Plaintiffs' Priority ........................................................... 16

12

    II.    NONE OF LUCASFILM'S CLAIMS ARE SUBJECT TO RULE 9(B) ...................... 17

13

CONCLUSION ........................................................................................................... 19

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4
5

*578539 B.C., Ltd. v. Kortz,*
  No. CV-14-04375-MMM (MANx), 2014 WL 12572679 (C.D. Cal. Oct. 16, 2014) ........ 16, 17

6

*Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.,*
  744 F.3d 595 (9th Cir. 2014) .............................................................................................. 15

7
8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................................... 14

9

*Audio Fid., Inc. v. High Fid. Recordings, Inc.,*
  283 F.2d 551 (9th Cir. 1960) .............................................................................................. 10

10
11

*Bally Midway Mfg. Co. v. Am. Postage Mach., Inc.,*
  No. 82 C 2700, 1983 WL 1150 (E.D.N.Y. Aug. 25, 1983) .................................................. 8

12

*Belmora LLC v. Bayer Consumer Care AG,*
  819 F.3d 697 (4th Cir. 2016) .............................................................................................. 16

13
14

*Bondarenko v. Wells Fargo Bank, N.A.,*
  No. CV-15-403-DMG (JEMx), 2016 WL 1622410 (C.D. Cal. Apr. 18, 2016) .................... 18

15

*Brown v. It's Entm't, Inc.,*
  34 F. Supp. 2d 854 (E.D.N.Y. 1999) .................................................................................... 8

16
17

*Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.,*
  493 F.2d 709 (9th Cir. 1974) .............................................................................................. 15

18

*Conan Props., Inc. v. Conans Pizza, Inc.,*
  752 F.2d 145 (5th Cir. 1985) ........................................................................................... 9, 10

19
20

*DC Comics, Inc. v. Filmation Assocs.,*
  486 F. Supp. 1273 (S.D.N.Y. 1980) ................................................................................. 7, 8

21

*DC Comics v. Kryptonite Corp.,*
  336 F. Supp. 2d 324 (S.D.N.Y. 2004) .................................................................................. 8

22
23

*DC Comics, Inc. v. Powers,*
  465 F. Supp. 843 (S.D.N.Y. 1978) ....................................................................................... 8

24

*Fortres Grand Corp. v. Warner Brothers Entm't Inc.,*
  947 F. Supp. 2d 922 (N.D. Ind. 2013) ............................................................................ 10, 11

25
26

*Games Workshop Ltd. v. Chapterhouse Studios, LLC,*
  No. 10-cv-8103, 2012 WL 5949105 (N.D. Ill. Nov. 27, 2012) ............................................ 8

27

*Garcia v. Coleman,*
  No. C-07-2279 EMC, 2008 WL 4166854 (N.D. Cal. Sept. 8, 2008) .................................. 18

28

*Gen. Healthcare Ltd. v. Qashat*,
   364 F.3d 332 (1st Cir. 2004) ........................................................................... 16

*Hana Fin., Inc. v. Hana Bank*,
   735 F.3d 11588 (9th Cir. 2013) ...................................................................... 15

*Herbko Int'l, Inc. v. Kappa Books, Inc.*,
   308 F.3d 1156 (Fed. Cir. 2002) ...................................................................... 12

*In re DC Comics*,
   689 F.2d 1042 (C.C.P.A. 1982) ...................................................................... 10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................................ 18

*Kleven v. Hereford*,
   No. CV 13-02783-AB (AGRx), 2016 WL 4424964 (C.D. Cal. Feb. 18, 2016) ........................ 8

*Lambert Corp. v. LBJC Inc.*,
   No. 2:13-CV-00778-CAS (JCGx), 2014 WL 2737913 (C.D. Cal. June 16, 2014) ................. 16

*Lever Bros. Co. v. Nobio Prod.*,
   103 F.2d 917 (C.C.P.A. 1939) ................................................................... 12, 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ................................................................................... 16

*Makreas v. First Nat. Bank of N. Calif.*,
   856 F. Supp. 2d 1097 (N.D. Cal. 2012) .......................................................... 18

*Matal v. Tam*,
   137 S. Ct. 1744 (2017) ..................................................................................... 9

*New Line Cinema Corp. v. Easter Unlimited, Inc.*,
   No. CV 89-2017, 1989 WL 248212 (E.D.N.Y. July 19, 1989) ............................... 8

*Pinterest Inc. v. Pintrips Inc.*,
   15 F. Supp. 3d 992 (N.D. Cal. 2014) ............................................................... 6

*Qualitex Co. v. Jacobson Prods. Co.*,
   514 U.S. 159 (1995) ........................................................................................ 9

*Rees v. PNC Bank, N.A.*,
   308 F.R.D. 266 (N.D. Cal. 2015) ................................................................... 17

*S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc.*,
   829 F. Supp. 2d 437 (E.D. La. 2011) ............................................................. 14

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ........................................................................ 18

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*,
   944 F. Supp. 2d 830 (C.D. Cal. 2012) ........................................................... 15

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
   846 F. Supp. 2d 1063 (N.D. Cal. 2012) ................................................................. 13

*Twentieth Century Fox Film Corp. v. Mow Trading Corp.*,
   749 F. Supp. 473 (S.D.N.Y. 1990) ........................................................................ 8

*Universal City Studios, Inc. v. J.A.R. Sales, Inc.*,
   No. 82-4892-AAH (Bx), 1982 WL 1279 (C.D. Cal. Oct. 20, 1982) .......................... 8

*Universal City Studios, Inc. v. Kamar Indus., Inc.*,
   No. H-82-2377, 1982 WL 1278 (S.D. Tex. Sept. 20, 1982) .................................... 8

*Viacom Int'l Inc. v. IJR Capital Investments, LLC*,
   242 F. Supp. 3d 563 (S.D. Tex. 2017) .................................................................. 7

*Walker v. Signal Cos., Inc.*,
   84 Cal. App. 3d 982 (Ct. App. 1978) .................................................................. 18

*Walt Disney Co. v. Powell*,
   698 F. Supp. 10 (D.D.C. 1988) ........................................................................... 8

*Walt Disney Prods. v. Filmation Assocs.*,
   628 F. Supp. 871 (C.D. Cal. 1986) ...................................................................... 8

*Warner Bros. Inc. v. Am. Broad. Cos., Inc.*,
   720 F.2d 231 (2d Cir. 1983) ................................................................................ 7

