UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCASFILM LTD. LLC, et al.,<br><br>      Plaintiffs,<br><br>   v.<br><br>REN VENTURES LTD., et al.,<br><br>      Defendants. | Case No. 17-cv-07249-RS<br><br>**ORDER DENYING MOTION TO DISMISS** |

## I. INTRODUCTION

Lucasfilm Ltd. LLC and Lucasfilm Entertainment Company Ltd. LLC (collectively, "Lucasfilm") bring this action against defendants Ren Ventures, Ltd., and Sabacc Creative Industries Ltd., alleging copyright and trademark infringement in connection with defendants' mobile game app "Sabacc – The High Stakes Card Game." Defendants argue that Lucasfilm does not own trademark rights in "Sabacc" and therefore move to dismiss six of the eight claims for relief asserted in the complaint, which are predicated on the existence of those rights. They also move for dismissal of three claims for failure to plead fraud with particularity. For the reasons explained below, the motion is denied.

## II. BACKGROUND[1]

---

[1] All facts recited in this section are drawn from the complaint and taken as true for the purposes of deciding this motion.

The 1977 release of the motion picture *Star Wars* launched an iconic franchise that has grown over the last four decades to incorporate movies, television series, books, and comic books. The fictional *Star Wars* universe is inhabited by recognizable characters, creatures, extraterrestrial locations, spaceships, and games. The Sabacc card game is an element of the *Star Wars* franchise, helps frame the *Star Wars* story, and is an important part of *Star Wars* lore. It is most prominently associated with the character of Han Solo, who won his spaceship the *Millennium Falcon* by beating Lando Calrissian in a game of Sabacc. Fans of *Star Wars* understand and acknowledge the significance of Sabacc in the *Star Wars* franchise, and they associate Sabacc with Lucasfilm.

Sabacc first appeared in a draft screenplay for the 1980 motion picture *Star Wars V: The Empire Strikes Back*. The game was included in the 1980 novelization of *The Empire Strikes Back*, in reference to a mining colony that Lando claimed to have won in a "sabacc match." A trilogy of novels about Lando Calrissian, published in 1983, includes a volume that explains the rules of Sabacc, which is a betting game in which the goal is to finish with a hand as close as possible to positive or negative 23 without going over. At various intervals, the players' hands change at random (the "Sabacc shift") unless they are placed in an "interference field" that reveals their value to the other players. The novels also tell the story of the fateful game of Sabacc that resulted in Lando losing the *Millennium Falcon* to Han Solo.

In the decades since crafting "Sabacc," Lucasfilm and its licensees have used the mark on, or in connection with, a variety of products including card games, comic books, and television episodes. Because "Sabacc" is a coined term, it is an inherently distinctive and inherently protectable trademark. As a result of the long and extensive use of the "Sabacc" mark by Lucasfilm and its licensees, the public recognizes it as uniquely associated with Lucasfilm and the *Star Wars* franchise.

Defendants Ren Ventures and Sabacc Creative promote and distribute a mobile game app titled "Sabacc – The High Stakes Card Game", which allows users to play an online card game as a single player or against others (the "Sabacc app"). The app is free to consumers via the Apple App Store and Google Play store, but is monetized through "in-app purchases" or opportunities to

spend money within the game. The Sabacc app page in the Apple App Store makes many references to events, places, and well-known phrases from the *Star Wars* franchise such as: (a) "From a Cantina far, far away to your mobile device, welcome to the world's largest Sabacc site."; (b) "[B]ecome a Cloud City legend!"; (c) "Go bust? Don't worry, we won't take your ship!" The page also features *Star Wars*-inspired imagery. The Sabacc app mimics the appearance and rules of the fictional Sabacc game that appears in the products of Lucasfilm and its licensees. The mobile game, along with its advertising and marketing, intentionally capitalizes on the goodwill of the "Sabacc" mark and the *Star Wars* franchise.

Ren Ventures obtained a federal registration for the mark "Sabacc" on August 23, 2016 (No. 5,025,710), representing to the U.S. Patent and Trademark Office that it has ownership rights in the "Sabacc" mark and claiming a priority date of November 20, 2015. The registration covers goods in Class 9 (cinematographic and photographic devices), and Class 41 (entertainment services). Lucasfilm has filed a petition to cancel the "Sabacc" registration with the USPTO, which is pending.

