Shannon S. Broome (SBN 150119)
HUNTON ANDREWS KURTH LLP
50 California Street, Suite 1700
San Francisco, California 94111
Tel.: (415) 975-3700
Fax.: (415) 975-3701
SBroome@HuntonAK.com

James E. Rosini (*pro hac vice*)
Jonathan W. Thomas (*pro hac vice*)
HUNTON ANDREWS KURTH LLP
One Broadway
New York, New York 10004
Tel.: (212) 908-6169
Fax.: (212) 425-5288
JRosini@HuntonAK.com
JThomas@HuntonAK.com


Counsel for Defendants Ren Ventures Ltd.
and Sabacc Creative Industries Ltd.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Lucasfilm Ltd. LLC, and Lucasfilm Entertainment Company Ltd. LLC,<br><br>               *Plaintiffs*,<br><br>  v.<br><br>Ren Ventures Ltd., and Sabacc Creative Industries Ltd.,<br><br>               *Defendants*. | Case No.  3:17-cv-07249-RS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**HEARING DATE: June 14, 2018**<br><br>**HEARING TIME: 1:30 pm Pacific Time** |

      Defendants, Ren Ventures Ltd. ("RV"), and Sabacc Creative Industries Ltd. ("SCI") (collectively, "Defendants"), by and through their undersigned counsel, submit the following memorandum in opposition to Plaintiff Lucasfilm Ltd. LLC's ("Plaintiff") motion for summary judgment on Plaintiff's copyright-infringement claim.  *See* ECF Nos. 51-53.

# TABLE OF CONTENTS

Page

I.    Preliminary Statement...................................................................................5

II.   Factual Background.......................................................................................7

III.  Legal Standard..............................................................................................8

IV.   Analysis.........................................................................................................9

    A.  Equitable Estoppel Bars Plaintiff's Copyright-Infringement Claim.......................9

    B.  Summary Judgment is Improper for Numerous Reasons....................................11

        1.  There is a Genuine Issue of Material Fact Concerning
           the Registrations' Scope.......................................................................11

        2.  There is a Genuine Issue of Material Fact Concerning
           Whether Plaintiff Owns the Copyright in the Works.............................14

        3.  Any Use of Plaintiff's Copyrights by Defendants Was *De Minimis*................15

        4.  Any Use of Plaintiff's Copyrights by Defendants Was Fair Use....................17

        5.  Any Use of Plaintiff's Copyrights by Defendants Was Innocent....................20

V.    Conclusion...................................................................................................21

1

## TABLE OF AUTHORITIES

2

3

**Case**                                                                                          **Page**

4

5

*Apple Computer, Inc. v. Microsoft Corp.*, 821 F. Supp. 616 (N.D. Cal. 1993)............................15

6

*Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006)..............................................................................18

7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..........................................................................8

8

*Cobbler Nevada, LLC v. Inglesias*, 2016 WL 8453643 (N.D. Cal., Dec. 16, 2016).....................11

9

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997)....................17

10

11

*Enreach Technology, Inc. v. Embedded Internet Solutions, Inc.*,
403 F. Supp. 2d 968 (N.D. Cal. 2005)....................................................................................8,9

12

13

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,
122 F.3d 1211 (9th Cir. 1997)................................................................................................14

14

*Express, LLC v. Fetish Grp., Inc.*, 424 F. Supp. 2d 1211 (C.D. Cal. 2006)..................................12

15

*Field v. Google, Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006)...................................................10,11

16

17

*Greenwich Film Productions, S.A. v. DRG Records, Inc.*,
1992 WL 279357 (S.D.N.Y., Sept. 25, 1992)..........................................................................15

18

*Hampton v. Paramount Pictures Corp.*, 279 F. 2d 100 (9th Cir. 1960)........................................9

19

*Harper & Row Publishers, Inc. v. National Enters.*,471 U.S. 539 (1985)............................17,18

20

*Interscope Records v. Time Warner, Inc.*, 2010 WL 11505708 (C.D. Cal., June 28, 2010)..........10

21

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003)..........................................................19

22

*Kreative Power, LLC v. Monoprice, Inc.*, 2015 WL 971387 (N.D. Cal. Mar. 3, 2015).................12

23

24

*Newton v Diamond*, 388 F.3d 1189 (9th Cir. 2004)..................................................................15

25

*NXIVM Corp. v. Ross Institute*, 364 F.3d 471 (2d Cir. 2004).....................................................20

26

*Oracle America, Inc. v Hewlett Packard Enterprise Co.*,
2017 WL 635291 (N.D. Cal., Feb. 16, 2017)............................................................................9

27

28

*Oracle America, Inc. v. Google Inc.*, 750 F.3d 1339 (Fed. Cir. 2014) ......................................17

*Peer Int'l Corp. v. Pausa Records, Inc.*, 90 F.2d 1332 (9th Cir. 1990)...................................21

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007)........................................18

*Phoenix Technologies Ltd. v. VMare, Inc.*, 2017 WL 1289863 (N.D. Cal., Jan. 6, 2017)..............9

*Real Estate Disposition Corp. v. National Home Auction Corp.*,
2008 WL 11336112 (C.D. Cal., May 21, 2008)........................................................................15

*Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)............................................17

*United Fabrics Intern., Inc. v. G-III Apparel Group, Ltd.*, 2013 WL 7853485
(C.D. Cal., Dec. 27, 2013)...................................................................................................21

*U.S. Auto Parts Network, Inc. v. Parks Geek, LLC*, 692 F.3d 1009 (9th Cir. 2012)....................14

1

2

## I. **Preliminary Statement**

Despite permitting thousands of individuals to share *Star Wars*-related "GIFs" on social media everyday, Plaintiff sued Defendants for copyright infringement for sharing *Star Wars*-related GIFs and images on social media. This irony notwithstanding, Plaintiff now seeks summary adjudication on its fact-intensive copyright claim in the middle of discovery. As discussed *infra*, Defendants respectfully contend that the Court should deny Plaintiff's motion for at least five reasons.

