Cynthia S. Arato (State Bar No. 156856)
Fabien M. Thayamballi (State Bar No. 284752)
SHAPIRO ARATO LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
Tel.: (212) 257-4880
Fax.: (212) 202-6417
carato@shapiroarato.com

Counsel for Plaintiffs Lucasfilm Ltd. LLC and Lucasfilm Entertainment Company Ltd. LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

Lucasfilm Ltd. LLC and Lucasfilm Entertainment Company Ltd. LLC,

*Plaintiffs*,

v.

Ren Ventures Ltd. and Sabacc Creative Industries Ltd.,

*Defendants*.

Case No. 3:17-cv-07249-RS

**PLAINTIFF LUCASFILM LTD. LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON COPYRIGHT INFRINGEMENT**

**Hearing: June 21, 2018 at 1:30 p.m.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. DEFENDANTS' EQUITABLE ESTOPPEL ARGUMENTS ARE FRIVOLOUS .......... 2

II. DEFENDANTS HAVE FAILED TO OVERCOME THE PRESUMPTION THAT LUCASFILM OWNS THE COPYRIGHTS IN THE WORKS .......... 6

III. DEFENDANTS' INFRINGEMENT IS NOT *DE MINIMIS* AS A MATTER OF LAW .......... 9

IV. DEFENDANTS' INFRINGEMENT IS NOT FAIR USE AS A MATTER OF LAW .......... 10

V. DEFENDANTS' INFRINGEMENT WAS WILLFUL AS A MATTER OF LAW .......... 14

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ........ 11, 13

*Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471 (2d Cir. 2004) ........ 5

*Columbia Pictures Indus., Inc. v. Miramax Films Corp.*, 11 F. Supp. 2d 1179 (C.D. Cal. 1998) ........ 11, 12, 13

*Corbello v. DeVito*, 262 F. Supp. 3d 1056 (D. Nev. 2017) ........ 9

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017) ........ 4, 11, 12, 14

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) ........ 11, 12, 13

*Dreamroom Prods., Inc. v. Suavemente, Inc.*, No. CV 11-6604-JFW (SSX), 2014 WL 12579813 (C.D. Cal. Feb. 26, 2014) ........ 8

*Express, LLC v. Fetish Grp., Inc.*, 424 F. Supp. 2d 1211 (C.D. Cal. 2006) ........ 7

*Field v. Google, Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006) ........ 3

*Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986) ........ 9

*Greenwich Film Prods., S.A. v. DRG Records, Inc.*, No. 91-cv-0546 (JSM), 1992 WL 279357 (S.D.N.Y. Sept. 25, 1992) ........ 8

*Hampton v. Paramount Pictures Corp.*, 279 F.2d 100 (9th Cir. 1960) ........ 6

*Henley v. DeVore*, 733 F. Supp. 2d 1144 (C.D. Cal. 2010) ........ 10, 12, 13

*Interscope Records v. Time Warner, Inc.*, No. CV-10-1662-SVW-PJWx, 2010 WL 11505708 (C.D. Cal. June 28, 2010) ........ 3, 4

*Kreative Power, LLC v. Monoprice, Inc.*, No. 14-CV-02991-SI, 2015 WL 971387 (N.D. Cal. Mar. 3, 2015) ........ 7

*Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522 (9th Cir. 2008) ........ *passim*

*Mercer Publ'g Inc v. Smart Cookie Ink, LLC*, No. C12-0188JLR, 2012 WL 12863933 (W.D. Wash. Nov. 27, 2012) ........ 7, 8

*Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co., Inc.*, 900 F. Supp. 1287 (C.D. Cal. 1995) .......... 12, 14

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007) .......... 5

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012) .......... *passim*

*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004) .......... 9

*Paramount Pictures Corp. v. Carol Pub. Grp.*, 11 F. Supp. 2d 329 (S.D.N.Y. 1998) .......... 5

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014) .......... 2

*Real Estate Disposition Corp. v. Nat'l Home Auction Corp.*, No. CV 08-01331 SJO (Ex), 2008 WL 11336112 (C.D. Cal. May 21, 2008) .......... 8

*Rosen v. R & R Auction Co., LLC*, No. CV-15-07950-BRO-JPRx, 2016 WL 7626443 (C.D. Cal. Aug. 31, 2016) .......... 7

*Saks Inc. v. Attachmate Corp.*, No. 14-cv-4902 CM, 2015 WL 1841136 (S.D.N.Y. Apr. 17, 2015) .......... 4

