UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCASFILM LTD. LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>REN VENTURES LTD., et al.,<br><br>Defendants. | Case No. 17-cv-07249-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiffs Lucasfilm Ltd. LLC and Lucasfilm Entertainment Company Ltd. LLC (collectively "Lucasfilm") move for summary judgment on their claim for copyright infringement against defendants Ren Ventures and Sabacc Creative Industries Ltd., and a finding that the infringement was willful. For the reasons explained below, the motion is granted as to the copyright infringement claim and denied as to the request for a finding of willfulness.

## II. BACKGROUND

Lucasfilm is the registered owner of copyrights covering at least three works in the *Star Wars* franchise: the 1980 motion picture *Star Wars Episode V: The Empire Strikes Back*, the 1983 motion picture *Star Wars Episode VI: Return of the Jedi*, and a 2015 episode of the television series *Star Wars Rebels*, "Idiot's Array." Defendants are the creators and distributors of a mobile game app titled "Sabacc – The High Stakes Card Game", which according to Lucasfilm, mimics a fictional card game that appears in the *Star Wars* franchise universe. To promote their Sabacc app,

1  defendants used images and dialogue from Lucasfilm's two movies and television episode (the
2  "Works") on a Facebook page and Twitter account. In April 2017, Lucasfilm's counsel sent a
3  cease-and-desist letter to defendants, demanding immediate discontinuation of defendants'
4  marketing using Lucasfilm's intellectual property. In December, Lucasfilm filed suit against
5  defendants, alleging copyright infringement, trademark infringement, and two other claims.
6  Lucasfilm now moves for partial summary judgment against defendants on its copyright claim
7  only.

### III. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir.1999). The Court must assume the truth of direct evidence set forth by the party opposing the motion. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir.1992). Where circumstantial evidence is presented, however, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50. While the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group v. American International Bank*, 926 F.2d 829, 836–37 (9th Cir.1991). In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997).

The moving party for summary judgment bears the initial burden of identifying those

portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party will have the burden of proof at trial, however, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." F ED. R. C IV. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. at 323.

## IV. DISCUSSION

In order to prove copyright infringement, a plaintiff must demonstrate "(1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (internal quotation marks omitted). It is undisputed that Lucasfilm is the registered owner of copyrights PA 72-282, PA 1-337-226, PA 172-810, and PA 2-011-445, which cover the two motion pictures and television episode at issue here. *See* Arato Decl. Exs. B-D (registrations); Declaration of Gary Lim ("Lim Decl.") Exs. A-C (deposit copies). There is also no material dispute as to whether the challenged images and dialogue in defendants' marketing campaign are strikingly similar, and indeed identical or nearly identical, to protectable elements from the Works. *See* Arato Decl. Exs. F-G. Although the issue of similarity is usually a matter of factual dispute reserved for trial, the Ninth Circuit allows district courts to grant summary judgment to plaintiffs in copyright cases

where "the works are so overwhelmingly identical that the possibility of independent creation is precluded." *Unicolors*, 853 F.3d at 987. Defendants do not deny that their Facebook marketing page includes images from *The Empire Strikes Back* and a *Star Wars Rebels* episode, or that their Twitter page displays a quotation from *Return of the Jedi*. *See* Mot. Partial Summary Judgment at 4-5 (providing visual evidence of several instances of alleged infringement by way of example.) Instead, defendants assert the existence of disputed facts with respect to the scope of Lucasfilm's copyright registrations and sole ownership, along with several affirmative defenses: (1) equitable estoppel; (2) *de minimis* use; and (3) fair use[1]. They also contend that disputed issues of material fact preclude summary judgment on the issue of willful infringement.

**A. Scope and Ownership of the Copyright Registrations**

Defendants unpersuasively argue Lucasfilm cannot prove its copyright ownership in the Works because it has not demonstrated that its registrations cover the aspects of the Works at issue here. Specifically, defendants take issue with Lucasfilm's failure to produce the actual registration applications and deposit copies submitted with them. The actual registration applications, however, are not the only way to show the scope of a registration. While Lucasfilm acknowledges it submitted DVDs rather than the actual deposit copies (DVDs did not exist at the time of registration), it has adequately demonstrated the DVDs contain the same works as the deposit copies by pointing to the public records maintained by the U.S. copyright office. In addition, Lucasfilm has shown that the aspects of the Works at issue here—the images and dialogue used by defendants—are part of these registered works by specifying the precise time stamps where they appear. No reasonable jury could find otherwise.

