Cynthia S. Arato (State Bar No. 156856)
Fabien M. Thayamballi (State Bar No. 284752)
SHAPIRO ARATO LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
Tel.: (212) 257-4880
Fax.: (212) 202-6417
carato@shapiroarato.com

Counsel for Nonparty George Lucas

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Lucasfilm Ltd. LLC and Lucasfilm Entertainment Company Ltd. LLC, <br><br> *Plaintiffs/Counter-Defendants*, <br>   v. <br><br> Ren Ventures Ltd. and Sabacc Creative Industries Ltd., <br><br> *Defendants/Counter-Plaintiffs*. | Case No.  3:17-cv-07249-RS <br><br> **NOTICE OF MOTION AND MOTION OF NONPARTY GEORGE LUCAS TO QUASH SUBPOENA** <br><br> Hearing:  August 24, 2018 at 1:30 p.m. |

MOTION TO QUASH                                                                                                    Case No.  3:17-cv-07249-RS

PLEASE TAKE NOTICE THAT nonparty George Lucas will move the Honorable Richard Seeborg, United States District Judge for the United States District Court, Northern District of California, on August 24, 2018, at the San Francisco Courthouse, Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, for an order quashing the subpoena for deposition and documents that Defendants Ren Ventures Ltd. and Sabacc Creative Industries Ltd. (collectively, "Defendants") served on George Lucas in this action brought by Plaintiffs Lucasfilm Ltd. LLC and Lucasfilm Entertainment Company Ltd. LLC (collectively, "Lucasfilm").

Nonparty George Lucas seeks an order quashing the subpoena served on him.

## INTRODUCTION AND BACKGROUND FACTS

Nonparty George Lucas is the legendary filmmaker and entrepreneur who created the *Star Wars* universe. Mr. Lucas is the founder of Lucasfilm and was its Chairman and CEO until 2012. Mr. Lucas is an iconic figure in the film industry and to *Star Wars* fans, but he has no role in this action or unique knowledge relevant to this dispute that justifies burdening him with discovery. Defendants nevertheless have served Mr. Lucas with a subpoena demanding that he appear for a deposition and search for and produce documents responsive to over two dozen overly broad and unduly burdensome document requests regarding his four decades of work related to *Star Wars*. (A copy of the subpoena is attached to the Declaration of Cynthia S. Arato ("Arato Decl.") as Exhibit A). Defendants have no legitimate basis to seek this discovery from Mr. Lucas, especially where the information sought is duplicative of information that Defendants could obtain from Lucasfilm. Accordingly, this Court should quash the subpoena.

This is a trademark and copyright infringement case concerning Sabacc, the card game of the *Star Wars* universe through which Han Solo won his spaceship, the *Millennium Falcon*, from Lando Calrissian. Sabacc is a recurring element in the *Star Wars* franchise, and Lucasfilm has

MOTION TO QUASH    1    Case No. 3:17-cv-07249-RS

included it in at least a hundred works beginning in 1980 and continuing through today, including card games, mobile games, video games, magazines, comic books, novels, television episodes, boardgames, and the motion picture *Solo: A Star Wars Story*. (*See* Arato Decl. ¶ 9, Ex. E; Declaration of Pablo Hidalgo, Dkt. 59 ¶¶ 2-15, Exs. A-N).

Defendants exploit an unauthorized digital version of Sabacc via a mobile app they market as a *Star Wars* game. (Amended Complaint, Dkt. 1 ¶¶ 4, 28, 29). For purposes of this action, Defendants are deemed to have first used Sabacc in November 2015. (Amended Complaint, Dkt. 1 ¶ 35).

Despite Lucasfilm's longstanding commercial exploitation of works featuring Sabacc, Defendants contend that factual issues exist regarding whether Lucasfilm (1) has "priority" of use (*i.e.*, whether Lucasfilm used Sabacc before Defendants) and (2) engaged in "continuous use" of the mark. Defendants purport to seek discovery from Mr. Lucas regarding these issues.