*Warner Bros. Entm't v. Glob. Asylum, Inc.*,
   No. CV 12-9547 PSG (CWx), 2012 WL 6951315 (C.D. Cal. Dec. 10, 2012) .......... 8

*Warner Bros. v. Gay Toys, Inc.*,
   658 F.2d 76 (2d Cir. 1981) .................................................................................. 7

*Warner Bros. v. Gay Toys, Inc.*,
   724 F.2d 327 (2d Cir. 1983) ................................................................................ 7

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
   758 F.3d 1069 (9th Cir. 2014) ............................................................................ 15

**Administrative Decisions**

*In re Caserta*,
   46 U.S.P.Q.2d 1088 (T.T.A.B. Feb. 26, 1998) ..................................................... 12

*In re Valley Dental, Inc.*,
   1998 WL 111034 (T.T.A.B. Mar. 6, 1998) .......................................................... 12

*NSM Res. Corp. v. Microsoft Corp.*,
   113 U.S.P.Q.2d 1029 (T.T.A.B. Nov. 25, 2014) .................................................. 12

*Paramount Pictures Corp. v. Romulan Invasions*,
   7 U.S.P.Q.2d 1897 (T.T.A.B. Mar. 31, 1988) ................................................. 11, 12

1

**Statutes**

2  15 U.S.C. § 1052 ................................................................................................................. 15

3  15 U.S.C. § 1065 ................................................................................................................. 15

4  15 U.S.C. § 1071 ................................................................................................................. 13

5  15 U.S.C. § 1111 ................................................................................................................. 14

6  15 U.S.C. § 1125 ................................................................................................................. 16

7  15 U.S.C. § 1127 ................................................................................................................. 16

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Lucasfilm Ltd. LLC and Lucasfilm Entertainment Company Ltd. LLC (individually or collectively, "Lucasfilm") respectfully submit this memorandum of law in opposition to the partial motion to dismiss filed by Defendants Ren Ventures Ltd. ("Ren Ventures") and Sabacc Creative Industries Ltd.

## PRELIMINARY STATEMENT/STATEMENT OF ISSUES

Lucasfilm is the owner of the famous *Star Wars* franchise.  The elements of the franchise, including its fanciful characters, extraterrestrial locations, alien creatures, spaceships, and games, have captivated fans since 1977.  These elements are immensely popular and have for decades symbolized Plaintiffs and their *Star Wars* franchise to the public.

One element of the Star Wars franchise is "Sabacc."  Sabacc is the legendary game of chance through which *Star Wars* character Hans Solo won his iconic spaceship, the *Millennium Falcon*.  It is an element of the *Star Wars* franchise that helps frame the *Star Wars* story, and, like other aspects of *Star Wars* lore, it is the creation of, and uniquely associated with, Lucasfilm and its *Star Wars* franchise.

In 2016, Defendants began exploiting and marketing a mobile game app under the name "Sabacc."  That was no coincidence.  Defendants' app is the digital version of the Sabacc game that Lucasfilm created and that consumers associate with Lucasfilm.  Defendants' partial motion to dismiss does not dispute Plaintiffs' allegations—and the inescapable conclusion—that Defendants designed their app, and named it Sabacc, to exploit Sabacc's association with *Star Wars* and trade off Lucasfilm's goodwill.  (Complaint ¶¶ 4, 28-34).

Despite the foregoing, Defendants advance the specious argument that Lucasfilm's trademark and unfair competition claims are "implausible" because Plaintiffs' Sabacc is "a fictional good" and the name of such a good "in an expressive work does not function as a mark." That is clearly wrong.  Indeed, to advance their argument, Defendants ignore *all* the cases that

PLAINTIFFS' OPPOSITION TO
MOTION TO DISMISS
1
Case No.  3:17-cv-07249-RS

have granted common law trademark protection to fictional elements of expressive works. Defendants also refuse to accept as true—as they must—Plaintiffs' well-pled allegations that consumers have long recognized Sabacc as uniquely associated with Plaintiffs and their *Star Wars* franchise. Defendants' own conduct demonstrates the absurdity of their claim. Defendants co-opted the Sabacc mark for one reason alone: to exploit Sabacc's association with *Star Wars*. They would not have used the fanciful name "Sabacc" if consumers did not already associate it with the *Star Wars* franchise.

Defendants' remaining arguments similarly refuse to accept as true the allegations of Plaintiffs' Complaint. Defendants contend that Plaintiffs have failed to allege "continuous use" of Sabacc, but the Complaint expressly alleges that Lucasfilm has used Sabacc "[i]n the decades since the coining of 'Sabacc' and continuing to the present day." Defendants contend that Plaintiffs' state law claims should be dismissed for failing to plead "fraud" with particularity. But Plaintiffs have not sued Defendants for fraud, and numerous allegations in the Complaint that Defendants do not attack independently support Plaintiffs' state law claims.

Defendants' arguments ignore the law and Plaintiffs' well-pled Complaint. This Court should, accordingly, deny Defendants' motion.

## THE ALLEGATIONS OF THE COMPLAINT

Plaintiffs' Complaint alleges the following facts, each of which this Court must accept as true and which together state not merely plausible, but compelling, grounds for relief.

In 1977, Lucasfilm released its blockbuster motion picture *Star Wars*, later retitled *Star Wars Episode IV: A New Hope*. (Complaint ¶ 12). Since then, Lucasfilm has released numerous entertainment products, including additional blockbuster motion pictures, television series, books, and comic books, and these together comprise the well-known *Star Wars* franchise. (*Id.* ¶¶ 2, 12-14, 19). Plaintiffs have also exploited the characters, names, marks, and elements from the

franchise in mobile applications, games, and many other products and types of merchandise.  (*Id.* ¶ 14).  Given this widespread and longstanding use, the elements of the *Star Wars* universe, including its characters, locations, creatures, spaceships, and games are powerful source-identifiers among the public/fans who associate such elements with Plaintiffs and their *Star Wars* franchise.  (*Id.* ¶ 2).