On December 21, 2017, Lucasfilm filed this action. Claims Three, Five, Six, Seven, and Eight of the complaint allege federal and common-law trademark infringement and unfair competition based on defendants' use of various trademarks claimed by Lucasfilm, including the "Sabacc" mark. In Claim Four, Lucasfilm seeks cancellation of defendants' federal trademark registration for the "Sabacc" mark.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.*

1   The determination is a context-specific task requiring the court "to draw on its judicial experience
2   and common sense." *Id.* at 679. Federal Rule of Civil Procedure 9(b), meanwhile, requires that,
3   "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting
4   fraud or mistake." To satisfy this pleading standard, a plaintiff must allege the "who, what, where,
5   when, and how" of the alleged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)
6   (citation and internal quotation marks omitted). The Rule 9(b) pleading standard "applies to all
7   elements of a securities fraud action." *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774
8   F.3d 598, 605 (9th Cir. 2014). In actions governed by the Private Securities Litigation Reform Act
9   ("PSLRA"), such as this one, these pleading standards are subject to further refinement, as
10  discussed in more detail below.

11  A motion to dismiss a complaint under FRCP Rule 12(b)(6) tests the legal sufficiency of
12  the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484
13  (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable
14  legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *UMG
15  Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When
16  evaluating such a motion, the Court must "accept all factual allegations in the complaint as true
17  and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*,
18  393 F.3d 1068, 1072 (9th Cir. 2005). When a plaintiff has failed to state a claim upon which relief
19  can be granted, leave to amend should be granted unless "the complaint could not be saved by any
20  amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (citation and internal
21  quotation marks omitted).

## IV. DISCUSSION

To prevail on their trademark infringement claims[2], Lucasfilm must prove common-law

---

[2] At the hearing on the motion to dismiss, defendants clarified that they only seek dismissal of Claims Three, Five, Six, Seven, and Eight of the complaint insofar as they pertain to the "Sabacc" mark specifically. They do not challenge the claims with respect to Lucasfilm's other claimed trademarks.

1    trademark rights in "Sabacc" that predate use of the mark by defendants. *See Spin Master, Ltd. v.*
2    *Zobmondo Entertainment, LLC*, 944 F. Supp. 2d 830, 850 (C.D. Cal. 2012) (quoting *Am.*
3    *Petrofina, Inc. v. Petrofina of Cal., Inc.*, 596 F.2d 896, 897 (9th Cir. 1979). Trademark priority is
4    also a prerequisite for Lucasfilm's cancellation claim. *See 578539 B.C., Ltd. v. Kortz*, 2015 WL
5    12670488 at *13 (C.D. Cal. Apr. 10, 2015). At the pleading stage, the question is whether
6    Lucasfilm adequately alleges the use of the "Sabacc" mark in commerce prior to the federal
7    registrant's date of first use (November 2015), and continuous use of the mark in commerce from
8    the alleged date of first use through to the present. *See Watec Co. v. Liu*, 403 F.3d 645, 654 (9th
9    Cir. 2005) ("A person claiming senior rights in a trademark must establish not only that he or she
10   used the mark before the mark was registered, but also that such use has continued to the
11   present.") (citing *Casual Corner Assocs., Inc. v. Casual Stores of Nevada, Inc.*, 492 F.2d 709, 712
12   (9th Cir. 1974).

   **A. Lucasfilm's Use of the Sabacc Mark**

   Trademark law protects the "use" of a word or term in a manner that identifies the source of goods or services, and distinguishes them from the goods and services of others. *See Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 100 (9th Cir. 2006). Defendants argue that Lucasfilm's allegations of trademark use of "Sabacc" are implausible because the name of a fictional good or service in an expressive work does not function as a mark for that fictional good or service. According to defendants, fictional goods do not exist and thus cannot be placed in commerce—hence the name of the good is not a source identifier for a product that can be distinguished in commerce. *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 924 (N.D. Ind. 2013) (finding defendant's "The Dark Knight Rises" motion picture film did not infringe upon plaintiff's trademark because the term "clean slate" referred to a fictional software product). This argument misconstrues the nature of Lucasfilm's allegations. Lucasfilm does not claim ownership of the "Sabacc" mark as a source identifier for a fictional card game product. Rather, "Sabacc" functions as a mark for Lucasfilm and the *Star Wars* franchise, which are real entities that exist in commerce. *Star Wars* has extensive licensing and

1  merchandising arms that make use of the franchise's fanciful elements in order to sell
2  entertainment products, including Sabacc card game products. The crux of Lucasfilm's claims is
3  that defendants use the "Sabacc" mark with the intention that consumers associate their unlicensed
4  product with the *Star Wars* franchise and its licensed products.