*First*, equitable estoppel bars Plaintiff's copyright claim altogether. Plaintiff allegedly knew of Defendants' alleged copyright infringement in April 2017 when it sent Defendants a letter. That letter, however, did not: (i) identify a single copyright that Plaintiff allegedly owns; (ii) identify a single instance of Defendants' alleged copyright infringement; or (iii) include a single demand that Defendants remove any allegedly infringing material from Defendants' social media account. Instead, that letter concerned one thing—and one thing only—Plaintiff's demand that Defendant RV give up its federal trademark registration for the mark SABACC. Any doubt about whether the parties' dispute was over SABACC—and not alleged copyright infringement—was quelled on May 1, 2017, when Plaintiff (and its co-Plaintiff in this lawsuit) petitioned the United States Trademark Trial and Appeal Board ("TTAB") to cancel Defendant RV's registration for SABACC. Plaintitff made no mention of Defendants' alleged copyright infringement until it filed this lawsuit—on the eve of Plaintiff's deadline to oppose RV's summary-judgment motion in the TTAB proceeding on the ground that Plaintiff lacked trademark and service mark rights in "Sabacc." More to the point, Plaintiff's dilatory conduct regarding Defendants' alleged copyright infringement, coupled with the fact that Plaintiff has an official account on the website *Giphy*, wherein Plaintiff permits users to share links to *Star Wars*-related GIFs—including links to GIFs of the character Lando Calrissian—led Defendants to reasonably believe there was no copyright issue between the parties. It would be inequitable to allow Plaintiff to now charge Defendants with copyright infringement.

1

2    *Second*, the only way for the Court to determine whether Plaintiff's copyright

3    registrations-in-suit cover the content that Defendant SCI shared on social media is to examine

4    the copyright applications and deposit specimens associated with those registrations.  Plaintiff,

5    however, failed to submit the copyright applications <u>and</u> the deposit specimens with its motion.

6    Without this evidence, there is a genuine issue of material fact concerning whether Plaintiff's

     registrations cover the allegedly infringing content in Defendants SCI's social media posts.

7        *Third*, all of Plaintiff's registrations indicate the underlying works are "works made for

8    hire."  Pursuant to well-settled law, this means that, for Plaintiff to own each underlying work,

9    such works must have been created by: (i) one or more of Plaintiff's employees acting within the

10   scope of their employment, or (ii) an independent contractor who executed a written agreement

11   with Plaintiff that expressly stated the work was, in fact, made for hire.  Plaintiff, however, did

12   not submit any documents in support of its motion that identify who made the works for hire.

13   Nor did Plaintiff produce any employment agreements or work-for-hire agreements.

14   Accordingly, a genuine issue of material fact exists concerning whether Plaintiff can claim sole

15   ownership of the works for hire purportedly covered by the registrations-in-suit.

16       *Fourth*, assuming *arguendo* Plaintiff's registrations-in-suit cover the content that

17   Defendant SCI shared on social media, such content is miniscule compared to the overall works

18   purportedly covered by Plaintiff's registrations, *i.e.*: full-length, feature motion pictures motions,

19   and a television episode.  A a short GIF of, and a still image and modified quote from, a full-

20   length, feature motion picture and television episode is *de minimis*, and non-actionable.

21       *Fifth*, and closely related to the fourth point, the content that Defendants shared on social

22   media is protected by the fair-use doctrine.  Not only are the GIF, images, and modified quote

23   transformative, but also they do not usurp any purported market for such content.

24       *Sixth*, as discussed above (and below), Defendant SCI did not copy any of the content it

25   shared on social media from Plaintiff's purported expressive works.  On the contrary, Defendant

26   SCI found the content on unrelated third parties' websites.  This fact, coupled with the fact that

27   Plaintiff permits users to share *Star Wars*-related content on social media, establishes that any use

28

DEFENDANTS' OPPOSITION TO
MOTION FOR PARTIAL SUMMARY          - 6 -              Case No.  3:17-cv-07249-MMC
JUDGMENT

of Plaintiff's copyrights by Defendants was innocent.

For the reasons discussed above, as well as below, Defendants respectfully request that this Court deny Plaintiff's motion.

## II.    Factual Background

RV owns U.S. Trademark Reg. No. 5,025,710 (the "'710 Registration"), which covers the mark "SABACC" in International Classes 9 and 41, respectively, for numerous goods and services (including, for example, video games).   Under an exclusive license from RV, SCI markets a video card game under the SABACC Mark.