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) .......... 11, 14

*Thomas v. Artino*, 723 F. Supp. 2d 822 (D. Md. 2010) .......... 7

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 155 F. Supp. 2d 1 (S.D.N.Y. 2001) .......... 10, 13

*Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017) .......... 15

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255 (9th Cir. 2011) .......... 7, 8

*United States v. King Features Entm't, Inc.*, 843 F.2d 394 (9th Cir. 1988) .......... 6

*VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871 (9th Cir. 2016) .......... 9

**Statutes**

17 U.S.C. § 106 .......... 10

17 U.S.C. § 410 .......... 7, 8

## PRELIMINARY STATEMENT

Defendants' opposition is long on deflection and short on the law. Defendants do not dispute that (1) their social media posts include exact copies of protectable elements from Lucasfilm's copyrighted works; and (2) they have refused to remove these posts, even after Lucasfilm filed suit.[1] Having nothing to say about these dispositive points, Defendants fill their opposition with half-truths about the law and the facts. None of their efforts to distract from the undisputed facts of copyright infringement are successful.

Defendants spend a significant portion of their opposition arguing that Lucasfilm should be estopped from remedying Defendants' willful infringement. Each of Defendants' estoppel arguments presumes that Defendants would have stopped using Lucasfilm's works if only Defendants had known that their uses were infringing. Defendants, however, continue their infringement even today, well after Lucasfilm brought this suit. Defendants' own conduct reveals the fallacy of their contentions. Defendants also butcher the law on estoppel, ignore dispositive facts, and attempt to mask that Defendants never actually relied on anything that Lucasfilm supposedly did or did not do. No facts support Defendants' estoppel argument.

The rest of Defendants' arguments twist the law to attempt to avoid the result of their blatant and continuing copyright infringement:

- **Lucasfilm Has Submitted Undisputed Evidence of Copyright Ownership.**

  Defendants contend that Lucasfilm failed to demonstrate it copyright ownership because Lucasfilm did not provide this Court with evidence beyond its registration

---

[1] Defendants suggest that Lucasfilm directs its copyright claim against Defendant Sabacc Creative Industries Ltd. alone because Sabacc Creative is allegedly the company that "markets" Defendants' product under a license from Ren Ventures, Ltd. (Opp'n at 7). That is wrong, as Defendants do not dispute Lucasfilm's evidence demonstrating that Ren Ventures Ltd. is equally responsible for the infringement—namely Ren Ventures' prior sworn admission that it marketed Defendants' product in the United States. (MSJ at 3).

certificates. In making this argument, Defendants ignore that the Ninth Circuit has clearly held that Lucasfilm needs *no* additional evidence to establish its ownership.

- **Defendants' Unauthorized Use of Lucasfilm's Copyrighted Material Is Not Immaterial.** Defendants misstate the applicable legal standard when they contend that the material they took from Lucasfilm was *de minimis* because it purportedly represents a quantitatively and qualitatively "small" taking. The Ninth Circuit has clearly held that the test for *de minimis* use is simply whether ordinary observers would recognize that the famous characters, images, and dialogue that Defendants use come from *Star Wars*.
- **The Doctrine of Fair Use Does Not Protect Defendants' Commercial Uses.** Defendants' fair use arguments are similarly misleading. Defendants misstate the import of the factors; ignore that they used Lucasfilm's copyrighted material to advertise their commercial product; and provide no evidence supporting their self-serving conclusions regarding market harm.
- **Defendants' Unauthorized Use Is Willful.** Defendants have nothing to say about their continued use of Lucasfilm's works *post*-suit or the cases holding that their continued infringement establishes willfulness as a matter of law. Defendants' attempt to characterize their *pre*-suit infringement as innocent ignores the record.

This Court should grant summary judgment to Lucasfilm.

## ARGUMENT

### I. DEFENDANTS' EQUITABLE ESTOPPEL ARGUMENTS ARE FRIVOLOUS

The defense of equitable estoppel applies "when a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on the copyright owner's deception." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1977 (2014). Defendants do not allege (let alone provide evidence

of) any such misrepresentations or detrimental reliance, so their estoppel defense fails at the outset.