Defendants also argue that Lucasfilm cannot prove ownership of the Works because there

---

[1] Without first raising the issue in their opposition papers, defendants at oral argument asserted that Ren Ventures cannot be held liable for any alleged copyright infringement by Sabacc Creative Industries. There is, however, no evidence in the record supporting an inference that Ren Ventures and Sabacc Creative Industries are separate, independent entities. Moreover, the individual who claims to have obtained and posted the challenged images and dialogue identifies himself as both the director of Ren Ventures and a shareholder of Sabacc Creative Industries. *See* Declaration of Ime Ekong ("Ekong Decl.") ¶¶ 3, 8. Therefore, defendants' unsupported defense must be rejected.

is no indication in the record they were "made for hire" as indicated in the registration documents. Defendants are mistaken as to Lucasfilm's obligation to produce evidence of valid "made for hire" status. As the holder of registrations for the Works, Lucasfilm is entitled to "a presumption of a valid copyright," *Express, LLC v. Feitsh Grp., Inc.*, 424 F. Supp. 2d 1211, 1218-19 (C.D. Cal. 2006). Although defendants may rebut the Lucasfilm's *prima facie* evidence with evidence that suggests a lack of ownership, *see Entertainment Research Group, Inc. v. Genesis Creative Group*, 122 F.3d 1211, 1217 (9th Cir. 1997), they have not done so here. Pointing to an absence of *additional* evidence supporting Lucasfilm's ownership rights is not the same as *offering* evidence that puts those rights in serious dispute. Since Lucasfilm is the registered copyright holder of the disputed works at issue and defendants have not produced any compelling evidence to challenge its registrations, Lucasfilm has adequately demonstrated its copyright ownership in the Works.

**B. Equitable Estoppel**

Four elements must be present to establish a defense of estoppel: (1) the plaintiff knows the facts of the defendants' infringing conduct; (2) the plaintiff intends to lead the defendants to believe or engages in conduct that makes it reasonable for the defendants to believe that the plaintiff will not assert its putative copyright interests against the defendants; (3) the defendants are ignorant of the plaintiff's alleged copyright interests; and (4) the defendants rely on the plaintiff's conduct to its injury or detriment. *See Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960); *Cal. State Bd. of Equalization v. Coast Radio Prods.*, 228 F.2d 520, 525 (9th Cir. 1955); *Oracle Am., Inc. v. Hewlett Packard Enter.* No. 16-cv-01393-JST, 2017 U.S. Dist. LEXIS 22561, at *7 (N.D. Cal. Feb. 16, 2017).

Here, the parties do not dispute that Lucasfilm knew of defendants' alleged infringement as early as April 2017, when it issued a cease-and-desist letter to defendants. Because the letter only accused defendants of trademark infringement and because Lucasfilm initially elected to pursue a trademark cancellation action before filing suit, it was reasonable, according to defendants, for them to believe that copyright infringement was not at issue. In defendants' telling, Lucasfilm made no indication that it would assert its putative copyright interests until the filing of this action

eight months after sending the cease-and-desist letter. A fair reading of Lucasfilm's letter suggests otherwise. The letter clearly stated that Lucasfilm owned copyright interests in the *Star Wars* franchise and demanded that defendants discontinue all advertisements for the Sabacc mobile game app on Facebook and Twitter and delete the social media accounts. The *Star Wars* images and dialogue displayed in those advertisements are now the subject of this copyright dispute. Defendants cannot credibly argue they were lulled into thinking Lucasfilm did not intend to take any further action with regard to the enforcement of their copyright interests.

Defendants' professed ignorance of Lucasfilm's alleged copyright interests is equally unpersuasive. They claim they had no reason to believe Lucasfilm had rights in the Works because *Star Wars*-themed GIFs, which lack clear indicia of copyright ownership, are widely available and shared among users of the website Giphy and various social media platforms. Conversely, defendants also argue they could not expect to be sued for infringement because Lucasfilm had permitted the same allegedly infringing conduct by others. That copyright protections may be ignored or go undetected is not a strong indication that no such protections exist. Thus, while defendants' purported reliance on Lucasfilm's inaction regarding the accused copyright infringement has undoubtedly caused harm to them in the form of having to defend this lawsuit, the reliance was unjustified and the harm self-inflicted. Accordingly, Lucasfilm is not equitably estopped from seeking summary judgment on its copyright infringement claims against defendants.