Defendants contend that Mr. Lucas possesses relevant information, apparently regarding Lucasfilm's priority of use, because he is the "person who allegedly coined 'Sabacc' as a mark" in 1978 when writing the draft screenplay for the 1980 motion picture *Star Wars Episode V: The Empire Strikes Back*. Defendants contend that Mr. Lucas possesses relevant information regarding Lucasfilm's continuous use of Sabacc because they "understand that [he] wrote and/or produced many of the expressive works within the *Star Wars* franchise." (Arato Decl. ¶ 12, Ex. F (Email from Jonathan Thomas to Cynthia S. Arato, dated July 5, 2018)).[1]

Defendants' assertions are beside the point. Lucafilm's priority and continuous use of Sabacc are measured solely by how Lucasfilm has *used* Sabacc. How Sabacc or any Lucafilm expressive work was created or invented is legally irrelevant. To the extent Defendants seek

---

[1] Counsel for Mr. Lucas met and conferred with counsel for Defendants on June 26, 2018. Counsel explained Mr. Lucas' position that he was not a relevant witness in this case and notified Defendants that Mr. Lucas would move to quash the subpoena if Defendants did not withdraw it. (Arato Decl. ¶ 11).

testimony on Lucasfilm's actual exploitation of Sabacc, Lucasfilm has identified witnesses with knowledge of the uses of Sabacc and has identified and produced documents relating to those uses.  Mr. Lucas, a former high-level executive of Lucasfilm, has no unique, non-repetitive information to provide on this subject that cannot be obtained from Lucasfilm.  Defendants' remaining justification is made-up and irrelevant.  Defendants contend that they are entitled to depose Mr. Lucas to determine if he copied the word Sabacc from a pre-existing source.  Defendants have produced no evidence that Sabacc is anything other than a unique word coined by Lucasfilm, and Defendants' unfounded suspicion is an insufficient basis on which to subpoena a nonparty.  In addition, Lucasfilm's claims against Defendants are not dependent on this fact.  Lucasfilm can prove ownership of, and priority of use of, the Sabacc mark regardless of whether the word Sabacc was created by Lucasfilm.  Accordingly, there is no basis to justify imposing the burden of a subpoena on a nonparty.  This Court, accordingly, should quash Defendants' subpoena.

## ARGUMENT

Rule 45 mandates that courts quash or modify a subpoena if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).  Indeed, courts consistently recognize that undue burden should not be imposed on nonparties since they "are powerless to control the scope of litigation and discovery." *United States v. C.B.S., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982) (footnotes omitted); *see also Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (when discovery obligations are "thrust upon nonparties," the burden factor is "entitled to special weight"); *WPIX, Inc. v. Broad. Music, Inc.*, No. CV 11-4052-SJO (JEMx), 2011 WL 9753912, at *3 (C.D. Cal. July 5, 2011) ("the Court should take care to account for and mitigate the burden of discovery [on nonparties]").

The Court should quash this subpoena because the information that Defendants seek is not

necessary to the case and not important to resolve the issues in the action, and thus the burden the subpoena would impose on Mr. Lucas greatly outweighs its purported value to Defendants. *See, e.g.*, *Marsh v. Bloomberg Inc.*, No. 16-CV-02647-MEJ, 2017 WL 2224250, at *1 (N.D. Cal. May 22, 2017) (setting forth burden factors); *Razo v. Timec Co., Inc.*, No. 15-CV-03414-MEJ, 2016 WL 1598601, at *2 (N.D. Cal. Apr. 21, 2016) (same); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (setting forth balancing test).

I. **Defendants Do Not Need Discovery Regarding Mr. Lucas' Personal Involvement In The Creation Of The Sabacc Mark Or Any Lucasfilm Expressive Work, And The Burden Of Being Deposed As A Nonparty Is Great**

This case has nothing to do with Mr. Lucas' coining of Sabacc in 1978 or his involvement in the creation of expressive works within the *Star Wars* franchise—the reasons Defendants claim the need to take Mr. Lucas's deposition and to seek his documents.