As explained above, the Sabacc card game is one of these elements of the *Star Wars* franchise, helps frame the *Star Wars* story, and is an important part of *Star Wars* lore.  (*Id.* ¶¶ 3, 15, 17-18).  Sabacc (hereinafter the "Sabacc Mark" when referring to the name) originated in a draft screenplay for the 1980 motion picture *Star Wars Episode V:  The Empire Strikes Back*.  (*Id.* ¶ 17).  It subsequently appeared in the novelization of the movie, and it was then featured in a trilogy of novels centered on the Lando Calrissian character.  (*Id.* ¶¶ 17-18).  Lucasfilm and its licensees have since used the Sabacc Mark in connection with dozens of additional entertainment products in the *Star Wars* franchise, including card games, mobile games, video games, magazines, comic books, novels, television episodes, and a live theme park experience.  (*Id.* ¶ 19).  As developed by Plaintiffs in these uses, the Sabacc game is a fully developed card game, with rules created by Plaintiffs.  (*Id.* ¶¶ 18-19, 32).

Contrary to Defendants' false representation that Plaintiffs do not allege use of the Sabacc Mark after 2015 (Defs.' Mem. at 22-23), Plaintiffs allege that Lucasfilm has used the Sabacc Mark "[i]n the decades since the coining of 'Sabacc' and *continuing to the present day*."  (*Id.* ¶ 19 (emphasis added)).  As a result of this extensive use, consumers have long recognized the Sabacc Mark as uniquely associated with Lucasfilm and its *Star Wars* franchise.  (*Id.* ¶¶ 3, 16, 20).  The press has too, having featured the Sabacc Mark in unsolicited media coverage.  (*Id.* ¶¶ 21-22).  Sabacc has even invaded popular culture.  For example, one news article noted that "Director J.J. Abrams [wa]s keeping his sabacc cards close to his chest" regarding the contents of *Star Wars*

*Episode VII: The Force Awakens* (*id.* ¶ 22), and the entertainment website *The A.V. Club* has listed "Sabacc [from] *Star Wars*" as one of the top "fictitious *pop-culture games* with convoluted rules." (*Id.* (emphasis added)).

Defendants are not affiliated with Plaintiffs, and Plaintiffs have not authorized Defendants' use of Sabacc. (*Id.* ¶ 4). Defendants nevertheless released an unauthorized "Sabacc" mobile game shortly after the release of the motion picture *Star Wars Episode VII: The Force Awakens* to trade off the reputation and goodwill of Lucasfilm and its *Star Wars* franchise. (*Id.*).

Defendants' Sabacc app mimics both the fictional Sabacc game from Lucasfilm's *Star Wars* franchise and the corresponding physical Sabacc card games previously licensed and authorized by Lucasfilm. (*Id.* ¶ 32). That alone is likely to cause confusion about the source of Defendants' product, which is precisely the result Defendants seek. (*Id.* ¶ 4). Indeed, Defendants' marketing strategy is based on sowing this confusion. Among other things:

- Defendants repeatedly and prominently use the Sabacc Mark, which was coined by and is associated with Lucasfilm, on the website and social media accounts through which they advertise and offer their infringing app. (*Id.* ¶ 33).

- Defendants issued press releases that reference the *Star Wars* franchise and identify Sabacc as the card game of the "Star Wars universe." (*Id.* ¶ 34).

- Defendants' page in the Apple App Store includes obvious *Star Wars* references such as: (a) "From a Cantina far, far away to your mobile device, welcome to the world's largest Sabacc site."; (b) "[B]ecome a Cloud City legend!"; (c) "Go bust? Don't worry, we won't take your ship!" (*Id.* ¶ 30).

- Defendants' website, Facebook page, and Twitter page display copyrighted images from *Star Wars* motion pictures and television episodes; quote copyrighted dialogue from these works; and reference other well-known *Star Wars* events, places, and

trademarks that Plaintiffs own.  (*Id.* ¶ 33).  For example, Defendants' Facebook and Twitter pages display images from *Star Wars Episode VII: The Force Awakens* (stills of Kylo Ren, with the caption "Kylo approves"); *Star Wars Episode V: The Empire Strikes Back* (stills of Lando Calrissian and Yoda, along with paraphrased or quoted lines from that motion picture); and *Star Wars Rebels* (stills of the character Zeb losing a game of Sabacc to Lando Calrissian), as well as the *Star Wars* logo, repeated references to "*Star Wars*," an illustration of Lando wagering the *Millennium Falcon*, and famous quotations from the motion pictures ("May the Force be with you," and "Many Bothans died to bring [you] this information.").  (*Id.* ¶ 33(b)).

- Defendants' website previously displayed a tutorial video that, among other things, displayed logos containing the Sabacc Mark, displayed images of Han Solo and Lando Calrissian playing Sabacc for the *Millennium Falcon*, displayed images of Chewbacca and C-3PO, and featured a speaker who described Sabacc as "the social card game **popularized by the *Star Wars* universe**, and the means by which Han Solo won the *Millennium Falcon* from Lando."  (*Id.* ¶ 33(a)) (bold emphasis added).[1]

As Plaintiffs allege, Defendants' conduct is likely to confuse consumers about the source of Defendants' "Sabacc" app and/or Plaintiffs' sponsorship or endorsement of, or connection

---

[1] As a result of this conduct, Defendants have infringed other intellectual property of Plaintiffs, in addition to the Sabacc Mark, including Plaintiffs' copyrights and other unregistered and registered *Star Wars*-related trademarks.  Defendants' copyright infringement is the subject of Count One of Plaintiffs' Complaint.  (Complaint ¶¶ 40-44).  Defendants' infringement of Plaintiffs' registered trademarks is the subject of Count Two.  (*Id.* ¶¶ 45-49).  The additional infringement of Plaintiffs' trademarks and unauthorized references to *Star Wars* support Plaintiffs' claims for violations of the Lanham Act (Count Three and Five (*id.* ¶¶ 50-54; 60-63)), common law trademark infringement (Count Six (*id.* ¶¶ 64-68)), common law unfair competition (Count Seven (*id.* ¶¶ 69-72)), and violations of the California Unfair Competition Law (Count Eight (*id.* ¶¶ 73-80)).  Defendants have not moved to dismiss any part of these claims except as they may relate to Plaintiffs' ownership of the Sabacc Mark, and so they do not seek the dismissal of any claim in its entirety other than Plaintiffs' claim for cancellation of Defendants' registration (Count Four).

1

2

with, that product. (*Id.* ¶ 5). Defendants' motion has *nothing to say* about this confusion, which it has intentionally fomented to unlawfully trade on Plaintiffs' goodwill.[2] (*Id.* ¶¶ 4-5, 36-39).