5  Defendants next contend that the name of a fictional good or service in an expressive work does not function as a mark for the expressive work in which the fictional good or service appears. On the contrary, courts have long held that fictional elements of expressive works can function as trademarks when those elements symbolize the plaintiff or its product to the consuming public. *See DC Comics, Inc. v. Filmation Assocs.*, 486 F. Supp. 1273, 1277 (S.D.N.Y. 1980). Following this principal, courts have extended trademark protection to the "General Lee" car from the television series "The Dukes of Hazzard," *see Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 78 (2d Cir. 1981), the fictional restaurant "The Krusty Krab" from the "SpongeBob SquarePants" television series, *see Viacom Int'l Inc. v. IJR Capital Invs., LLC*, 242 F. Supp. 3d 563, 569 (S.D. Tex. 2017), the "Hobbit" characters from J.R.R. Tolkien's works, *see Warner Bros. Entm't v. Glob. Asylum, Inc.*, No. CV 12-9547, 2012 WL 6951315 at *3-5 (C.D. Cal. Dec. 10, 2012), the fictional element "Kryptonite" associated with Superman comics, s*ee DC Comics v. Kryptonite Corp.*, 336 F. Supp. 2d 324, 332, 35 (S.D.N.Y. 2004), and the physical appearance of the E.T. character from its titular motion picture film, *see Universal City Studios, Inc. v. J.A.R. Sales, Inc.*, No. 82-4892, 1982 WL 1279 at *4 (C.D. Cal. Oct. 20, 1982).

In the face of this weight of authority, defendants point to several administrative decisions from the Trademark Trial and Appeal Board (TTAB) where the Board refused to recognize certain fictional elements as being trademarks. *See* Mot. to Dismiss at 17-18. Yet these decisions merely suggest that fanciful elements do not *always* function as marks for the expressive works in which they appear, not that they may *never* do so. For example, in *Paramount Pictures Corp. v. Romulan Invasions*, 7 U.S.P.Q.2d 1897 (T.T.A.B. Mar. 31, 1988), Paramount sought to enjoin a rock band from registering "The Romulans" as the group's name, on the grounds that "Romulans" are a fictional alien race appearing in the *Star Trek* franchise. While the Board provided no explanatory

reasoning for its conclusion that Paramount's use of the name did not confer trademark rights, a reasonable consumer would not likely assume the rock band was affiliated with the *Star Trek* franchise on account of its name alone. Thus, the Board concluded Paramount's use of "Romulans" should not preclude registration of the rock band's name.

Here, Lucasfilm alleges that Sabacc is a fictional element of the *Star Wars* universe, and that the game is associated with an important episode in the franchise's storyline—Han Solo's acquisition of his famous *Millennium Falcon*. The game has appeared in *Star Wars* novels, games, television episodes, and a visual dictionary. As a consequence, the word "Sabacc" signifies Lucasfilm and the *Star Wars* franchise in the minds of the consuming public. At the pleading stage, Lucasfilm has made a sufficient showing to survive a motion to dismiss.

Defendants' remaining attacks on Lucasfilm's allegations of trademark use raise matters of factual dispute that cannot be resolved at the pleading stage. They argue that "Sabacc" is not a mark for *Star Wars* products because the "Star Wars" mark on those products is the source-identifier for the *Star Wars* franchise. As "it is well established that a product can bear more than one trademark,"[3] the presence of the "Star Wars" mark on products also bearing the "Sabacc" mark does not, as a matter of law, mean "Sabacc" cannot independently signify the *Star Wars* franchise. Defendants also contend that the word "Sabacc" on the packaging and instruction sheet to a card game pack is a generic name not associated with any single source, and that the characters written in Lucasfilm's fictional Aurebesh language on another product do not really spell "Sabacc". Again, whether the use of "Sabacc" in each of these contexts is source-identifying is a highly fact-dependent inquiry. Lucasfilm expressly alleges in the complaint that the use of "Sabacc" on *Star Wars* branded products invokes the *Star Wars* franchise, and that the Aurebesh characters on one product translate to "Sabacc." To the extent defendants dispute the factual basis for these allegations, they may raise those at summary judgment or at trial.

**B. Continuous Use**

---

[3] *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1075 (N.D. Cal. 2012).