Plaintiff purportedly owns copyright registrations for the following expressive works: (i) the 1980 motion picture *Star Wars Episode V: The Empire Strikes Back* ("*Episode V*"); (ii) the 1983 motion picture *Star Wars Episode VI: Return of the Jedi* ("*Episode VI*"); and (ii) a 2015 episode of the *Star Wars Rebels* television series titled "*Idiot's Array*" (*Episode V*; *Episode VI*, and *Idiot's Array* referred to hereinafter collectively as the "Works" unless indicated otherwise). *See* ECF No. 51 at 2-3.  Plaintiff alleges Defendant SCI infringed Plaintiff's copyrights in the Works when Defendant SCI made the following Twitter and Facebook "posts" (collectively, the "Social Media Posts"):



**2. The Zeb Image**

 

**3. The Lando-Calrissian-Holding-Playing-Cards Illustration**



**4. The Alleged *Return of the Jedi* Quote**



*See* ECF No. 51 at pgs. 3-5, ¶¶ 1, 2.

As discussed in the accompanying Ekong Decl., Defendant SCI did not "copy" any of the images or GIFs in its social media posts from *Episode V*, *Episode VI*, *Idiot's Array*, or any other *Star Wars* expressive work to which Plaintiff purportedly owns the copyrights. *See* Ekong Decl. at ¶¶ 8-19. On the contrary, Defendant SCI obtained these images and GIFs from unrelated, third-party sources on the Internet. *See id*. at ¶¶ 9-10, 12-13, 16, 18-9. What is more, none of these images or GIFs had any indicia of copyright ownership on them when SCI found them. *See id*. at ¶¶ 10, 13, 16, 19. Fourth, Plaintiff maintains an official account on the website *Giphy*, wherein it permits users to share or post *Star Wars*-themed GIFs (including, without limitation, GIFs of the character Lando Calrissian) on social media. *See id*. at ¶¶ 20-22. Thus, Defendants had no reason to believe that Plaintiff would charge Defendants with infringement for engaging in the very conduct that Plaintiff permits others to do. *See id*. at ¶ 23.

## III.   Legal Standard

Summary judgment is improper when the record evidence establishes "genuine and disputed issues of material fact remain […]" on the moving party's claim.  *Enreach Technology, Inc. v. Embedded Internet Solutions, Inc.*, 403 F. Supp. 2d 968, 973 (N.D. Cal. 2005) (referencing FRCP 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).   "Material facts which would preclude the entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case."  *Enreach Technology, Inc.*, 403 F. Supp. 2d at 974.  Moreover, at summary judgment, "the court must regard as true the opposing party's evidence," and "must draw all reasonable inferences in favor of the" opposing party.  *Id.* at 973.

## IV.   Analysis

### A.   Equitable Estoppel Bars Plaintiff's Copyright-Infringement Claim

Equitable estoppel bars Plaintiff's copyright-infringement claim.   Accordingly, the Court should deny Plaintiff's motion.

Equitable estoppel precludes a plaintiff from asserting a copyright-infringement claim when: (i) the plaintiff knows of the defendant's allegedly infringing conduct; (ii) the plaintiff engages in conduct that allows the defendant to reasonably believe the plaintiff will not assert its putative copyright interests against the defendant; (iii) the defendant is ignorant of the plaintiff's alleged copyright interests; and (iv) the defendant relies on the plaintiff's conduct to the defendant's injury or detriment.  *See Oracle America, Inc. v Hewlett Packard Enterprise Co.*, 2017 WL 635291, *3 (N.D. Cal., Feb. 16, 2017) (referencing *Hampton v. Paramount Pictures Corp.*, 279 F. 2d 100, 104 (9th Cir. 1960)); *see also Phoenix Technologies Ltd. v. VMare, Inc.*, 2017 WL 1289863, *8 (N.D. Cal., Jan. 6, 2017) (*accord*).

Here, Plaintiff claims its attorneys sent RV a letter on April 28, 2017, protesting RV's alleged infringement of, *inter alia*, Plaintiff's putative copyrights.  *See* ECF No. 51 at 8.   The word "copyright" only appears once in Plaintiff's April 28 letter, *i.e.*: in the conclusory, self-serving statement that Plaintiff allegedly "owns all trademark, copyright, and other intellectual property rights in the [allegedly] iconic STAR WARS franchise."  ECF No. 52-8 at 2.   What is

more, Plaintiff's April 28 letter did not: (i) identify a single copyright that Plaintiff allegedly owned; (ii) identify a single instance of alleged copyright infringement by Defendants; or (iii) demand that Defendants remove any allegedly infringing material from their social media accounts. *See generally* ECF No. 52-8. Instead, a cursory review of that letter establishes beyond cavil that it concerned a trademark dispute over "SABACC"—not alleged copyright infringement. *See generally* ECF No. 52-8.

More to the point, if it is true, as Plaintiff alleges, that Defendants have been on notice of their alleged copyright infringement since receiving the April 28, 2017 letter, it must also be true that Plaintiff knew of Defendants' alleged infringement since at least April 28, 2017. After all, Plaintiff could not have put Defendants on notice of alleged instances of copyright infringement of which Plaintiff was unaware. However, despite knowing of Defendants' alleged copyright infringement as of April 28, 2017, Plaintiff's next action was not to sue Defendants' for alleged copyright infringement; instead, Plaintiffs instituted the TTAB proceeding on May 1, 2017, wherein they sought cancellation of RV's federal trademark registration for SABACC. *See* Ekong Decl. at Exh. G. Thereafter, Plaintiff did not mention Defendants' alleged copyright infringement until nearly eight months later, when it commenced this lawsuit on the eve of Plaintiff's deadline to oppose RV's summary-judgment motion on the ground that Plaintiff's lacked trademark and service mark rights in "Sabacc."