Defendants concede that at a minimum, they must prove that: (i) Lucasfilm knew of their allegedly infringing conduct; (ii) Lucasfilm engaged in conduct that allowed Defendants to reasonably believe that Lucasfilm would not assert its copyright interests against them; (iii) Defendants were ignorant of Lucasfilm's alleged copyright interests; and (iv) Defendants relied on Lucasfilm's conduct to their injury or detriment. (Opp'n at 9). Defendants nevertheless ignore these elements in favor of made-up arguments that blame Lucasfilm for their own intransigence, distort the estoppel defense beyond recognition, and brush aside that Defendants continue their infringement even today, five months after being sued.

The demand letter. Defendants' first argument seeks to blame Lucasfilm for sending a demand letter that allegedly was not forceful enough. Defendants do not dispute that Lucasfilm sent Defendants a cease and desist letter in April 2017 demanding that Defendants cease their infringing conduct. Defendants nevertheless contend that the letter lulled them into complacency because it referred to Lucasfilm's copyrights only once and purportedly failed to "demand that Defendants remove any allegedly infringing material from their social media accounts." (Opp'n at 10). This contention misstates the letter. Lucasfilm's demand letter asserted Lucasfilm's ownership of the copyrights in the *Star Wars* franchise and insisted that Defendants **"[i]mmediately** discontinue" all advertisements for their app on Facebook and Twitter and "**[i]mmediately** delete" those social media accounts. (Dkt. 52 Ex. H at 1, 3) (emphasis in original).[2] Lucasfilm was not required to beat Defendants over the head with even more information to avoid an estoppel defense.

---

[2] Defendants wrongly invoke *Interscope Records v. Time Warner, Inc.*, No. CV-10-1662-SVW-PJWx, 2010 WL 11505708 (C.D. Cal. June 28, 2010), and *Field v. Google, Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006), for the proposition that silence or inaction can give rise to estoppel. Those cases predate *Petrella*'s articulation of estoppel as requiring an affirmative misrepresentation. In

This lawsuit. Defendants' second argument blames Lucasfilm for not suing them quickly enough. (Opp'n at 10; *see also id*. at 5) (accusing Lucasfilm of "dilatory conduct" for waiting eight months to sue). That is equally absurd. "[T]he failure to bring suit against infringers [is not] 'affirmative conduct' on which a party c[an] reasonably rely," especially where, as here, Lucasfilm filed suit well within the applicable three-year limitations period. *Saks Inc. v. Attachmate Corp.*, No. 14-cv-4902 CM, 2015 WL 1841136, at *13 (S.D.N.Y. Apr. 17, 2015); *cf. Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (even in preliminary injunction context, "courts are loath to withhold relief solely because of delay") (quotation marks omitted).

The Giphy website. Defendants' third argument claims that, because *Star Wars*-themed GIFs are offered for non-commercial uses on the website Giphy (https://giphy.com/starwars), Lucasfilm cannot object to Defendants' uses of its copyrighted materials. (Opp'n at 11). This argument is wrong for a number of reasons. *First*, Defendants do not contend that the copyrighted material that *they use for commercial purposes* comes from Giphy or is comprised of content that Giphy might be authorized to offer. *Second*, even if Defendants had obtained images from Giphy, the Giphy terms of service would prohibit Defendants' commercial use: users "shall not . . . use or exploit any content for commercial use" and are "only allowed to use content . . . solely for personal and non-commercial purposes." (Reply Declaration of Cynthia S. Arato ("Arato Reply Decl.") Ex. A at 1). *Third*, whether Lucasfilm approves or disapproves of the uploads made to the Giphy website does not alter the undisputed fact that Defendants have engaged in copyright infringement over Lucasfilm's objections for over a year.

---

any event, the plaintiffs' alleged lulling in both cases took place *before* the infringement began, and neither plaintiff sent the defendant a demand letter upon discovering the infringement, as Lucasfilm did here. Accordingly, even if silence or inaction could establish estoppel, nothing in Lucasfilm's letter gave Defendants a "right to believe" that Lucasfilm would tolerate their copyright infringement, as required for the defense. *E.g.*, *Interscope*, 2010 WL 11505708, at *11.

Other third-party sites. Defendants' fourth argument contends that Lucasfilm should be estopped from remedying their infringement because Defendants obtained their infringing posts from third-party websites. (Opp'n at 11). It is not clear how Defendants believe this triggers their estoppel defense. However, since estoppel requires some conduct on the part of Lucasfilm, they must be blaming Lucasfilm for not shutting these sites down before Defendants stole content from them.