### *De Minimis* Use

"A use is *de minimis* only if the average audience would not recognize the appropriation." *VMG Salsoul, Ltd. Liab. Co. v. Ciccone*, 824 F.3d 871, 878 (9th Cir. 2016) (internal quotation marks omitted), quoting *Newton v. Diamond*, 388 F.3d 1189, 1193; *see also Fisher v. Dees*, 794 F.2d 432, 435 n.2 (9th Cir. 1986) ("As a rule, a taking is considered de minimis only if it is so meager and fragmentary that the average audience would not recognize the appropriation."). There is no question that an average consumer of the Sabacc mobile game app would recognize the images and dialogue in defendants' promotional materials as being derived from the *Star Wars*

movies and other media. Indeed, defendants appear to depend upon that recognition to promote the game among *Star Wars* fans. Moreover, the parties do not dispute defendants consistently included *Star Wars* hashtags in their posts, obvious signs that the images and dialogue come from *Star Wars*. No reasonable jury would therefore find defendants' use "so meager and fragmentary that the average audience would not recognize the appropriation." *Id.* Therefore, defendants' use is not, as a matter of law, *de minimus*.

**C. Fair Use**

Under 17 U.S.C. § 107, fair use requires the examination of four factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. While "fair use is a mixed question of law and fact," the jury should only decide "historical facts" but not "the ultimate conclusions to be drawn from the admitted facts," which are "legal in nature." *Fisher v. Dees*, 794 F.2d 432, 436 (9th Cir. 1986), quoting *Harper & Row, Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985); *see also Oracle Am., Inc. v. Google LLC*, 886 F.3d 1179, 1193 (Fed. Cir. 2018) ("The fair use question entails . . . a primarily legal exercise. It requires a court to assess the inferences to be drawn from the historical facts . . . to determine what conclusion those inferences dictate."). Because the parties do not dispute any material historical fact, the fair use question is decided on summary judgment. As discussed below, defendants' use of the Works is not fair use.

1. Purpose and Character of Use

Under the first factor, defendants unpersuasively argue their use is transformative. "[Transformative] works [] lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Such works generally further "the goal of copyright, [i.e.] to promote science and the arts." *Id.* To be transformative, a work must "alter[] the original with new expression, meaning, or message," *id.* at 671, or serve a "different purpose." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 (9th Cir.

2003). "[M]oving material to a new context is not transformative in and of itself—even if it is a sharply different context." *Oracle Am., Inc. v. Google LLC*, 886 F.3d 1179, 1201 (Fed. Cir. 2018) (citation and internal quotation marks omitted). Here, defendants merely reposted images and dialogue from the original works with "minor cropping [or] the inclusion of headlines or captions" which cannot transform the copyrighted works into something new. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1174 (9th Cir. 2012); *see also id.* at 1176 (9th Cir. 2012) ("[W]holesale copying sprinkled with written commentary[] [is] at best minimally transformative.").

Defendants' use of the allegedly infringing content to promote their mobile game app also disfavors a fair use finding under the first factor. *See Sony Corp. of Am. v. Universal City Studios, Inc.* 464 U.S. 417, 451 (1984) (holding "commercial use of copyrighted material" is a presumptive although not dispositive indication of "an unfair exploitation.")

2. Nature of the Copyrighted Work

Under the second fair use factor, courts address two aspects of the relevant work: the extent to which it is expressive and whether it is published or not. *See Harper & Row*, 471 U.S. at 563-64. The parties do not dispute Lucasfilm's Works are expressive, and "work[s] of creative expression, as opposed to [] informational work[s] . . . [are] precisely the sort of expression that the copyright law aims to protect." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 531 (9th Cir. 2008). This element therefore favors Lucasfilm. On the other hand, however, "[p]ublished works are more likely to qualify as fair use." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003). The copyrighted works in question have been published extensively: images, illustrations, and quotes similar to those at issue appear at numerous locations online; some of the Works were screened nearly four decades ago. As a result, the authors have likely realized their expressive and economic interests to a great extent. Considering both elements, the second factor thus weighs in favor of defendants.