To prevail on its trademark infringement and unfair competition claims, Lucasfilm must demonstrate use of Sabacc in commerce prior to Defendants' alleged November 2015 priority date. *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1226 (9th Cir. 2008).

To prevail on this issue, "the party claiming ownership must have been the first to *actually use* the mark in the sale of goods or services." *Id.* (emphasis added). "[C]reation or invention of the mark is irrelevant." *AB Electrolux v. Bermil Indus. Corp.*, 481 F. Supp. 2d 325, 330 (S.D.N.Y. 2007); *see also, e.g.*, *Compton v. Fifth Ave. Ass'n, Inc.*, 7 F. Supp. 2d 1328, 1331 (M.D. Fla. 1998) ("the fact that [a party] first conceived of the mark . . . is irrelevant to his ownership of the mark"); 2 McCarthy on Trademarks and Unfair Competition § 16:11 (5th ed.) ("Rights in trademarks are not gained through discovery or invention of the mark, but only through actual usage."). The Ninth Circuit has long recognized this distinction. *Rolley, Inc. v. Younghusband*, 204 F.2d 209, 212 (9th Cir. 1953) ("He who first affixes a trade-mark upon his goods is its owner, not the person who first conceives the idea.").

MOTION TO QUASH                                      4                           Case No. 3:17-cv-07249-RS

For this reason, Mr. Lucas' "coining" of the Sabacc mark in 1978 has no bearing on Lucasfilm's priority use of the mark. Rather, Lucasfilm will establish its priority based on Lucasfilm's actual exploitation of expressive works and other products that include Sabacc as an element, regardless of Mr. Lucas' coining of the word. Lucasfilm has identified the witnesses on whom it intends to rely for this purpose. There is, accordingly, no need to seek discovery from Mr. Lucas on the issue of priority based upon his coining of Sabacc in 1978.[2]

Mr. Lucas's personal involvement in writing and producing expressive works within the *Star Wars* franchise is similarly irrelevant. Defendants contend that Mr. Lucas' participation in the creation of these works is relevant to Lucasfilm's "continuous use" of Sabacc. That is incorrect. To the extent Lucasfilm's continuous use of Sabacc is an issue in this case, it is self-evident that issue will turn on Lucasfilm's actual exploitation of expressive works or products that feature or reference Sabacc (*see Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 979 (9th Cir. 2006) ("use in the marketplace" establishes a mark)), not on how the works were created and by whom. It is therefore irrelevant whether, and the extent to which, Mr. Lucas "wrote and/or produced []any of the expressive works within the *Star Wars* franchise." Defendants, accordingly, have no legitimate need for discovery from Mr. Lucas on this subject either.

In addition to their being no need for Mr. Lucas' testimony, the burden on him is substantial. Indeed, "preparing and sitting for a deposition is always a burden . . . particularly for a non-party." *Amini Innovation Corp.*, 300 F.R.D. at 412. For this reason, the subpoena should be quashed.

---

[2] Since Defendants claim a priority date of November 20, 2015, Lucasfilm can prove its superior rights by establishing its use of Sabacc any time before that date. There is no dispute that Lucasfilm used Sabacc repeatedly before November 2015. (Arato Decl. ¶ 9). Mr. Lucas' coining of the mark in 1978 is irrelevant for this reason as well.

## II. The Subpoena Also Should Be Quashed Because Mr. Lucas Is A Former High-Level Executive With No Unique Personal Knowledge Of The Relevant Facts, All Of Which Can Be Obtained From Lucasfilm

A court should quash a nonparty subpoena if the information sought can be obtained from a party. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (providing that a court must limit discovery if "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit."); *see also Amini Innovation Corp.*, 300 F.R.D. at 410 ("Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing subpoena seeking information available from a party).