3

## ARGUMENT

4

5

## I.    LUCASFILM HAS ALLEGED OWNERSHIP OF THE SABACC MARK

The Complaint pleads Lucasfilm's ownership of the Sabacc Mark.  In claiming otherwise,

6

7

Defendants mischaracterize the allegations of the Complaint and ignore the case law that rejects

8

their contentions.  Defendants cannot escape Lucasfilm's claims for infringement of the Sabacc

9

Mark.

10

### A.    Lucasfilm Has Common Law Rights In The Sabacc Mark

11

Defendants do not dispute Plaintiffs' well-pled allegations that (1) consumers have long

12

recognized the Sabacc Mark as uniquely associated with Plaintiffs and their *Star Wars* franchise

13

(Complaint ¶¶ 3, 16, 20); (2) Defendants intentionally copied the Sabacc Mark precisely because

14

15

of Plaintiffs' prior use and to identify the game that Plaintiffs made popular (*id.* ¶¶ 4, 21, 28-39);

16

(3) Defendants' conduct is likely to confuse consumers about the source of Defendants' "Sabacc"

17

app and/or Plaintiffs' sponsorship or endorsement of, or connection with, that product (*id.* ¶ 5);

18

and (4) Defendants' marketing strategy is grounded on sowing such confusion, including by

19

violating even more of Plaintiffs' intellectual property rights (*id.* ¶¶ 4, 21, 28-39).  Defendants

20

nevertheless contend that Plaintiffs' claims regarding Sabacc are "implausible" because Sabacc is

21

22

23

24

25

26

27

28

[2] Defendants' motion presents this Court with additional "facts," outside the allegations of the Complaint, regarding (1) Plaintiffs' action before the Trademark Trial and Appeal Board ("TTAB") to cancel Defendant Ren Ventures' registration for "Sabacc" and (2) Plaintiffs' other registered trademarks.  None of these facts are relevant to this motion.  Accordingly, there is no basis for this Court to judicially notice them.  *See Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 997 (N.D. Cal. 2014) (Seeborg, J.)  It is irrelevant, for example, that Defendants filed a motion for summary judgment in Plaintiffs' TTAB proceeding.  Defendants' motion was never fully briefed; the TTAB never ruled on it; and the TTAB proceeding has been suspended.  *See* TTAB Cancellation No. 92066016, Doc. 8.  Plaintiffs' other trademark registrations may be relevant to Plaintiffs' other claims against Defendants, but they have no bearing on the subject of Defendants' motion:  Lucasfilm's common law rights to the Sabacc Mark.

"a fictional good" and the name of such a good "in an expressive work does not function as a

mark." (Defs.' Mem. at 15 (footnote omitted)).  They are wrong.

    1.    Federal courts have long recognized that the "ingredients" of fictional works can function as trademarks

Federal court decisions flatly contradict Defendants' contention that Sabacc's role as an

element of the *Star Wars* universe is insufficient to establish trademark rights.  For at least the last

thirty years, courts have held that fictional elements of expressive works *can* function as

trademarks because those elements *can* symbolize the plaintiff or its product to the consuming

public.  As one court has explained:

> [W]here the product sold by plaintiff is "entertainment" in one form or another,
> then not only the advertising of the product but also an ingredient of the product
> itself can amount to a trademark protectable under § 43(a) because the ingredient
> can come to symbolize the plaintiff or its product in the public mind.

*DC Comics, Inc. v. Filmation Assocs.*, 486 F. Supp. 1273, 1277 (S.D.N.Y. 1980).[3]  Following this

obvious principle, courts have readily extended trademark protection to a variety of fictional

elements found in popular entertainment products.  Defendants ignore each of those cases,

examples of which include:

- *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 78 (2d Cir. 1981) (trademark protection "extend[s] to the specific ingredients of a successful T.V. series"; "General Lee" car from television series "The Dukes of Hazzard);

- *Viacom Int'l Inc. v. IJR Capital Investments, LLC*, 242 F. Supp. 3d 563, 569 (S.D. Tex. 2017) ("[T]rademark protection extends to the 'specific ingredients of a successful T.V. series,' including symbols, design elements, and characters which the public directly associates with the plaintiff or its product."; fictional restaurant "The Krusty Krab" from "SpongeBob SquarePants" television series);

---

[3] *See also Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 329 (2d Cir. 1983) ("protection may extend to symbols associated with specific ingredients of successful television series"); *Warner Bros. Inc. v. Am. Broad. Cos., Inc.*, 720 F.2d 231, 246 (2d Cir. 1983) ("the image of a cartoon character and some indicia of that character can function as a trademark to identify the source of a work of entertainment").

- *Kleven v. Hereford*, No. CV 13-02783-AB (AGRx), 2016 WL 4424964, at \*6-8 (C.D. Cal. Feb. 18, 2016) (fictional dog Rin Tin Tin);

- *Warner Bros. Entm't v. Glob. Asylum, Inc.*, No. CV 12-9547 PSG (CWx), 2012 WL 6951315, at \*3-5 (C.D. Cal. Dec. 10, 2012) ("Hobbit" characters from J.R.R. Tolkien's works), *aff'd*, 544 F. App'x 683 (9th Cir. 2013);

- *DC Comics v. Kryptonite Corp.*, 336 F. Supp. 2d 324, 332, 335 (S.D.N.Y. 2004) (characters and other "ingredient[s] of an entertainment property" are protectable even if not used "on a product in the traditional trademark sense"; fictional element "Kryptonite" from Superman radio show, movies, and comic books);

- *Universal City Studios, Inc. v. J.A.R. Sales, Inc.*, No. 82-4892-AAH (Bx), 1982 WL 1279, at \*4 (C.D. Cal. Oct. 20, 1982) ("[T]he 'trademark' at issue is the physical appearance of the character 'E.T.' [from the movie *E.T. The Extraterrestrial*], and is protectible subject matter.").[4]

Despite this wealth of case law, Defendants contend that Plaintiffs' Sabacc Mark cannot be a trademark because Plaintiffs' Sabacc is a "fictional" game and "the name of a fictional good or service in an expressive work does not function as a mark for that fictional good or service." (Defs.' Mem. at 15 (footnote omitted)).  Defendants' contention butchers Plaintiffs' allegations and the law.