Defendants' challenges to Lucasfilm's allegations of continuous use are also unavailing. "To be continuous use, the use must be maintained without interruption." *Spin Master*, 944 F. Supp. 2d at 851. Seizing upon gaps in time between the various uses of the "Sabacc" mark identified in the complaint, defendants conclude that Lucasfilm's "sporadic" use of the mark is insufficient to establish continuous use. On the contrary, Lucasfilm expressly alleges in its complaint that "[i]n the decades since the coining of 'Sabacc' and continuing to the present day, Plaintiffs and their licensees have used the Sabacc Mark on or in connection with card games, mobile games, video games, magazines, comic books, novels, television episodes, a live theme park experience, and a major motion picture." Compl. ¶ 19. While the complaint lists many of these uses by way of example, it does not purport to provide an exhaustive accounting. Even if the complaint were to contain a definitive list of all claimed uses of the "Sabacc" mark, whether each use is "continuing" is a question of fact that cannot be determined on the pleadings alone. Defendants provide no authority for the proposition that Lucasfilm is required to release a new product bearing the "Sabacc" mark *each year* in order to maintain continuous use. It may be sufficient, for example, that the products identified in the complaint remain popular and continue to circulate in commerce years after their unveiling. Accordingly, Lucasfilm has alleged enough facts to raise a plausible inference that it has established trademark priority through continuing use of the "Sabacc" mark.

**C. Satisfaction of Rule 9(b)'s Heightened Pleading Standard**

Defendants seek dismissal of Claims Six through Eight in their entirety on the grounds that each is subject to the heightened requirements for pleading fraud under Federal Rule of Civil Procedure 9(b). Claims Six and Seven plead "fraud" solely in connection with Lucasfilm's request for punitive damages. *See* Compl. ¶¶ 68, 72 ("In addition, Defendants are guilty of oppression, fraud, and malice within the meaning of Cal. Civ. Code § 3294."). Under Rule 9(b), a plaintiff in federal court is entitled to "include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *See Rees v. PNC Bank*, N.A. 308 F.R.D. 266, 273-74 (N.D. Cal. 2015). Here, Lucasfilm has alleged that

1  defendants were actually aware of its prior use of the "Sabacc" mark and nonetheless persisted
2  with their infringing conduct. The complaint also suggests that defendants intended to mislead
3  consumers into believing that their allegedly infringing product was licensed by the *Star Wars*
4  franchise. These conclusory averments are sufficient to support a prayer for punitive damages.

5        Claim Eight asserts a claim for relief under Section 17200 of the California Business and
6  Professions code (Unfair Competition Law or "UCL") on the grounds that defendant's conduct
7  was "unfair," "unlawful," and "fraudulent." Lucasfilm argues that Claim Eight is not subject to
8  Rule 9(b)'s requirements because it is grounded in likelihood of confusion and not a "unified
9  course of fraudulent conduct." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)
10 ("A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of
11 conduct as the basis of that claim. In that event, the claim is said to be 'grounded in fraud' or to
12 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule
13 9(b)."). While Claim Eight as a whole need not satisfy Rule 9(b), the rule does apply to any
14 specific averments of fraudulent conduct within the claim. *See Vess v. Ciba-Geigy Corp. USA*, 317
15 F.3d 1097, 1104 (9th Cir. 2003) (where a plaintiff chooses "to allege some fraudulent and some
16 non-fraudulent conduct[,] . . . only the allegations of fraud are subject to Rule 9(b)'s heightened
17 pleading requirements."); *see also Hutchins v. Nationstar Mortgage LLC*, 2017 WL 4224720 at
18 *13 (N.D. Cal. Sept. 22, 2017) ("Additionally, however, claims under the 'fraudulent' prong of the
19 UCL must be pled with particularity as to the circumstances constituting fraud or mistake."). "[I]f
20 particular averments of fraud are insufficiently pled under Rule 9(b), a district court should
21 'disregard' those averments, or 'strip' them from the claim." *Vess*, 317 F.3d at 1105.

22       Although the complaint alleges defendants' conduct "is likely to deceive customers into
23 believing that Plaintiffs endorsed, sponsored, approved, or were affiliated, connected, or otherwise
24 associated with Defendants or their products," this bare recitation of the elements of a claim under
25 the UCL's fraudulent prong do not meet the particularity requirements of Rule 9(b). Because,
26 however, the allegations of the complaint support a claim under the "unlawful" and "unfair"
27 prongs of the UCL, Claim Eight is dismissed with leave to amend only to the extent it advances a

United States District Court
Northern District of California

claim on the "fraud" prong. In the event plaintiffs elect to file an amended Claim Eight, they must do so within 21 days of the date of this order.

### V. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is denied.

**IT IS SO ORDERED**.

Dated: April 24, 2018

_____
RICHARD SEEBORG
United States District Judge