Based on the foregoing, Plaintiff's April 28, 2017 letter, and ensuing commencement of the TTAB action, made it reasonable for Defendants to believe that the only dispute between the parties was ownership of trademark and/or service mark rights in "Sabacc," not a copyright dispute. *See Interscope Records v. Time Warner, Inc.*, 2010 WL 11505708, *12 (C.D. Cal., June 28, 2010) ("A copyright holders' silence or inaction in the face of an infringement can give rise to an estoppel defense […]"); *see also Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1117 (D. Nev. 2006) (*accord*).

Moreover, Defendants had no reason to believe that Plaintiff owned any copyright interests in the images-at-issue for at least four reasons. First, as discussed *supra*, Plaintiff's

April 27, 2018 letter to RV did not identify a single copyright that Plaintiff allegedly owns. Second, SCI obtained the content in its social media posts from third-party sources. Third, none of the content in the social media posts included any indicia of copyright ownership (*e.g.*, "©") when SCI found them on the Internet. Fourth, as discussed *supra*, Plaintiff maintains an official account on the website *Giphy*, wherein it permits users to share or post *Star Wars*-themed GIFs (including, without limitation, GIFs of the character Lando Calrissian) on social media. Thus, Defendants had no reason to believe that Plaintiff would charge Defendants with infringement for doing what Plaintiff permits others to do.

On a final note, Defendants have suffered harm in the form of defending this lawsuit. *See Field*, 412 F. Supp. 2d at 1117 (ensuing litigation establishes harm).

Based on the foregoing, Defendants respectfully contend that equitable estoppel bars Plaintiff's copyright-infringement claim. Therefore, this Court should deny Plaintiff's Motion.

### B.  Summary Judgment is Improper for Numerous Reasons

Assuming *arguendo* that equitable estoppel does not bar Plaintiff's copyright-infringement claim (*but see supra*), Plaintiff must prove two elements to prevail on its claim, namely: "[i] ownership of a valid copyright and [ii] unauthorized copying and distribution by Defendant[s]." *Cobbler Nevada, LLC v. Inglesias*, 2016 WL 8453643, *2 (N.D. Cal., Dec. 16, 2016). For the reasons discussed *infra*, the paltry record-evidence-to-date establishes summary judgment is improper for at least five reasons, namely: (i) there is a genuine issue of material fact concerning the scope of the Registrations (as defined *infra*); (ii) there is a genuine issue of material fact concerning whether Plaintiff owns the copyrights in Works; (iii) any use of Plaintiff's copyrights by Defendants was *de minimis* and non-actionable; and (iv) any use of Plaintiff's copyrights by Defendants was fair use; and (v) any use of Plaintiff's copyrights by Defendant was innocent.

**1.   There is a Genuine Issue of Material Fact Concerning the Registrations' Scope**

Plaintiff's motion identifies four copyright registration certificates that purportedly cover the Works, namely: (i) PA 72-282; (ii) PA 1-337-226; (iii) PA 172-810; and (iv) PA 2-011-445 (collectively, the "Registrations").  *See* ECF No. 51 at 6-7.

As a threshold matter, Plaintiff's motion is the first time it has asserted PA 1-337-226 in this lawsuit; such registration does not appear in the Complaint.  *See* ECF No. 1 at ¶ 27.  On a related note, Plaintiff asserted copyright registration PA 1-975-592 in the Complaint (*see id.*); however, that registration does not appear in Plaintiff's motion.  *See generally* ECF No. 51 at 2-3. Nonetheless, Defendants proceed based on the assumption that the Registrations asserted in Plaintiff's motion are the registrations-at-issue.

Plaintiff asserts its Registrations are *prima facie* evidence of Lucasfilm's copyrights in the Works.  ECF No. 51 at 9 (referencing 17 U.S.C. § 410(c)).  Plaintiff cannot prove that it owns the copyrights in the Works by merely pointing its Registrations.  Indeed, "[r]egistration does not create the copyright.  Registration allows the Copyright Office to judge the copyrightability of a piece of work.  In exchange for this filter by the Copyright Office, the registered copyright holder is afforded a presumption of a valid copyright." *Express, LLC v. Fetish Grp., Inc.*, 424 F. Supp. 2d 1211, 1218-19 (C.D. Cal. 2006).  However, if the registration does not cover certain aspects of a claimed copyright, then it simply does not make sense to grant those aspects of the claimed copyright a presumption of validity." *Express, LLC*, 424 F. Supp. 2d at 1219.  Therefore, "the scope of the registered copyright is determined by the actual registration application" and deposit specimen(s) submitted with it.  *Id.*; *see also Kreative Power, LLC v. Monoprice, Inc.,* 2015 WL 971387, *11 (N.D. Cal. Mar. 3, 2015) (The "deposit specimen serves an evidentiary function that becomes part of a record by which claims of infringement are tested").