That is clearly erroneous. In *Paramount Pictures Corp. v. Carol Publishing Group*, 11 F. Supp. 2d 329 (S.D.N.Y. 1998), *aff'd*, 181 F.3d 83 (2d Cir. 1999), the defendant contended that the plaintiffs' failure to commence litigation against other infringers estopped the plaintiffs from suing the defendant. The court swiftly rejected this stunt. As the court explained:

> Extending the doctrine of estoppel so that a defendant may rely on a plaintiff's conduct toward another party is both unsupported by law and pernicious as a matter of policy. . . . Paramount is free to instigate legal action against whomever it wishes. For these reasons, the Court refuses to recognize a doctrine of estoppel by transitivity.

*Id.* at 337. *See also Capitol Records, Inc. v. Naxos of Am., Inc*., 372 F.3d 471, 484 (2d Cir. 2004) ("failure to pursue third-party infringers has regularly been rejected as a defense to copyright infringement") (citing *Paramount*, 11 F. Supp. 2d at 337); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (C.D. Cal. 2007) (The Court knows of no rule in copyright . . . that a copyright holder is bound to pursue either all infringers or none at all.").

No detrimental reliance. Defendants cannot establish detrimental reliance as a matter of law. Defendants' arguments are premised on the fallacy that they would have halted their infringement if they had known of Lucasfilm's concerns. Defendants, however, have continued their infringement even after Lucasfilm filed this suit. Their actions put the lie to their reliance claims.

Indeed, Defendants provide this Court with *no* evidence that they relied in any way on any conduct or statement by Lucasfilm. Although Defendants' counsel makes several *legal*

arguments regarding Lucasfilm's demand letter, when Lucasfilm filed this lawsuit, and the Giphy website, the declaration of Defendants' principal Ime Ekong is *silent on each of these events*. Ekong does not mention Lucasfilm's letter. He does not discuss the time that elapsed before Lucasfilm filed suit. And while he now points this Court to Giphy (ignoring its prohibition on commercial use), he offers no testimony that he knew of the site before Defendants made their infringing posts. It is obvious from these omissions that Defendants were not lulled into anything Lucasfilm did or did not do. Defendants, moreover, cannot reasonably rely on the third-party websites—the subject of their fourth and final estoppel point. "The doctrine of equitable estoppel does not erase the duty of due care and is not available for the protection of" infringers who, like Defendants, place "unwarranted reliance on the [conduct] of a third party" and "fail[] to use the means at hand to ascertain" a plaintiffs' copyrights. *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104-05 (9th Cir. 1960).

Defendants, moreover, began infringing Lucasfilm's copyrights *before* Lucasfilm ever engaged with them. That precludes reliance as a matter of law. *See United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399-400 (9th Cir. 1988) (defendant could not establish estoppel where it had taken the steps that caused it harm before engaging with plaintiff).

## II. DEFENDANTS HAVE FAILED TO OVERCOME THE PRESUMPTION THAT LUCASFILM OWNS THE COPYRIGHTS IN THE WORKS

Defendants proffer four reasons why Lucasfilm's copyright registrations purportedly are insufficient: (1) Lucasfilm has failed to present this Court with its copyright applications; (2) Lucasfilm has failed to proffer its deposit copies; (3) Defendants have not been given a fair opportunity to conduct discovery on these issues; and (4) Lucasfilm has failed to proffer chain of title evidence. (Opp'n at 12-15). Defendants' arguments ignore black letter law governing copyrights, and there can be no serious question that Lucasfilm owns the copyrights in issue.

Lucasfilm's copyrights, each of which Lucasfilm filed within five years of the applicable date of publication, are "'prima facie evidence of the validity of [its] copyright[s] and the facts stated in the certificate[s].'" *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (quoting 17 U.S.C. § 410(c)); *see also* MSJ at 3, 6. In this setting, Lucasfilm "did not have to produce any [additional] evidence" beyond its registration to prove its copyright ownership. *United Fabrics*, 630 F.3d at 1258. Rather, it is Defendants that have "the burden of rebutting the facts set forth in [Lucasfilm's] certificate," which they can do only by offering "some evidence" of invalidity." *Id.* at 1257-58. Merely pointing to a supposed "absence of proof" on Lucasfilm's part does not suffice. As the Ninth Circuit has explained, that "skips a step." *Id.* at 1257-58.