3. Amount and Substantiality

Defendants' allegedly infringing GIF images consist of a seconds-long video clip paired with short captions. Compared to the original works—full-length feature films and a television

1  episode—they are quantitatively insignificant. Even if they display "important characters from the
2  *Star Wars* universe who are part of the highly expressive core" of the Works, showing them for a
3  few seconds does not make defendants' use significant in this case. Accordingly, this factor favors
4  defendants.

   4. <u>Market Effect</u>

In assessing the market harm caused by the potentially infringing use, courts consider both the original market and "market for potential derivative uses includ[ing] only those that creators of original works would in general develop or license others to develop." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 592 (1994). While defendants may be correct that "no one is going to watch a *Star Wars* GIF instead of the original movie," these GIF images can nonetheless have an adverse effect on the derivative market. "[W]hen 'the intended [non-transformative] use is for commercial gain,' the likelihood of market harm 'may be presumed.'" *Leadsinger*, 512 F.3d at 531, quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984); *see also Campbell*, 510 U.S. at 591 ("[W]hen a commercial use amounts to mere duplication of the entirety of an original, it [is] . . . likely that cognizable market harm to the original will occur."). Defendants use these *Star Wars* images and dialogue to promote their game with a profit motive. The burden is thus on defendants to disprove market harm. Movie franchise owners routinely license intellectual property rights to other businesses to develop movie-related merchandise and products, which allows both sides of the transaction to reap the benefits associated with copyrighted works. Because defendants have not produced evidence to show lack of market harm to Lucasfilm from their unlicensed use, this factor weighs against fair use.

The "four statutory factors" of fair use should not be "treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). "The ultimate test of fair use, therefore, is whether the copyright law's goal of 'promot[ing] the Progress of Science and useful Arts,' U.S. CONST., art. I, § 8, cl. 8, 'would be better served by allowing the use than by preventing it.'" *Castle Rock Ent't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 141 (2d Cir.

1998), quoting *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1077 (2d Cir. 1992). For this reason, courts often give more weight to the first and fourth factors of the fair use test because they are more closely related to incentivizing the creation of new arts—allowing transformative use encourages creative disruption while market harm measures the reduction of economic incentives. *See, e.g., Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015) ("The second factor has rarely played a significant role in the determination of a fair use dispute."); *Campbell*, 510 U.S. at 588, 599 (holding transformative parodies can be fair use even though they copy the "heart" of the original and "almost invariably copy . . . expressive works"); *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 925 (2d Cir. 1994) (ruling against fair use based on lack of transformative use and potential market harm despite the "manifestly factual character" of the copyrighted works which favors the infringer); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006) ("[C]opying the entirety of a work is sometimes necessary to make a fair use of the image."), citing *Kelly*, 336 F.3d at 821.

Therefore, although the second and third factors in the foregoing analysis tend to support a finding of fair use, the more important first and fourth factors weigh decidedly against defendants. After all, a non-transformative use of copyrighted works that creates little new and harms the economic incentive of artists can hardly "promote the Progress of Science and useful Arts." U.S. CONST., art. I, § 8, cl. 8. Accordingly, defendants' use of Lucasfilm's copyrighted works is not fair use.

### D. Willful Infringement

Finally, defendants argue that to the extent any copyright infringement occurred, it was innocent. "To prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) (citation and internal quotation marks omitted). As discussed above, neither the demand letter nor the existence of *Star Wars*-themed GIFs on the internet made it reasonable for defendants to assume Lucasfilm did not own

rights in the Works or that it did not intend to enforce those rights. That said, evidence of defendants' awareness of the Works falls short of establishing actual awareness of *infringing activity*. While defendants arguably demonstrated reckless disregard or willful blindness in failing at least to investigate whether their conduct infringed upon Lucasfilm's copyright interests, that is a question of material fact properly reserved for determination by a jury. For that reason, partial summary judgment will be denied as to Lucasfilm's claim of willful infringement.

## V. CONCLUSION

For the reasons set forth above, Lucasfilm's motion for summary judgment on its claim of copyright infringement is granted. The motion is denied with respect to the issue of whether the infringement was willful.

**IT IS SO ORDERED**.

Dated: June 29, 2018

_____
RICHARD SEEBORG
United States District Judge