In addition, courts in this district recognize that seeking discovery of high-level executives, or former high-level executives, "creates a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374MMC(JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007). Accordingly, parties seeking to depose a high-ranking current or former executive must establish that: (1) the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case; and (2) the party seeking the deposition has exhausted other less intrusive discovery methods. *See*, *e.g.*, *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, No. 16-CV-0698 CAB (NLS), 2018 WL 692259, at *6 (S.D. Cal. Feb. 2, 2018) (barring deposition of former president of company); *Robertson v. McNeil-PPC Inc.*, No. LA CV11-09050 JAK (SSx), 2014 WL 12576817, at *17 (C.D. Cal. Jan. 13, 2014) (same for former Worldwide Chair of Johnson & Johnson's Consumer Group); *Affinity Labs of Texas v. Apple, Inc.*, No. C 09-4436 CW(JL), 2011 WL 1753982, at *16 (N.D. Cal. May 9, 2011) (same for CEO).

To the extent Mr. Lucas has any personal knowledge about the exploitation of relevant

Lucasfilm works, he would possess no information that Defendants could not obtain directly from Lucasfilm. The Lucasfilm works that are relevant to this dispute are commercial products (novels, comic books, card games, etc.) that Lucasfilm or its licensees released in the open market. As such, there is no single person, including Mr. Lucas, with unique personal knowledge regarding Lucasfilm's exploitation of them. Lucasfilm has identified Lucasfilm employees who will testify on these issues and produced or is in the process of producing relevant documents. There is, accordingly, no basis for Defendants to seek discovery from Mr. Lucas, rather than current Lucasfilm employees, regarding Lucasfilm's exploitation of these works.

**III. Defendants' Remaining Justification For Obtaining Discovery From Mr. Lucas Should Be Rejected Because It Is Purely Speculative**

During the parties' meet and confer, counsel for Defendants stated that Defendants were entitled to discover whether Mr. Lucas based the name Sabacc on a historic or pre-existing word. (Arato Decl. ¶ 11). Defendants have failed to explain how this issue is relevant to this dispute and their subpoena should be quashed on this basis alone.

In addition to being irrelevant, this allegation is baseless. Defendants have proffered no evidence that Sabacc existed as a real word in 1978, before it was coined as the name of the *Star Wars* game, and thus no basis for anyone to believe that Mr. Lucas copied a pre-existing word. (Arato Decl. ¶ 13). In this setting, it is hard to accept as genuine Defendants' professed belief that Mr. Lucas may not have originated Sabacc. In any event, Defendants' professed belief is, at best, speculative. In such circumstances, Defendants' subpoena should be quashed. *See Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990) (affirming quashing of nonparty subpoena because "[a]n unfounded suspicion . . . does not support discovery into that subject matter").

**IV. Defendants' Overly Broad Document Requests To Mr. Lucas Are Duplicative of Requests Served on Lucasfilm, Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence, And Unduly Burdensome**

Defendants' subpoena includes over two-dozen overly broad and burdensome document requests. None of these document requests are temporally or geographically limited. They demand that Mr. Lucas search across a wide swath of custodians, including "George Lucas; any corporation, partnership, company, or like entity that George Lucas owned and/or owns in whole and/or in part; any corporation, partnership, company, or like entity in and/or for which George Lucas was and/or is an officer, director, partner, principal, agent; and any corporation, partnership, company, or like entity in and/or for which George Lucas had and/or has the authority, whether express, apparent, and/or implied, to enter into legally binding transactions with third parties." (Arato Decl. ¶ 2, Ex. A at 1).