First, Plaintiffs do *not* contend that their Sabacc Mark functions as a mark for the fictional Sabacc game.  Plaintiffs allege that the Sabacc Mark functions as a mark for Plaintiffs and their

---

[4] *See also Games Workshop Ltd. v. Chapterhouse Studios, LLC*, No. 10-cv-8103, 2012 WL 5949105, at \*1, 15-17 (N.D. Ill. Nov. 27, 2012), *on reconsideration in part*, 2013 WL 1340559 (N.D. Ill. Apr. 1, 2013); *id.* ECF No. 462 at 5 (names of characters, groups, icons, devices, and weapons in "Warhammer 40,000" games); *Brown v. It's Entm't, Inc.*, 34 F. Supp. 2d 854, 856, 858-59 (E.D.N.Y. 1999) (character from "Arthur the Aardvark" books and television show); *Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 474-75 (S.D.N.Y. 1990) (characters from "Simpsons" television show); *New Line Cinema Corp. v. Easter Unlimited, Inc.*, No. CV 89-2017, 1989 WL 248212, at \*1-2, \*4 (E.D.N.Y. July 19, 1989) (fictional glove of "Freddy Krueger" character from *Nightmare on Elm Street* movies); *Walt Disney Co. v. Powell*, 698 F. Supp. 10, 12 (D.D.C. 1988) (the "charming mouse characters" Mickey and Minnie), *aff'd in part, vacated in part on other grounds*, 897 F.2d 565 (D.C. Cir. 1990); *Walt Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871, 879-80 (C.D. Cal. 1986) (characters from Disney movies); *Bally Midway Mfg. Co. v. Am. Postage Mach., Inc.*, No. 82 C 2700, 1983 WL 1150, at \*3 (E.D.N.Y. Aug. 25, 1983) (characters from Pac-Man video game); *Universal City Studios, Inc. v. Kamar Indus., Inc.*, No. H-82-2377, 1982 WL 1278, at \*1-3, \*5-6 (S.D. Tex. Sept. 20, 1982) (character and "prominent lines of dialogue" from *E.T. The Extraterrestrial*); *DC Comics*, 486 F. Supp. at 1275, 1277 (characters from Aquaman and Plastic Man comics and animated series); *D C Comics, Inc. v. Powers*, 465 F. Supp. 843, 845-49 (S.D.N.Y. 1978) (fictional newspaper "The Daily Planet" from Superman comics).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

8

Case No.  3:17-cv-07249-RS

well-known *Star Wars* franchise.  Those products and companies are real—not "fictional"—and the Complaint properly alleges that consumers associate Sabacc with them.

Second, this principle of source identification is the essence of trademark law.  It fuels each of the above decisions, and it applies here.  As the Supreme Court has held, trademark protection exists because "distinctive marks—words, names, symbols, and the like—can help distinguish a particular artisan's goods from those of others," thereby "protect[ing] his good will against the sale of another's product as his" and "help[ing] consumers identify goods and services that they wish to purchase."  *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017) (internal quotation marks omitted).  As the Supreme Court has also held, "[i]t is the source-distinguishing ability of a mark—not its ontological status as color, shape, fragrance, word, or sign—that permits it to serve these basic purposes."  *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995).

As the above cases make clear, the contents of entertainment products, such as the movies, television shows, comic books, and other creative works at issue here, can be source identifying.  Thus, while traditional brick and mortar businesses may distinguish their "real" products by placing a trademark on the packaging or exterior of their "real" goods, the elements or "ingredients" of expressive works do not need to be "real," or plastered on the outside of a package, to be source identifying.  Rather, as these cases recognize, consumers often come to associate the fictional creations, such as characters, locations, and objects, embodied in expressive works with the entertainment products and franchises in which they exist.

This is certainly the case for franchise properties like *Star Wars* which include extensive licensing and merchandising arms.  As the Fifth Circuit has explained, the "names, marks, [and] images" of "cartoon and other characters" are often "used in extensive licensing programs to promote everything from children's toys to fast-food restaurants," and "[m]any of today's consumers expect such endorsements and act favorably toward them."  *Conan Props., Inc. v.*

1  *Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985).  Accordingly, "[i]t is reasonable to

2  assume" that consumers of Plaintiffs' entertainment properties and products will be confused

3  when infringers use fictional elements from entertainment products to market and promote their

4  own unlicensed goods.  *Id.*; *see also Audio Fid., Inc. v. High Fid. Recordings, Inc.*, 283 F.2d 551,

5  558 (9th Cir. 1960) ("There is no logical reason for the precise copying save an attempt to realize

6  upon a secondary meaning that is in existence.").

7

8  That is precisely what Plaintiffs allege here:  Defendants have intentionally copied the

9  Sabacc Mark so that consumers will associate Defendants' unlicensed product with Plaintiffs and

10  the *Star Wars* franchise.  (Complaint ¶¶ 4, 21, 28-39).  Plaintiffs have stated a claim.

11  2.    Defendants' cited cases are unavailing

12  Defendants cite a handful of off-point, unpersuasive cases that do not alter the legal

13  principles established above.

14

15  In *In re DC Comics*, 689 F.2d 1042 (C.C.P.A. 1982), a five-judge panel ruled that a

16  drawing of a fictional character could serve as a trademark for "a somewhat cruder three-

17  dimensional toy doll."  *Id*. at 1043-45.  Defendants do not cite to that majority opinion—because

18  it has nothing to do with this case.  Rather, Defendants cite a stray footnote from the "special

19  concurrence" of a single judge that hypothesizes about the Joker character from Batman comic

20  books.  *See id.* at 1051 n.1 (Nies, J., specially concurring); (Defs.' Mem. at 18).  Judge Nies

21  provided no basis or explanation for her statement, which amounted to dicta, had no bearing on

22  the case before her, and is contrary to the reasoned opinions set forth above.

23

24  *Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*, 947 F. Supp. 2d 922 (N.D. Ind.

25  2013), is also irrelevant.  The plaintiff was a software manufacturer that owned a real-life

26  computer program called "Clean Slate."  The defendant released a Batman movie, and because it

27  contained a handful of references to a fictional computer program bearing the same name, the

28

PLAINTIFFS' OPPOSITION TO
MOTION TO DISMISS

10

Case No.  3:17-cv-07249-RS

1  plaintiff sued for trademark infringement.  The case did not involve competing trademark rights;

2  nor did it address the film company's trademark rights in the well-known elements of its own

3  Batman franchise, which is the main issue here.  Rather, the court found that no consumer would

4  be confused by the defendant's use, in part because the phrase "clean slate" was not used to

5  identify a real product.  *Id.* at 930-31.