Here, Plaintiff does not submit any copyright applications in support of its Motion.  *See generally* ECF No. 51-53.  Moreover, Plaintiff, by and through Mr. Gary Lim, claims DVDs submitted in support of Plaintiff's motion as: (i) Exhibit A allegedly contain *Episode V*, and (ii) Exhibit B contain *Episode VI*.  *See id.*  at ¶¶ 3,4.  Mr. Lim claims Blu-ray discs submitted in support of Plaintiff's Motion as Exhibit C contain *Idiot's Array*.  *See id.* at ¶ 5.  For myriad

reasons, Mr. Lim's declaration fails to prove Exhibits A, B, or C are, or are even the same as, the deposit copies submitted with the applications for the Registrations.

First, Mr. Lim does not claim the DVDs submitted as Exhibit A are the actual deposit copies associated with the applications for PA 72-282 or 1-337-266; instead, Mr. Lim claims that unidentified, "DVDs" in general "were submitted to the U.S. Copyright Office" for PA 1-337-266.   ECF No. 53 at ¶ 3.   Second, it would be literally impossible for any of the Exhibits to be the actual deposit copies associated with the applications for PA 72-282 or PA 172-810.   Indeed, Plaintiffs allegedly filed the copyright application associated with PA 72-282 on June 13, 1980, and the application associated with PA 172-810 on May 27, 1983.   *See* ECF No. 52-2, 52-3. DVDs, however, did not exist in 1980; DVDs did not exist in the United States until the late 1990s.   Third, Mr. Lim does not allege that he compared the deposit copies submitted with any of the applications to determine whether they are the same as Exhibit A, B, or C.   *See generally* No. 53.   Fourth, Mr. Lim ostensibly has no knowledge of what deposit copies Plaintiff submitted with the applications for any of the registrations-at-issue.   Mr. Lim's name does not appear on either application.   For PA 72-282, the names Daniel Dawes, Helen Ganz, Charles J. Weber, and Lyman Gronemeyer appear thereon; for PA 1-337-226, the name David Anderman appears thereon; for PA 172-810, the name Roberta Cairney appears; and for PA 2-011-445, the name Thad Scroggins appears.   *See* ECF No. 52-2, 52-3, and 52-4. Of course, this is not surprising given that Mr. Lim did not work for Plaintiff when Plaintiff allegedly submitted the applications for PA 72-282, PA 1-337-226, and 172-810.   *See* ECF No. 53 at ¶ 3 (Mr. Lim alleging he has worked for The Walt Disney Company for 17 years, which did not acquire Plaintiff until 2012, *i.e.*, 32 years after submission of the application for PA 72-28; six years after submission of the application for PA 1-337-266; and 29 years after submission of the application for PA 172-810).

In sum, without the applications and deposit specimens associated with the Registrations, one can only guess whether the Registrations actually cover the Works.   Without evidence that the Registrations cover the Works, Plaintiff fails to satisfy 17 U.S.C. § 411(a)'s pre-suit registration requirement with respect to the Works.   Therefore, the Court should deny Plaintiff's

Motion; alternatively, the Court should defer ruling on Plaintiff's Motion until Defendants have an opportunity to take discovery on *inter alia*, the applications and deposit copies associated with Plaintiff's Registrations. *See* FED. R. CIV. P. 56(d). As shown in Mr. Ekong's declaration, Defendants sought documents on these topics before Plaintiff filed its motion. *See* Ekong Decl. at Exh. H. Plaintiff's FRCP 30(b)(6) deposition notice to Plaintiff also covers these topics. *See id*. at Exh. I.

### 2. There is a Genuine Issue of Material Fact Concerning Whether Plaintiff Owns the Copyright in the Works

As stated *supra*, Plaintiff asserts its Registrations are *prima facie* evidence of Lucasfilm's copyrights in the Works. ECF No. 51 at 9 (referencing 17 U.S.C. § 410(c)). However, "[a]n accused infringer can rebut this presumption […] [by] simply offer[ing] some evidence or proof to dispute or deny the plaintiff's prima facie case of [alleged] infringement." *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).

Here, all four Registrations state the Works were "made for hire." *See* ECF No. 52-2, 52-3, and 52-4. A work only qualifies as a work made for hire if the work: (i) is "prepared by an employee within the scope of his or her employment," or (2) is "a work specially ordered or commissioned for use […] as a part of a motion picture […] <u>if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire</u>." 17 U.S.C. § 101. (emphasis added).

If Plaintiff contends that one or more of its employees allegedly created the Work, then the Court must conduct a fact-intensive, three-part test to determine whether the individual(s) qualifies as an "employee" for purposes of the work-made-for-hire doctrine. *See, e.g.*, *U.S. Auto Parts Network, Inc. v. Parks Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012) ("Although the Copyright Act does not define either 'employee' or 'scope of employment,' these terms must be understood in light of the general common law of agency […] and courts have accordingly adopted section 228's three-prong test for determining when a work is made by an employee 'within the scope' of employment: (a) is it of the kind [the employee] is employed to perform; (b)

it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the [employer]"). Notably, there is zero record evidence concerning any of these factors.