There is no requirement that Lucasfilm submit its copyright applications or actual deposit specimens. *See*, *e.g*., *id.* at 1258; *Rosen v. R & R Auction Co., LLC*, No. CV-15-07950-BRO-JPRx, 2016 WL 7626443, at *4 (C.D. Cal. Aug. 31, 2016) ("evidence that ties the [work] to the Certificate of Registration" is sufficient); *Mercer Publ'g Inc v. Smart Cookie Ink, LLC*, No. C12-0188JLR, 2012 WL 12863933, at *1 (W.D. Wash. Nov. 27, 2012) ("a published copy of the work named in th[e] certificate" is sufficient); *Thomas v. Artino*, 723 F. Supp. 2d 822, 830 (D. Md. 2010) (registration certificate means that plaintiff need not "provide the application, file, deposit, or a 'certified copy' of the registered work to prove that he holds the copyright").[3]

Defendants' challenge to Lucasfilm's declarant is baseless. He provided competent testimony, based on personal knowledge and company records, that the exhibits attached to his

[3] Neither of Defendants' cited cases concern how a plaintiff evidences its work to a court. *Kreative Power, LLC v. Monoprice, Inc.*, No. 14-CV-02991-SI, 2015 WL 971387, at *12 (N.D. Cal. Mar. 3, 2015), concerned whether elements of product packaging should have been parsed out from the plaintiff's copyright. *Express, LLC v. Fetish Grp., Inc.*, 424 F. Supp. 2d 1211, 1219-20 (C.D. Cal. 2006), concerned whether the plaintiff could sue for infringement of lace designs contained in its deposit copy when its registration disclaimed any copyright in the lace trim.

statement contain the same works that were deposited with the Copyright Office. (Lim Decl. ¶¶ 1, 3-5, Exs. A-C). If Defendants wanted to challenge what Lucasfilm deposited, "it [wa]s their burden to develop this theory by obtaining those copies from the Copyright Office." *Mercer Publ'g*, 2012 WL 12863933, at *1.

Finally, this Court should deny Defendants' three-sentence Rule 56(d) request. (Opp'n at 14). Defendants do not provide "affidavits setting forth with particularity" their need for additional evidence, as the Rule requires. *See Dreamroom Prods., Inc. v. Suavemente, Inc.*, No. CV 11-6604-JFW (SSX), 2014 WL 12579813, at *3 (C.D. Cal. Feb. 26, 2014) (quotation marks omitted). Defendants also "offer no facts or basis to dispute" Lucasfilm's copyright ownership, *id.* at *4, or, indeed, any explanation regarding the evidence they seek. Defendants, finally, "have failed to demonstrate that they have been diligent in conducting discovery." *Id.* If Defendants wished to challenge Lucasfilm's evidence, they could have sought to access deposit copies from the Copyright Office, *see Mercer Publ'g*, 2012 WL 12863933, at *1, but they chose not to.

Finally, Defendants contend that Lucasfilm supposedly has failed to prove its "work for hire" ownership of the works. (Opp'n at 14-15). For the reasons set forth above, however, Lucasfilm's registrations are *prima facie* evidence of the "facts stated [in its registrations], including [its] the chain of title in the [works]." *United Fabrics*, 630 F.3d at 1258. Defendants have no evidence to rebut Lucasfilm's ownership. For this reason, their argument fails.[4]

---

[4] Defendants' cited cases are inapposite. A defendant in *Real Estate Disposition Corp. v. Nat'l Home Auction Corp.*, No. CV 08-01331 SJO (Ex), 2008 WL 11336112 (C.D. Cal. May 21, 2008), presented actual evidence that it was a joint author of the work, which rebutted the plaintiff's registration claiming ownership on a work made for hire basis. *Id.* at *5-6 & n.5. The plaintiff in *Greenwich Film Prods., S.A. v. DRG Records, Inc.*, No. 91-cv-0546 (JSM), 1992 WL 279357 (S.D.N.Y. Sept. 25, 1992), registered its work more than five years after its publication, *id.* at *1, so the presumption of validity did not apply, *see* 17 U.S.C. § 410(c), and it "concede[d]" that it did not own the work on a work-made-for-hire basis, *Greenwich Film*, 1992 WL 279357, at *2.

## III. DEFENDANTS' INFRINGEMENT IS NOT *DE MINIMIS* AS A MATTER OF LAW

Defendants contend that their use of Lucasfilm's copyrights is *de minimis* because they use only isolated scenes from *Star Wars* works that are allegedly quantitatively and qualitatively insignificant. (Opp'n at 15-17). Defendants ignore the actual test for *de minimis* use.