More than a dozen of the requests (Nos. 1-10, 17-20) focus on Mr. Lucas' coining of Sabacc, a subject that is not relevant to this dispute, as demonstrated above. Other requests (Nos. 11-13) seek materials regarding Lucasfilm's "continuous use of 'Sabacc' from 1978 through the present." Such requests are overly broad, spanning a nearly forty-year period. All of these categories are more properly directed at Lucasfilm and, indeed, are generally duplicative of discovery requests that Defendants already served on Lucasfilm and to which Lucasfilm is responding. (Arato Decl. ¶¶ 4-7); *cf. Moon*, 232 F.R.D. at 637 (quashing nonparty subpoena seeking production of documents where the subpoena covered a nearly ten-year period of time and sought information that could more readily be obtained from the party); *Amici*, 300 F.R.D. at 410 (quashing subpoena seeking documents more properly sought from a party).

Additional requests (Nos. 14-16) demand that Mr. Lucas provide Defendants with publicly available documents, such as filings "with the TTAB concerning the putative mark SABACC" and "with any state or federal court in the United States concerning the putative mark

SABACC." To the extent these documents are relevant, they are not properly subpoenaed from a nonparty since they are public filings that Defendants can obtain on their own. *Cf. Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 114 (D. Conn. 2005) (quashing subpoena on nonparty because information sought was publicly available from bankruptcy proceeding). The requests are more properly directed at Lucasfilm in any event.[3]

**V.  Given Mr. Lucas' Lack Of Any Relevant, Non-Duplicative Information, Defendants Could Not Have Issued The Subpoena For A Proper Purpose**

The disconnect between Defendants' proffered reasons for serving the subpoena on Mr. Lucas (his personal involvement in the creative process) and the facts that are legally relevant to this case (Lucasfilm's actual exploitation of products) strongly suggests that Defendants did not subpoena Mr. Lucas for any proper purpose but rather to harass. For example, in *Amini Innovation Corp.*, the court quashed a nonparty subpoena served on the actress Jane Seymour, citing its concern that the defendant's "motive may not have been to obtain actual discovery, but some sort of strategic advantage." 300 F.R.D. at 412. Like this action, *Amini* involved trademark claims, which concerned the infringement of plaintiff's trade dress in its furniture designs. The defendants sought to depose Ms. Seymour, a co-designer of the furniture collection, contending that she "alone can testify as to her thoughts and inspirations during the design process." *Id*. at 411. The court found that it was "unlikely that evidence about her inspirations in the design process would be directly relevant to this trade dress action." *Id*. at 412. As the court explained, "[t]he type of information Seymour may possess about the *inspiration* for a given design appears

---

[3] Defendants also demand communications and agreements between Mr. Lucas and any other party, including Lucasfilm, concerning Defendants, "the TTAB Proceeding," or this lawsuit. (Nos. 17-26). Mr. Lucas left Lucasfilm in 2012, years before Defendants were formed. Putting aside that Defendants have no right to documents on these subjects that Mr. Lucas might possess in his private, personal capacity, Mr. Lucas has no such documents, except for any privileged work product documents related to this subpoena.

MOTION TO QUASH                              9                         Case No.  3:17-cv-07249-RS

marginal to the issues in this action, such as what the design actually is (regardless of its source), and how it is presented to and received by the public." *Id*.

The same is true here.  Mr. Lucas' origination of the term Sabacc and his work on Lucasfilm's expressive works have little bearing on this action; Mr. Lucas has no unique information for Defendants to discover concerning Lucasfilm's use of Sabacc; and Defendants have no legitimate need to depose Mr. Lucas or seek his documents.

## CONCLUSION

For the reasons set forth above, nonparty George Lucas respectfully requests that the Court quash the subpoena served on him.

Dated: New York, New York
July 20, 2018

SHAPIRO ARATO LLP

By: /s/ Cynthia S. Arato
Cynthia S. Arato
(State Bar No. 156856)
Fabien M. Thayamballi
(State Bar No. 284752)
500 Fifth Avenue, 40th Floor
New York, NY 10110
Tel:  (212) 257-4880
Fax:  (212) 202-6417
carato@shapiroarato.com

*Counsel for nonparty George Lucas*