6

7      Defendants here turn that reasoning on its head to argue that Sabacc cannot function as a

8  mark for the "fictional" game of Sabacc because it is not a real product.  (Defs.' Mem. 16).  But

9  Plaintiffs do not contend that the Sabacc Mark is a source identifier for a fictional game; rather,

10  the Sabacc Mark is a source identifier for Plaintiffs and their *Star Wars* franchise, including its

11  Sabacc card game products.  Accordingly, it does not matter whether the Sabacc game was

12  originally "fictional"; what matters is that Plaintiffs' *Star Wars* franchise is real.  *See Fortres*, 947

13  F. Supp. 2d at 928 ("In analyzing the potential for consumer confusion[,] . . . one must compare

14  Fortres Grand's 'Clean Slate' software to Warner Bros.' real product—*The Dark Knight Rises*.").

15

16      Defendants' reliance on three administrative decisions from the Trademark Trial and

17  Appeal Board (TTAB) fares no better.  (Defs.' Mem. at 17-18).  *Paramount Pictures Corp. v.*

18  *Romulan Invasions*, 7 U.S.P.Q.2d 1897 (T.T.A.B. Mar. 31, 1988), concerned a rock band that

19  sought to register "The Romulans" as the group's name.  Paramount opposed the registration

20  because it had used that name for a fictional species in its *Star Trek* works.  That is a far cry from

21  the instant case in which defendants are using the name in the identical context in which

22  Lucasfilm has used it for decades.

23

24      In addition to this obvious distinction, the TTAB provided no analysis to support its

25  conclusion that Paramount's use did not confer trademark rights.  The TTAB merely cited to the

26  passing comment in the one-judge concurrence from *In re DC Comics*, which, as explained

27  above, also contained no reasoning.  *See id.* at *3.  Notably, the TTAB found that the rock band's

28

use of "The Romulans" to identify its entertainment services (limited to live and recorded musical performances by a vocal and instrumental group) would not be perceived as related to Paramount and its science fiction works, *see id*. at *1, *5, and there was no indication that the band was otherwise trying to associate itself with Paramount's *Star Trek* franchise or that consumer confusion had occurred. Consequently, there was little justification for refusing to register the band's mark. Here, by contrast, Lucasfilm alleges Defendants are affirmatively exploiting the association between Sabacc and *Star Wars* by Defendants' use of the Sabacc mark for its mobile game app, which use is likely to cause confusion. Defendants do not challenge any of these allegations, all of which this Court must accept as true.

The remaining TTAB decisions are similarly irrelevant. *In re Valley Dental, Inc.*, 1998 WL 111034 (T.T.A.B. Mar. 6, 1998), is "not citable as precedent of the T.T.A.B." *Id.* at *1. It held only that "the name of characters used in printed publications and entertainment services is not *necessarily* a trademark," and that, in that case, there was no "credible evidence" that the character names in the applicant's cartoons "would be viewed or understood as a designation of the source of applicant's services." *Id.* at *4 (emphasis added). *In re Caserta*, 46 U.S.P.Q.2d 1088 (T.T.A.B. Feb. 26, 1998), held that the character in that case, which was used in only a single book, did not qualify as a trademark.

In any event, this Court should afford these decisions no weight. They concern whether given trademarks are registrable and are based on narrow standards not applicable to the common law rights and priority of use and unfair competition issues in this case. *See, e.g.*, *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1163 n.2 (Fed. Cir. 2002) (explaining that while a title cannot be registered, it may be protected upon a showing of secondary meaning); *NSM Res. Corp. v. Microsoft Corp.*, 113 U.S.P.Q.2d 1029, at n.10 (T.T.A.B. Nov. 25, 2014) (TTAB has no jurisdiction to hear broader questions of right to use, infringement, or unfair competition); *Lever*

*Bros. Co. v. Nobio Prod.*, 103 F.2d 917, 919 (C.C.P.A. 1939) (claimant established priority of use even though its slogan was not registrable).  TTAB decisions, moreover, occupy a low position on the ladder of review, since they may be appealed to a federal district court, where they are reviewed *de novo*.  *See* 15 U.S.C. § 1071(b)(1).

3.      Defendants' attacks on Lucasfilm's Sabacc merchandise are frivolous

As alleged in the Complaint, Lucasfilm (or its licensee) displayed the Sabacc Mark on the packaging of and instructions for two Sabacc card decks.  (Complaint at 7, 8 & n.1 and App'x A at 1).  Defendants contend that these products do not use Sabacc "as a mark" because they also contain the "Star Wars" label.  (Defs.' Mem. at 18-20).  However, "it is well established that a product can bear more than one trademark."  *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1075 (N.D. Cal. 2012) (quotation marks omitted).  "This frequently occurs when a company uses a house mark which normally serves to identify the source of the product, per se, and a product mark which serves to identify a particular product within a line of merchandise . . . ."  *Id.* (quotation marks omitted).  This is why, for example, no one doubts that "Pop-Tarts" is a trademark even though "Kellogg's" also appears on the Pop-Tarts box.

Defendants contend that the Sabacc Mark as used on the instructions "is nothing more than the title of a game, just as 'Poker' would be in 'How to Play Poker.'"  (Defs.' Mem. at 19).  Poker, of course, is a generic game not associated with any single source.  Substituting the word "Scrabble" or "Monopoly" for "poker" demonstrates the absurdity of Defendants' position.

Defendants also contend that the Sabacc Mark written in Lucasfilm's fictional Aurebesh language (Complaint at 8 n.1) is mere artwork and does not spell "Sabacc."  (Defs.' Mem. at 18-19).  However, Lucasfilm properly alleged in the Complaint that the letters spell out "Sabacc," and Defendants cannot dispute this allegation on a motion to dismiss.

Finally, Defendants observe that the Sabacc Mark is not followed by an ® or TM

symbols.  (*Id.* at 20).  Of course, Lucasfilm would not use the ® symbol to designate its

*unregistered* common law mark in Sabacc as that would not even be proper, never mind required.

*See* 15 U.S.C. § 1111.  And there is no requirement that any owner apply the TM symbol when

using an unregistered mark.  *See S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc.*, 829 F. Supp.

2d 437, 452 (E.D. La. 2011).