Moreover, given the numerous contributors to a motion picture (*e.g.*, screenwriter; director; graphic artists and designers; etc.), it is likely that Plaintiff commissioned myriad independent contractors to contribute to the Works. In that case, Plaintiff must have a written agreement with each independent contractor that expressly states the latter's contribution to the Work is a work made for hire; otherwise, Plaintiff cannot claim sole ownership of the Works. *See* 17 U.S.C. § 101; *see also* U.S. Copyright Circular 9 ("A work created by an independent contractor can be a work made for hire only if (a) it falls within one of the nine categories of works listed in part 2 above *and* (2) there is a written agreement between the parties specifying that the work is a work made for hire") (emphasis in original); *Real Estate Disposition Corp. v. National Home Auction Corp.*, 2008 WL 11336112, *5 n. 5 (C.D. Cal., May 21, 2008) ("Under the Copyright Act, copyright ownership 'vests initially in the author or authors of the work.' […] Here, REDC's copyright applications describe the television scripts and commercials as works for hire. However, there is no written agreement to that effect. Because JRC is an independent contractor, the absence of such an agreement means that REDC cannot claim sole authorship under 17 U.S.C. § 201"); *Greenwich Film Productions, S.A. v. DRG Records, Inc*., 1992 WL 279357, *2 (S.D.N.Y., Sept. 25, 1992) ("Plaintiff concedes there is no agreement between it and the Composer designating the work as a work for hire. As such, under U.S. law, the compositions and sound track cannot be claimed work for hire"). Plaintiff, however, did not produce any work-for-hire agreements in support of its motion. *See generally* ECF No. 51-53.

### 3. Any Use of Plaintiff's Copyrights by Defendants Was *De Minimis*

Even if Plaintiff did own the copyrights in the Works (*but see supra*), the allegedly infringing material in SCI's social media posts is *de minimis* and non-actionable. *See Apple Computer, Inc. v. Microsoft Corp.*, 821 F. Supp. 616, 623 (N.D. Cal. 1993); *see also Newton v Diamond*, 388 F.3d 1189, 1192 (9th Cir. 2004) ("For an unauthorized use of a copyrighted work

to be actionable, the use must be significant enough to constitute infringement.  This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial").

In *Newton*, the Ninth Circuit affirmed summary judgment for the defendants on the ground that their use of the plaintiff's copyrighted work was quantitatively and qualitatively insignificant.  The court found it was quantitatively insignificant because the amount used represented only about two percent of the plaintiff's work, and qualitatively because there was no evidence it was any more important than other parts of the work.  *Id.* at 1196; *see also Fisher*, 794 at 434 n.2 (9th Cir. 1986); 4 Nimmer on Copyright § 13.03[A] ("It is clear that slight or trivial similarities are not substantial and are therefore noninfringing.").

Likewise, the allegedly infringing material in each of SCI's social media posts are neither quantitatively or qualitatively significant as to rise to the level of substantiality required to establish this element.  The Lando Calrissian GIF comprises a single frame in a 124-minute film.  At twenty-four (24) frames per second, the industry rate at which most movies are depicted, *Star Wars Episode V: The Empire Strikes Back* comprises 178,560 frames.  No single one of these frames is a substitute for the film or would damage its commercial viability for Plaintiffs through dissemination.  Nor could Plaintiff viably argue that this particular scene represents the "heart" of *Star Wars Episode V: The Empire Strikes Back*, much less a significant turning point in the film's plot.  Similarly, the Zeb Image is but one frame in a single episode of a 75-episode series.  The scene hardly marks a critical event in that particular season of the Star Wars Rebels television series, much less in that specific episode "Idiots Array."  The apparent wager represented by the Lando Calrissian Illustration is also an example of just another detail in the long-running Star Wars saga.  While the Millennium Falcon may be familiar to fans, the assertion  that Lando Calrissian lost the spaceship over a bet (something that has never been depicted in any Star Wars film to date) is arguably an afterthought for even the most avid Star Wars followers and certainly cannot be considered the crux of any particular film in the franchise.  Finally, the Quote from *Star Wars Episode VI: Return of the Jedi*, a 132-minute film with what certainly must have been a

lengthy screenplay, consist of eight (8) words spoken by a minor character and not in any way said during a pivotal scene in the film.

These miniscule elements of a detailed plot with multiple storylines and numerous characters may be vaguely familiar to a devoted Star Wars fanatic, but there is clearly a factual dispute whether the average audience would recognize the allegedly infringing material in the Social Media Posts.  Because such material lack both quantitative and qualitative significance to the Work, Plaintiff cannot show substantial similarity to establish the copying element of its copyright infringement claim.

### 4.  Any Use of Plaintiff's Copyrights by Defendants Was Fair Use

Any use of the Works by Defendants qualifies as fair use within the meaning of 17 U.S.C. § 107.  Fair use is an affirmative defense to a copyright holder's right to exclusive use of the original work and its derivatives.  This exception "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.  *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1399 (9th Cir. 1997) (internal citations omitted).

Fair use requires the trier to examine a particular usage under "an equitable rule of reason."  *Harper & Row Publishers, Inc. v. National Enters.*, 471 U.S. 539, 560 (1985) (quoting H.R. Rep. No. 1476, 94th Cong., 2d Sess. 65, reprinted in 1976 U.S.C.C.A.N. 5659, 5678-79).  Under 17 U.S.C. § 107, the factors to be considered "shall include":

> 1. the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> 2.  the nature of the copyrighted work;
> 3. the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> 4.  the effect of the use upon the potential market for or value of the copyrighted work.