"A 'use is de minimis only if the average audience would not recognize the appropriation.'" *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 878 (9th Cir. 2016) (quoting *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004)); *accord Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir. 1986). In other words, infringement requires "something which ordinary observations would cause to be recognized as having been taken from the work of another." *VMG Salsoul*, 824 F.3d at 878 (quotation marks omitted). Here, ordinary observers would certainly recognize that Defendants used characters, images, and quotations from *Star Wars* works in their Facebook and Twitter posts. (Arato Decl. Exs. F, G). Indeed, Defendants consistently included *Star Wars* hash tags in their posts (*id*. Ex. G), which demonstrates their intent to refer to the original works. That alone precludes a *de minimis* use defense. *Fisher*, 794 F.2d at 434 n.2 (one who intends "[t]o 'conjure up' the original work in the audience's mind . . . must appropriate a substantial enough portion of it to evoke recognition," precluding a *de minimis* use defense).

For this reason, it is irrelevant that Defendants contend they took only "quantitatively or qualitatively" insignificant material or depict just "single frames" from Lucasfilm's well-known copyrighted works. (Opp'n at 16). Indeed, "audience recognition is the test for de minimis copying, regardless of how minimal the copying is in relation to the infringing work or the copyrighted work as a whole." *Corbello v. DeVito*, 262 F. Supp. 3d 1056, 1077 (D. Nev. 2017).

*Newton*, on which Defendants rely, is not to the contrary. There, the Ninth Circuit considered the amount of material that defendants took from the plaintiff's work only to help determine whether the "average audience might recognize the appropriation." *Newton*, 388 F.3d

at 1195. The Court held that a hip-hop group's sampling of a "common, trite, and generic three-note sequence" from the plaintiff's jazz composition was *de minimis* only because "an average audience would not discern [the plaintiff's] hand as a composer." *Id.* at 1196. That can hardly be said about images from *Star Wars*. *See also Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 155 F. Supp. 2d 1, 45-46 (S.D.N.Y. 2001) (short video clips of "three seconds or less" were "not *de minimis*" because they were "plainly observable to the lay viewer"), *aff'd in part and remanded on other grounds*, 277 F.3d 253 (2d Cir. 2002). Moreover, the Copyright Act gives the copyright owner the exclusive right to publicly display "the *individual images* of a motion picture or other audiovisual work." 17 U.S.C. § 106(5) (emphasis added). On its face, the Act thus precludes Defendants' "single frame" contention.

Here, Defendants misappropriated distinctive characters, images, and quotations from *Star Wars* in order to invoke *Star Wars*. Defendants made each of these takings the focus of an entire social media post readily observable on Defendants' social media pages. (Arato Decl. Exs. F, G). The uses are infringing.

## IV. DEFENDANTS' INFRINGEMENT IS NOT FAIR USE AS A MATTER OF LAW

Defendants contend they can use Lucasfilm's copyrights with impunity to advertise their Sabacc app. They cite no authority for that audacious claim, and none exists. Indeed, Defendants fail to show that "a single factor tip[s] in [their] favor," *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1184 (9th Cir. 2012), or the existence of any disputed material fact, *see Henley v. DeVore*, 733 F. Supp. 2d 1144, 1151 (C.D. Cal. 2010). This Court, accordingly, should reject their fair use defense (which they have the burden to prove) as a matter of law. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008) (affirming district court's rejection of fair use as a matter of law when the defendant's "allegations, when taken as true, do not support a finding of fair use"); *Monge*, 688 F.3d at 1170 (defendant has the burden of proving fair use).

a. The "purpose and character" of Defendants' use dooms their claim. Defendants' Twitter and Facebook pages advertise their mobile game app and are, accordingly, purely commercial. (Arato Reply Decl. Ex. B at 10-11; *id.* Exs. C, D; Arato Decl. Exs. A, F, G, J).

Defendants' social media posts are also not "transformative." *First*, the "individual images" from Lucasfilm's works are "reproduced essentially in [their] entirety," and "neither minor cropping nor the inclusion of headlines or captions transform[s] the copyrighted works" into something new. *Monge*, 688 F.3d at 1174; *see also id.* at 1176 ("wholesale copying sprinkled with written commentary[] [is] at best minimally transformative").[5] *Second*, Defendants use Lucasfilm's works merely to "get attention" for their product, not to "comment[] on or criticiz[e]" the works. *Columbia Pictures Indus., Inc. v. Miramax Films Corp.*, 11 F. Supp. 2d 1179, 1188 (C.D. Cal. 1998); *see also Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1401 (9th Cir. 1997). Using *Star Wars* content to advertise a game "[p]opularised by the Star Wars universe" (Arato Decl. Ex. J) is straightforward and obvious—not transformative.