> ### B.   Lucasfilm Has Alleged Continuous Use Of The Sabacc Mark To Maintain Its Priority Over Defendants

The Complaint alleges Lucasfilm's priority (*i.e.*, its use of the Sabacc Mark before

Defendants).  (Complaint ¶¶ 16-21, 35, 57).   Defendants contend that Lucasfilm lost that priority

because it has not alleged "continuous use" of the Sabacc Mark after November 20, 2015, the

date of Defendant Ren Ventures's claimed first use.  (Defs.' Mem at 22-23).  First, this is simply

false.  The Complaint alleges that Lucasfilm has used the Sabacc Mark "[i]n the decades since the

coining of 'Sabacc' and *continuing to the present day*," and that the examples of use in the

Complaint are "[r]epresentative" rather than exhaustive.  (Complaint ¶ 19 (emphasis added)).  No

more is required to defeat a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(pleadings must provide a plausible case for relief).  Second, Defendants argue the wrong legal

standard.  Plaintiffs are not required to show continuous use to allege trademark priority, only that

that they have not alleged abandonment of the Sabacc Mark.

Here, the Complaint appropriately identifies the date Lucasfilm's products were initially

released to the consuming public.  Even if Lucasfilm released no new product containing the

Sabacc Mark after 2015 (and the Complaint alleges otherwise), that would not mean that

Lucasfilm was not continuously using the mark.  For example, the 2015 "Idiot's Array" episode

of *Star Wars Rebels* remains available even today for purchase through the Amazon website.  *See*

https://www.amazon.com/Droids-in-Distress/dp/B00O3X2AXK/ref=sr_1_2?ie=UTF8&qid

=1519400316&sr=8-2&keywords=star+wars+rebels.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Anyway, short periods of non-use would not result in Lucasfilm's loss of trademark rights.  Defendants' authorities do not support their argument.  These authorities are either factually inapplicable or reveal Defendants' confusion over the legal standard necessary to prove priority over another party's trademark.

First, Defendants rely on *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Management, Inc.*, 744 F.3d 595 (9th Cir. 2014), for an argument that Lucasfilm has lost its rights, but that case concerned *seven years* of non-use, not the one or two years of purported non-use that Defendants contend.  *See id.* at 600.

Defendants cite *Casual Corner Associates, Inc. v. Casual Stores of Nevada, Inc.*, 493 F.2d 709 (9th Cir. 1974), for that same point, but that case concerned incontestable marks.  While a party claiming priority over an incontestable mark must prove that it continuously used the mark in dispute, a party claiming priority over a non-incontestable mark must prove only that it has not abandoned the mark.  *Compare* 15 U.S.C. § 1065 (prior user of incontestable mark has priority if it can show its "use of [the] mark . . . continuing from a date prior to the date of registration"), *with id*. § 1052(d) (prior user of non-incontestable registered mark has priority over the registrant if prior user has "not abandoned" the mark); *see also Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072 (9th Cir. 2014) (non-use must rise to the level of abandonment for a prior user to lose ownership); *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1167-68 (9th Cir. 2013), *aff'd*, 135 S. Ct. 907 (2015) (same).[5]  Defendants' mark is not incontestable, so to defeat Lucasfilm's priority, Defendants must prove that Lucasfilm abandoned the Sabacc Mark.

---

[5] *Spin Master, Ltd. v. Zobmondo Entertainment, LLC*, 944 F. Supp. 2d 830 (C.D. Cal. 2012), fares no better.  The court there just got it wrong:  it misinterpreted *Casual Corner* as requiring *any* party claiming common-law priority to prove uninterrupted use as opposed to non-abandonment.  *See id.* at 851-52.  *Casual Corner*, however, concerned incontestable marks that are governed by their own unique standard, and *Spin Master* did not consider § 1052—the relevant statute for non-incontestable marks—or the case law on abandonment.

1    Defendants do not contend that Plaintiffs' Complaint contains allegations that support

2    abandonment, nor can they.[6]

3        C.    **Plaintiffs Have Alleged Defendants' Unfair Competition, Which is Not
4                Dependent on Plaintiffs' Priority**

5    Section 43(a) of the Lanham Act provides a broad cause of action for unfair competition:

6        Any person who, on or in connection with any goods or services . . . uses in commerce
          any word, term, [or] name . . . [that] is likely to cause confusion, or to cause mistake, or to
7        deceive as to the affiliation, connection, or association of such person with another person,
          or as to the origin, sponsorship, or approval of his or her goods, services, or commercial
8        activities by another person . . . shall be liable in a civil action . . . .

9    15 U.S.C. § 1125(a)(1).  Nothing in § 43(a) states that it applies only to confusing uses of

10   protectable trademarks.  Rather, the statute prohibits the use of "*any word, term, [or] name*" that

11   is likely to cause confusion.  *Id.* (emphasis added).  That is not surprising since the law of unfair

12   competition is intended to protect a company's reputation and sales from misappropriation.  *See*

13   *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1389-90 (2014).

14

15   Courts have, accordingly, allowed plaintiffs in a variety of settings to assert § 43(a) claims

16   where such plaintiffs did not own any protectable mark—even where the defendant had obtained

17   its own trademark rights in a term—so long as the defendant's use of the mark was likely to

18   confuse.  *See, e.g.*, *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 706, 708-12 (4th

19   Cir. 2016) (owner of unprotectable foreign mark can assert unfair competition claim against U.S.

20   trademark owner who causes confusion; moreover, misleading use of generic, non-trademarked

21   term can constitute unfair competition); *578539 B.C., Ltd. v. Kortz*, No. CV-14-04375-MMM

22

23

24   ───────────────

25   [6] "Abandonment is an affirmative defense" requiring Defendants to prove both "(1)
      discontinuance of trademark use" and "(2) intent not to resume such use."  *Lambert Corp. v.*
26   *LBJC Inc.*, No. 2:13-CV-00778-CAS (JCGx), 2014 WL 2737913, at *9 (C.D. Cal. June 16,
      2014).  Non-use of less than three years, standing alone, is insufficient to constitute abandonment,
27   and Lucasfilm's use of the Sabacc Mark clearly demonstrates it has no intent to cease its use.  *See*
      15 U.S.C. § 1127; *Gen. Healthcare Ltd. v. Qashat*, 364 F.3d 332, 335-36 (1st Cir. 2004).  Even
28   Defendants concede Lucasfilm's use through at least December 2015, or less than three years
      ago.

1   (MANx), 2014 WL 12572679, at *11 (C.D. Cal. Oct. 16, 2014) ("the former owner of [a]

2   trademark can assert affirmative claims based on [the new owner's] misleading use" of the mark).