As fair use is a mixed question of fact and law lacking bright-line rules, each case "must be decided on its own facts."  *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 448 n.31 (1984).  The fair use analysis can be taken away from the jury only "[w]here there are no material

facts at issue and the parties dispute only the ultimate conclusions to be drawn from those facts." *Oracle America, Inc. v. Google Inc.*, 750 F.3d 1339, 1373 (Fed. Cir. 2014) (remanding for trial on fair use).  To grant summary judgment of no fair use, the Court would need to disregard the very substantial evidence that favors Defendants on each level of the required analysis.

### a.  Defendants' Social Media Posts are Transformative

The first fair use factor is "the purpose and character of the use."  17 U.S.C. § 107(1). The Supreme Court explained that "[t]he central purpose of this investigation is to see . . . whether the new work merely supersede[s] the objects of the original creation . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'"  *Campbell*, 510 U.S. at 579 (internal citations omitted).

The Ninth Circuit finds works are transformative when "a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007).  Commercial use of a copyrighted image alone does not prevent a finding of fair use.  *Campbell*, 510 U.S. at 579.  The more transformative the new work, the less the important the other factors, including commercialism.  *Id.*

The content in SCI's social media posts is transformative on at least two levels.  For example, the Lando Calrissian GIF was created by an unknown third party, who ostensibly cut a *de minimis* single frame *of Star Wars V: The Empire Strikes Back*, removed sound, interposed text, and then converted the file into an animation that automatically plays in a continuous loop. The purpose of the Lando Calrissian GIF, as with all GIFs, is to convey a reaction in a creative and entertaining manner.  That alone amounts to a new work, *i.e.*, a transformation.  Defendant SCI then embedded the already transformed GIF into a Facebook and Twitter post with its own personalized commentary and context (just as it did with the alleged image of Zeb that it found on a third-party site; the third-party illustration of Lando Calrissian holding playing cards; and the modified dialog from *Episode VI*), thus taking on more nuanced meaning.  Therefore, the

resultant content in SCI's social media posts create a completely different work with a different purpose, concept, look, audience and feel than the films and episode at issue and the emotional response evoked by the posts is completely dissimilar.  These types of alterations to the original content strongly support a finding that the Defendants' use of the allegedly infringing material is transformative.

### b.  The Works Were Previously Published

Under the second fair use factor, the "nature of the copyrighted work," courts address two aspects of the relevant work: the extent to which it is creative and whether it is unpublished. *Harper & Row*, 471 U.S. at 563-64.  Though the Works may not be factual in nature, they have been published extensively, which favors a finding of fair use.  *See id.* (noting that the scope of fair use is narrower with respect to unpublished works because the author's right to control the first public appearance of his work weighs against the use of his work before its release); *Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 820 (9th Cir. 2003) (holding that the factor weighed against plaintiff because the works had been published).  Still images, illustrations, quotes, and GIFs, like those at issue here, also appear at numerous locations on the internet (without any copyright notice).  Because Plaintiffs have already published the Works (and in the case of *Episode V* and *Episode VI* were published nearly four decades ago), their artistic and creative expression for the films and episode have already occurred.  This factor therefore weighs in favor of Defendants.

### c.  Defendants' Social Media Posts Do Not Use More than is Necessary

The third factor requires the Court to consider "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  "If the secondary user only copies as much as is necessary of this or her intended use, then this factor will not weigh against him or her."  *Kelly*, 336 F.3d at 820-21.

Plaintiff's Works are full-length, feature motion pictures and a television episode.  As discussed *supra*, assuming *arguendo* that the content of SCI's social media posts appeared in these full-length motions pictures and television episode, such use in SCI's social media posts is qualitatively and quantitatively insignificant to Plaintiffs' Works as a whole.  For example, the

DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

- 19 -

Case No.  3:17-cv-07249-MMC

1

2
Lando Calrissian GIF has no sound and is only a couple seconds long.  Thus, it is virtually

3
incapable of capturing the heart of  *Star Wars Episode V: The Empire Strikes Back*.  The same is

4
true for the Zeb Image in relation to *the Star Wars Rebels*' "Idiots Array" episode; the 8-word line

5
in the context of *Star Wars VI: Return of the Jedi*; and the Lando Calrissian Illustration in light of

6
the entire *Star Wars* saga.  Comparing these to the original works—whether a feature-length film,

7
a lengthy screenplay, or a full television episode—these snippets can hardly be said to have

8
infringed upon the "heart" of these longer works.  Indeed, the scope of the Works is far more

9
expansive than the accused features.  Because the allegedly copied portions of the Works are

10
miniscule in relation to the copyrighted Works as a whole, this factor weighs heavily in favor of

11
Defendants.

### d.  SCI's Social Media Posts Do Not Usurp Any Market for the Works

12
The fourth fair use factor is "the effect of the use upon the potential market for or value of

13
the copyrighted work."  17 U.S.C. § 107(4).  The factor does not concern "whether the secondary

14
user suppresses or even destroys the market for the original work or its potential derivatives, but

15
whether the secondary use usurps the market of the original work."  *Blanch v. Koons*, 467 F.3d

16
244, 258 (2d Cir. 2006) (quoting *NXIVM Corp. v. Ross Institute*, 364 F.3d 471 (2nd Cir. 2004);

17
*Campbell*, 510 U.S. at 592.  Accordingly, where the allegedly infringing use does not substitute

18
for the original and serves a "different market function," such factor weighs in favor of fair use."