In this setting, "every commercial use of copyrighted material is presumptively an unfair exploitation." *Monge*, 688 F.3d at 1176 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)); *accord Disney Enters.*, 869 F.3d at 861; *Leadsinger*, 512 F.3d at 530.[6]

---

[5] Defendants contention that their use of a Lando Calrissian GIF is transformative because the GIF displays "animation that automatically plays in a continuous loop" (Opp'n at 18) ignores the evidence. Putting aside the legal defects, even if that factual description holds for the original GIF, Defendants' post displays a *still image* of Lando. (Arato Decl. Ex. F; Arato Reply Decl. ¶ 6).

[6] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994), upon which Defendants rely, involved a use within a song, not an advertisement, and the court cautioned that "[t]he use . . . of a copyrighted work to *advertise* a product, even in a parody" (which is not alleged here), is "entitled to less indulgence." *Id.* at 585 (emphasis added).

b. The "nature of the copyrighted work" also cuts decisively against Defendants. "There is no dispute that Plaintiffs' works are expressive and at the core of copyright protection," which "weighs against the Defendants in a fair use balancing." *Henley*, 733 F. Supp. 2d at 1160; *see also Leadsinger*, 512 F.3d at 531 ("creative expression" entitled to greater protection than "informational or functional" works). Courts, moreover, routinely reject defendants' arguments that they can make fair use of published works. *See, e.g.*, *Disney Enters.*, 869 F.3d at 860-62; *Leadsinger*, 512 F.2d at 525; *Henley*, 733 F. Supp. 2d at 1164; *Columbia Pictures*, 11 F. Supp. 2d at 1189-90; *Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co., Inc.*, 900 F. Supp. 1287, 1300-01 (C.D. Cal. 1995).

c. The "amount and substantiality of the portion used" also favors Lucasfilm. "[T]he brevity of the infringing work when compared with the original does not excuse copying." *Metro-Goldwyn-Mayer*, 900 F. Supp. at 1300. "The inquiry under this factor is a flexible one, rather than a simple determination of the percentage of the copyrighted work used," *Monge*, 688 F.3d at 1179, focusing on whether the amount used is "reasonable in relation to the purpose of the copying," *Dr. Seuss Enters.*, 109 F.3d at 1402. Since the Defendants "have not created a transformative work," and their social media posts are "substantially similar to the expressive ideas contained in [Lucasfilm's works]," it is difficult to see how the amount used could possibly be "reasonable." *Columbia Pictures*, 11 F. Supp. 2d at 1189. Moreover, while Defendants claim that they used only small segments of Lucasfilm's works (Opp'n at 19-20), their posts display important "character[s]" from the *Star Wars* universe who are part of "the highly expressive core" of Lucasfilm's copyrighted works. *Dr. Seuss Enters.*, 109 F.3d at 1402.[7] This factor favors Lucasfilm.

---

[7] Zeb is one of the main characters in *Star Wars Rebels* and, in the episode "Idiot's Array," sets the plot in motion by losing a game of Sabacc to Lando Calrissian. (Lim Decl. Ex. C). Lando has long been a critical character in the *Star Wars* universe, having been featured in *Episode V: The Empire Strikes Back*, *Star Wars Episode VI: Return of the Jedi*, and "Idiot's Array." (*Id.* Exs.

d. Finally, the effect-on-the-market factor considers "whether unrestricted and widespread dissemination" of content like Defendants' infringing material "would hurt the potential market for the original and derivatives of [Lucasfilm's works]." *Dr. Seuss Enters.*, 109 F.3d at 1403. The question is not, as Defendants erroneously contend, whether their use will stop consumers from watching Lucasfilm's movies and television series. (Opp'n at 20). The question is whether, "if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work," *Monge*, 688 F.3d at 1182 (quotation marks omitted) (emphasis omitted)—including the market for licensing derivatives and portions of the work. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (the fourth factor "must take account . . . of harm to the market for derivative works") (quotation marks omitted), *Leadsinger*, 512 F.3d at 531 (Court was "not willing to assume" there was "no market for song lyrics standing alone" and found that defendant failed to show that reprinting song lyrics would have no effect on plaintiff's ability to require licenses).[8]

Defendants have failed to establish a lack of market harm, which is their burden. Indeed, the "silent record on [this] important factor . . . disentitle[s]" Defendants to relief. *Dr. Seuss Enters.*, 109 F.3d at 1403 (quotation marks omitted); *see also Monge*, 688 F.3d at 1181 (same); *Columbia Pictures*, 11 F. Supp. 2d at 1189 n.7 (defendant's "speculative assertion[s]" regarding market harm are insufficient). The Court should grant summary judgment for this reason alone. *Monge*, 688 F.3d at 1180.