3       The Sabacc Mark is associated with Plaintiffs, and Defendants' use of it is misleading.

4   This claim is independent of Plaintiffs' ownership of the Sabacc Mark and defendants' challenge

5   to it based on ownership is irrelevant.

6   

7   ## II.   NONE OF LUCASFILM'S CLAIMS ARE SUBJECT TO RULE 9(B)

8       Defendants contend that Counts Six through Eight should be dismissed in their entirety

9   pursuant to Rule 9(b) of the Federal Rules of Civil Procedure because they mention "fraud" but

10  are not pled with particularity.  Rule 9(b) does not apply to these Counts and, thus, Defendants'

11  argument is misplaced.

12      Counts Six and Seven of the Complaint assert claims for common law trademark

13  infringement and unfair competition.  The word "fraud" appears just once in each claim, and,

14  even then, solely in connection with Plaintiffs' request for punitive damages.  (Complaint ¶¶ 68,

15  72 ("In addition, Defendants are guilty of oppression, fraud, and malice within the meaning of

16  Cal. Civ. Code § 3294.")).  Rule 9(b), however, does not apply to claims for punitive damages.

17  

18  *See Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273-74 (N.D. Cal. 2015) ("[I]n federal court, a

19  plaintiff may include a 'short and plain' prayer for punitive damages that relies entirely on

20  unsupported and conclusory averments of malice or fraudulent intent.") (quotation marks

21  omitted).  For this reason, Defendants cannot rely on that Rule to attack these common law

22  claims.

23  

24      Count Eight asserts a claim for relief under Section 17200 of the Business and Professions

25  Code and alleges that Defendants' conduct was "unfair" and "unlawful" in addition to

26  "fraudulent."  However, "[t]he term 'fraudulent' as used in section 17200 does not refer to the

27  common law tort of fraud but only requires a showing that members of the public are likely to be

28

deceived." *Garcia v. Coleman*, No. C-07-2279 EMC, 2008 WL 4166854, at *17 (N.D. Cal. Sept. 8, 2008) (quotation marks omitted); *accord Makreas v. First Nat. Bank of N. Cal.*, 856 F. Supp. 2d 1097, 1101-02 (N.D. Cal. 2012).  Rule 9(b) will apply to a Section 17200 claim where a plaintiff grounds the claim upon a "unified course of fraudulent conduct" and relies "entirely on that course of conduct as the basis of that claim."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009).  Here, however, Plaintiffs' claim in grounded on a likelihood of confusion and not a unified course of fraud.  Accordingly, Rule 9(b) does not apply to Count Eight either.[7]

In any event, Defendants do not challenge any other aspect of these claims.  Defendants do not challenge the allegations supporting Defendants' liability for common law infringement and unfair competition (Counts Six and Seven).  Nor do Defendants challenge the non-"fraud" bases for a punitive damages award for these violations, namely that Defendants acted with oppression and malice.  Similarly, Defendants do not challenge the allegation that they are liable under Section 17200 (Count Eight) because their conduct was unfair and/or unlawful.  Accordingly, Counts Six, Seven, and Eight would still state a claim for relief, and Counts Six and Seven would still properly seek punitive damages, even if the "fraudulent" or "fraud" allegations were stricken.  *See, e.g.*, *Bondarenko v. Wells Fargo Bank, N.A.*, No. CV-15-403-DMG (JEMx), 2016 WL 1622410, at *7 (C.D. Cal. Apr. 18, 2016) (Section 17200 is written in the disjunctive and establishes three independent varieties of unfair competition); *Walker v. Signal Cos., Inc.*, 84 Cal. App. 3d 982, 996 (Ct. App. 1978) ("The words 'oppression, fraud, or malice' in Civil Code

---

[7] Defendants cite *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035 (9th Cir. 2010), for the proposition that a Section 17200 claim requires "intentional deception."  (Defs.' Mem. at 24).  But the Ninth Circuit held in that case that "fraudulent conduct" under the statute "requires a showing" that "members of the public are likely to be deceived."  *Shroyer*, 622 F.3d at 1044 (quotation marks omitted).

1   section 3294 being in the disjunctive, [each] alone is an adequate basis for awarding punitive

2   damages.").

3          Even if Plaintiffs were required to plead fraud with particularity, they could easily do so.

4   If required to amend the complaint, Plaintiffs would allege that Defendants have actively and

5   expressly misrepresented themselves and their product to unsuspecting consumers.  Under the

6   pseudonyms "koko ren" or "kokoren," Defendants' principal, Ime Ekong, has targeted *Star War*

7   fan sites to market and promote the Defendants' product under false pretenses.  Among other

8   things, he encourages *Star Wars* fans to access Defendants' Sabacc product by *falsely*

9   *masquerading* as a fan who just happened to come across the app and by asking for advice—

10  which he does not need—on the best way to play the game.  Most significantly, he states that

11  "they" have released a Sabacc app.  Although Ekong is clearly implying, falsely, that Lucasfilm is

12  the source of the product, he provides *Star Wars* fans with links to the Defendants' Sabacc app.

13  For example, on June 17, 2016, Ekong posted the following on the online forum for the game

14  *Star Wars Galaxy of Heroes*: "For those of you unaware, *they* recently released a Sabacc card

15  game app on iOS and Android, along with some videos on YouTube. […] [H]as anyone taken a

16  look at optimal gameplay strategies[…]?  Would love to get any insights!" (emphasis added).[8]

17  Plaintiffs would be more than happy to add this and other similar examples of Defendants'

18  fraudulent conduct to the complaint.

19                                      **CONCLUSION**

20         For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

---

[8] https://forums.galaxy-of-heroes.starwars.ea.com/discussion/47720/sabacc-mobile-app-on-ios-and-android.

1

2

Dated:      New York, New York
            March 9, 2018

3

4

                                      SHAPIRO ARATO LLP

5

                                      By: /s/ Cynthia S. Arato
                                      Cynthia S. Arato

6

                                      (State Bar No. 156856)
                                      Fabien M. Thayamballi

7

                                      (State Bar No. 284752)
                                      500 Fifth Avenue, 40th Floor

8

                                      New York, NY 10110
                                      Tel:  (212) 257-4880

9

                                      Fax:  (212) 202-6417
                                      carato@shapiroarato.com

10

11

                                      *Counsel for Plaintiffs Lucasfilm Ltd. LLC
                                      and Lucasfilm Entertainment Company Ltd.*

12

                                      *LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO
MOTION TO DISMISS                        20              Case No.  3:17-cv-07249-RS