19
*Id*. at 591.

20
Here, Plaintiff's Works are motion pictures and a television series.  Defendant SCI's

21
social media posts are not, and do not include, motion pictures or television series; rather, as

22
discussed *supra*, SCI's social media posts include GIFs and widely available images and quotes.

23
Put simply, using GIFs and widely available images and quotes does nothing to impair the value

24
of, or usurp the market for, the motion pictures and television series allegedly covered by

25
Plaintiff's Works.  Indeed, "[n]o one [] is going to watch a Star Wars GIF instead of the original

26
movie."  Jeff John Roberts, The Copyright Law Behind a $600M Startup and Millennials'

27
Favorite Form of Expression, Fortune,  available at  http://fortune.com/2016/11/07/giphy-gifs-

28

copyright/?xid=soc_socialflow_twitter_FORTUNE (last accessed on May 23, 2018).

In sum, like the first three factors, this factor falls squarely in favor of Defendants. Accordingly, the Court should deny Plaintiff's motion on the ground that any use of the Works by Defendant was fair use.

### 5. Any Use of Plaintiff's Copyrights by Defendants Was Innocent

Assuming *arguendo* Plaintiffs can establish Defendants' infringement liability—which Defendants deny—the record, sparse as it may be, establishes that Defendants' use of the content in the Social Media Posts was innocent, "not willful."

"While the Copyright Act does not define the term 'willful,' the Ninth Circuit has held that the term means 'with knowledge that the defendant's conduct constitutes copyright infringement.'" *United Fabrics Intern., Inc. v. G-III Apparel Group, Ltd.*, 2013 WL 7853485, *5 (C.D. Cal., Dec. 27, 2013) (quoting *Peer Int'l Corp. v. Pausa Records, Inc.*, 90 F.2d 1332, 1335 n. 3 (9th Cir. 1990). "In contrast, innocent infringement occurs where the infringer 'was not aware and had no reason to believe that his or her facts constituted an infringement of copyright.'" *United Fabrics, Intern. Inc.*, 2013 WL 7853485 at *5 (quoting 17 U.S.C. § 504(c)(2)). Whether conduct was willful or innocent is, generally speaking, a question of fact. *See, e.g.*, *id.* at *6. Here, however, the record establishes that Defendants' conduct was innocent.

Not to put too fine of a point on it, but: as discussed *supra*, Plaintiff maintains an official account on the website *Giphy*, wherein it permits users to share or post *Star Wars*-themed GIFs (including, without limitation, GIFs of the character Lando Calrissian) on social media. Thus, Defendants had no reason to believe that Plaintiff would charge Defendants with infringement for sharing the Lando Calrissian GIF (or any other content, for that matter) on social media when Plaintiff permits thousands of others to do just the same.

Moreover, none of the content that SCI found on the Internet contained any indicia of copyright ownership (*e.g.*, "©"). Further, given where SCI found all of the content—widely circulated and available on unrelated, third-party Internet websites—it was reasonable for SCI to believe that it could use the content in its social media posts without violating Plaintiff's—or

anyone's—putaitve copyright interests therein. Based on the foregoing, Defendants' conduct was innocent.   Accordingly, the Court should deny Plaintiff's motion.

## V.    Conclusion

Based on the foregoing, Defendants respectly request that this Court: (i) deny Plaintiff's motion, and (ii) award Defendants any further relief this Court deems just and equitable.   Alternatively, Defendants respectfully request that this Court delay ruling on Plaintiff's motion until Plaintiff's respond to Defendants' pending document requests, and appear for their previously and duly noticed corporate deposition, all of which will cover topics related to and concerning Plaintiff's copyright claim.  *See* Ekong Decl. at Exhs. H, I; *see also* FRCP 56(d).

Dated: May 23, 2018
       New York, New York

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

By: /s/ *James E. Rosini*
Shannon S. Broome (SBN 150119)
50 California Street, Suite 1700
San Francisco, California 94111
Tel.: (415) 975-3700
Fax.: (415) 975-3701
Sbroome@HuntonAK.com

James E. Rosini (admitted *pro hac vice*)
Jonathan W. Thomas (admitted *pro hac vice*)
One Broadway
New York, New York 10004
Tel.: (212) 908-6169
Fax.: (212) 425-5288
JRosini@HuntonAK.com
JThomas@HuntonAK.com

*Counsel for all Defendants*

1
2

# CERTIFICATE OF SERVICE

3
4

I hereby certify that, on May 23, 2018, I filed the foregoing document, titled *Defendants' Opposition to Plaintiff's Summary Judgment Motion*, via ECF, which will send notification of such filing to Plaintiffs' counsel.

5

By: */s/ James E. Rosini*
James E. Rosini

6
7

*Counsel for all Defendants*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' OPPOSITION TO        - 23
MOTION FOR PARTIAL SUMMARY       -        Case No.  3:17-cv-07249-MMC
JUDGMENT