---

A, B, and C). The "many Bothans" quotation comes from a critical scene in *Return of the Jedi* in which the leader of the Rebel Alliance briefs the main characters (including Lando) on the military operation against the Death Star. (*Id.* Ex. B at 0:49:32).

[8] *See also Henley*, 733 F. Supp. 2d at 1162-63 ("widespread dissemination" of "satirical spins on the Plaintiffs' music" could "usurp the potential licensing market for remakes or remixes of the Plaintiffs' songs, should they choose to license them" in the future); *Twentieth Century Fox Film Corp.*, 155 F. Supp. 2d at 47 ("the market for excerpts of [movies or trailers] has been, and will continue to be, negatively affected by defendants' use of [short] infringing clips without a license").

In any event, there is no such evidence for Defendants to offer. Defendants use Lucasfilm's works for commercial gain, such that "the likelihood of market harm 'may be presumed.'" *Leadsinger*, 512 F.3d at 531 (quoting *Sony*, 464 U.S. at 451); *see also Disney Enters.*, 869 F.3d at 861; *Metro-Goldwyn-Mayer*, 900 F. Supp. at 1300. In addition, the "[u]nrestricted and widespread reproduction" of *Star Wars* content "would not only undermine the ability of [Lucasfilm] to market images of [its copyrighted works]"—including for marketing related products—"but would also create incentives to pirate intellectual property." *Monge*, 688 F.3d at 1182. People are obviously willing to pay for *Star Wars* images, and Lucasfilm would surely suffer market harm if everyone were allowed to disseminate such works without authorization.

In sum, Defendants have cited no authority, and presented no evidence, in support of fair use. The defense is entirely hollow.

## V. DEFENDANTS' INFRINGEMENT WAS WILLFUL AS A MATTER OF LAW

Defendants have nothing to say about their continued infringement *post*-suit. (MSJ at 5). They still have not removed their posts, and they do not challenge the cases holding that their continued infringement is willful as a matter of law. (MSJ at 8-9). The Court should find them willful for this reason alone.

Defendants' attempt to characterize their *pre*-suit infringement as innocent ignores the record. (Opp'n at 21-22). Defendants claim they reasonably believed they could use Lucasfilm material because Lucasfilm authorizes social media posts via the Giphy website. That is nothing but an after-the-fact contrivance. Indeed, Ime Ekong, Defendants' principal, never claims familiarity with Giphy *before* he infringed Lucasfilm's works. And, as set forth above, the Giphy site prohibits the commercial use that Defendants make here.

Defendants also are not "innocent" just because third-party websites post Lucasfilm material without including a Lucasfilm copyright notice. Regardless of any notice, Defendants

plainly knew that they were using content from the *Star Wars* franchise—they even knew which specific *Star Wars* works they were infringing. (MSJ at 8; Arato Decl. Ex. G (tweets labeled #StarWars, including one tweet with an image from *Star Wars Rebels* labeled #StarWarsRebels); *id.* Exs. A, J (referring to *Star Wars*)). Defendants, however, proffer *no* evidence that they made any "attempt to check or inquire into whether any of the [materials they used] were subject to copyright protections." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017). Their conduct was, accordingly, willful. *See id.* (finding willfulness on similar facts because willfulness includes a "reckless disregard for . . . the copyright holder's rights") (quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the Court should grant Lucasfilm's motion.

Dated: New York, New York
May 30, 2018

SHAPIRO ARATO LLP

By: /s/ Cynthia S. Arato
Cynthia S. Arato
(State Bar No. 156856)
Fabien M. Thayamballi
(State Bar No. 284752)
500 Fifth Avenue, 40th Floor
New York, NY 10110
Tel: (212) 257-4880
Fax: (212) 202-6417
carato@shapiroarato.com

*Counsel for Plaintiffs Lucasfilm Ltd. LLC and Lucasfilm Entertainment Company Ltd. LLC*